**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVE SHERESKY, JEFFREY SAMSEN, and NICHOLAS SUTRO, <br><br>      Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; <br><br> LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor; <br><br> DANIEL ARONOWITZ, in his official capacity as Assistant Secretary of the United States Department of Labor; and <br><br> JANET DHILLON, in her official capacity as Principal Deputy Assistant Secretary of the United States Department of Labor, <br><br>      Defendants. | No. 25-cv-08935 <br><br> Related to Shafer v. Morgan Stanley, No. 1:20-cv-11047 (S.D.N.Y.) |

## **COMPLAINT**

1.    Plaintiffs Steve Sheresky, Jeffrey Samsen, and Nicholas Sutro are former employees of Morgan Stanley Smith Barney ("Morgan Stanley"), who are challenging Morgan Stanley's cancellation of their deferred compensation in FINRA arbitrations. Sheresky and Samsen's FINRA arbitration is anticipated to commence in 2026 on a date to be determined, and Nicholas Sutro's FINRA arbitration is scheduled to commence on May 26, 2026. Plaintiffs allege in their arbitrations that certain Morgan Stanley deferred compensation plans for financial advisors (the "Plans") are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"),

1

and that the cancellation of their deferred compensation when they left Morgan Stanley violates ERISA.

2.       This Court in *Shafer v. Morgan Stanley*, in which Sheresky and Samsen were plaintiffs, found—***twice***—that the Plans were governed by ERISA. *Shafer v. Morgan Stanley*, No. 20-cv-11047-PGG, 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023) ("*Shafer I*"),[1] and 2024 WL 4697235 (S.D.N.Y. Nov. 5, 2024) ("*Shafer II*").

3.       Without notice to Plaintiffs—or the hundreds of other former Morgan Stanley financial advisors currently challenging the cancellation of their deferred compensation in FINRA arbitrations—and after the *Shafer* Court had ordered the parties to arbitrate their claims, Morgan Stanley improperly sought and obtained an advisory opinion from the Department of Labor ("DOL") addressing whether ERISA covered the exact same Plans at issue in these arbitrations. Morgan Stanley sought this advisory opinion to circumvent this Court's detailed decisions in *Shafer I* and *Shafer II* and to prevent Plaintiffs and other arbitration claimants from vindicating their rights in the very arbitrations Morgan Stanley fought to compel.

4.       The DOL knew that this Court had concluded in *Shafer I* and *Shafer II* that the Plans were governed by ERISA because Morgan Stanley told the DOL so when it requested the advisory opinion. The DOL also knew about the dozens of pending arbitrations involving hundreds of claimants where the central issue is whether ERISA covered the Plans. Indeed, Morgan Stanley's law firm that also represented Morgan Stanley before this Court in *Shafer I* and *Shafer II* told the DOL that a "very sloppy district court"[2] issued *Shafer I* and that "[d]ozens of very expensive claims have been filed against Morgan Stanley since this strange district court opinion," Ex. 7 at 2.

---

[1] *Writ denied and appeal dismissed by* 2025 WL 1890535 (2d Cir. July 9, 2025).

[2] Ex. 1 at 2.

5.     In contravention of both the law and its own policies, the DOL issued an advisory opinion on September 9, 2025.[3] In many ways, the Advisory Opinion is a textbook example of an arbitrary and capricious agency action that violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*

6.     The DOL erred and exceeded its regulatory authority by: (i) creating an impermissible "purpose test" under ERISA, 29 U.S.C. § 1002(2)(A)(ii); (ii) incorrectly relying on the bonus regulation at 29 C.F.R. § 2510.3-2(c) (the "Bonus Regulation"), which is both inapplicable and invalid as applied; (iii) failing to follow its own procedural requirements by, *inter alia*, applying the Advisory Opinion retrospectively to 2015 through 2021 and intentionally interfering with pending litigation; and (iv) ignoring directly contradictory decisions in *Shafer I, Shafer II, Tolbert v. RBC Capital Markets Corp.*, 758 F.3d 619 (5th Cir. 2014), and *Paul v. RBC Capital Markets LLC*, 2018 WL 784577 (W.D. Wash. Feb. 8, 2018).

7.     The Advisory Opinion creates immediate and concrete harm to financial advisors who are arbitrating their deferred compensation claims against Morgan Stanley, including Plaintiffs. Having obtained the flawed Advisory Opinion for impermissible purposes, Morgan Stanley now claims that the Advisory Opinion represents the DOL's "official position," argues that the Advisory Opinion shows that Plaintiffs' and other claimants' claims are frivolous, and threatens to use the Advisory Opinion to seek attorney's fees and costs upwards of six figures or higher per arbitration against Plaintiffs and any other claimants who continue to pursue their claims.

---

[3] Ex. 2, U.S. Dep't of Labor, Emp. Benefits Sec. Admin., Advisory Opinion 2025-03A (September 9, 2025) ("Advisory Opinion").

8.     Accordingly, Plaintiffs ask the Court to (i) vacate and set aside the Advisory Opinion because it violates the APA on both substantive and procedural grounds; (ii) declare that the Bonus Regulation, 29 C.F.R. § 2510.3-2(c), is invalid as applied; and (iii) grant such other relief as may be proper.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201(a). Jurisdiction is proper under the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §§ 702 and 704, which waives the sovereign immunity of the United States for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see, e.g.*, *Data Mktg. P'ship, LP v. Dep't of Labor*, 45 F.4th 846, 854-55 (5th Cir. 2022) (holding that a DOL advisory opinion is final agency action).

10.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because each Plaintiff resides in this judicial district. Venue is also proper under 29 U.S.C. § 1132(k) because the ERISA Plans' principal office is in this judicial district.

## PARTIES

11.     Plaintiff Steve Sheresky resides in Rye, New York. Sheresky worked as a financial advisor at Morgan Stanley from 2013-2020. Morgan Stanley cancelled more than $200,000 of his deferred compensation under the Plans when he left Morgan Stanley. Sheresky has a pending arbitration claim before FINRA against Morgan Stanley concerning his deferred compensation.

12.     Plaintiff Jeffrey Samsen resides in Armonk, New York. Samsen worked as a financial advisor at Morgan Stanley from 2013-2020. Morgan Stanley cancelled more than $50,000 of his deferred compensation under the Plans when he left Morgan Stanley. Samsen has a pending arbitration claim before FINRA against Morgan Stanley concerning his deferred compensation.

13.     Plaintiff Nicholas Sutro resides in White Plains, New York. Sutro worked as a financial advisor at Morgan Stanley and its predecessors from 2005-2022. Morgan Stanley cancelled more than $86,000 of his deferred compensation under the Plans when he left Morgan Stanley. Sutro has a pending arbitration claim before FINRA against Morgan Stanley concerning his deferred compensation.

14.     Defendant United States of America has at all relevant times acted through the Department of Labor. The DOL is an agency of the United States government under 5 U.S.C. § 551(1).

15.     Defendant Lori Chavez-DeRemer is the Secretary of the Department of Labor and is joined in this action solely in her official capacity.

16.     Daniel Aronowitz was confirmed as Assistant Secretary of the Department of Labor for the Employee Benefits Security Administration ("EBSA") on September 19, 2025, and is joined in this action solely in his official capacity. EBSA is an agency within the DOL. It is "responsible for administering and enforcing the fiduciary, reporting, and disclosure provisions of Title I" of ERISA.[4] EBSA oversees "more than 837,000 private retirement plans, 2.8 million health plans, and 521,000 other welfare benefit plans, which collectively hold about $14.6 trillion in assets."[5]

17.     Janet Dhillon is Principal Deputy Assistant Secretary of the Department of Labor for EBSA and is joined in this action solely in her official capacity. At all relevant times, she was Acting Assistant Secretary of the Department of Labor for EBSA. Upon the confirmation of

---

[4] *Employee Benefits Security Administration: About Us*, EMP. BENEFITS SEC. ADMIN., U.S. DEP'T OF LABOR, www.dol.gov/index.php/agencies/ebsa/about-ebsa (last visited Oct. 28, 2025).

[5] *Id.*

Assistant Secretary Aronowitz, she became Principal Deputy Assistant Secretary of the Department of Labor for EBSA.

## FACTUAL BACKGROUND

### A.    The DOL's Procedures for Issuing Advisory Opinions.

18.    The Department of Labor issued its "Advisory Opinion Procedure" for ERISA-related inquiries in 1976, which is known as ERISA Procedure 76-1. *See* 41 Fed. Reg. 36281 (effective August 27, 1976). ERISA Procedure 76-1 describes the "general procedures of the Department of Labor in issuing information letters and advisory opinions under [ERISA]."[6] *Id*. Requests for Advisory Opinions concerning ERISA are handled by the Office of Regulations and Interpretations, which falls within EBSA.[7]

19.    An advisory opinion is defined as "a written statement issued to an individual or organization, or to the authorized representative of such individual or organization, by the Administrator of Pension and Welfare Benefit Programs[8] or his delegate, that interprets and applies the Act to a specific factual situation. Advisory opinions are issued only by the Administrator of Pension and Welfare Benefit Programs or his delegate." ERISA Procedure 76-1 at Sec. 3.02.

20.    ERISA Procedure 76-1 sets forth specific rules for the issuance of advisory opinions. Among other things, it states that: "Generally, advisory opinions will be issued by the

---

[6] The current version of the procedure is cited to herein as "ERISA Procedure 76-1" and is available at: *ERISA Procedure 76-1 For ERISA Advisory Opinions*, EMP. BENEFITS SEC. ADMIN., U.S. DEP'T OF LABOR, www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/filing-requests-for-erisa-aos (last visited Oct. 28, 2025).

[7] *EBSA: What We Do*, EMP. BENEFITS SEC. ADMIN., U.S. DEP'T OF LABOR, www.dol.gov/agencies/ebsa/about-ebsa/about-us/what-we-do (last visited Oct. 28, 2025).

[8] "The Pension and Welfare Benefits Program" became EBSA in 2003. *History of EBSA and ERISA*, EMP. BENEFITS SEC. ADMIN., U.S. DEP'T OF LABOR, www.dol.gov/agencies/ebsa/about-ebsa/about-us/history-of-ebsa-and-erisa (last visited Oct. 28, 2025).

Department *only with respect to prospective transactions (i.e., a transaction which will be entered into)*." ERISA Procedure 76-1 at Sec. 5.01 (emphasis added).

21.    When an individual or organization seeks an advisory opinion, the request "must contain … [a] detailed description of the act or acts or transaction or transactions with respect to which an advisory opinion is requested." *Id.* at Sec. 6.02(b). ERISA Procedure 76-1 also states that: "Generally, an advisory opinion will not be issued ... where all parties involved are not sufficiently identified and described, or where material facts or details of the transaction are omitted." *Id.* at Sec. 5.01.

22.    If the individual or organization requesting the advisory opinion does not adhere to ERISA Procedure 76-1's requirements, the DOL will "acknowledge[]" the request and note "the requirements that have not been met." *Id*. at Sec. 6.04.

23.    ERISA Procedure 76-1 describes the import of an advisory opinion. "An advisory opinion is an opinion of the Department as to the application of one or more sections of the Act, regulations promulgated under the Act, interpretive bulletins, or exemptions. The opinion assumes that all material facts and representations set forth in the request are accurate, and applies only to the situation described therein. Only the parties described in the request for opinion may rely on the opinion, and they may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." *Id.* at Sec. 10.

24.    On June 2, 2025, the DOL issued a press release about its opinion-letter program.[9] It explained it intended to expand upon the "department's longstanding commitment to providing

---

[9] Press Release, U.S. Dep't of Labor, US Department of Labor Launches Opinion Letter Program Across Five Agencies to Expand Compliance Assistance, www.dol.gov/newsroom/releases/osec/osec20250602 (June 2, 2025).

meaningful compliance assistance" across "five key enforcement agencies," including EBSA. Press Release, note 9. As part of this effort, it launched an official landing page. *Id*. The landing page includes a section called "Tips for writing a request," which asks requestors to: "[c]onfirm that the request is not related to an existing matter that requires the interpretation of federal law. *Note that we do not issue letters for use in any investigation or litigation matter that existed before submitting your request*."[10]

### B. The *Shafer v. Morgan Stanley* putative class action

25.     At all times relevant to this Complaint, Morgan Stanley required financial advisors to defer a percentage of commissions they earned on revenue generated by their clients' investment activities. The deferrals, which Morgan Stanley described as "Deferred Compensation," were divided into a "cash-based deferred compensation award" paid six years later and restricted stock units of Morgan Stanley common stock that were paid four years later. In *Shafer I*, former Morgan Stanley financial advisors, including Plaintiffs Sheresky and Samsen, brought a putative class action to challenge Morgan Stanley's practice of unilaterally canceling financial advisors' deferred compensation under the Plans when they leave Morgan Stanley before the four and six-year periods described above.

26.     Like Plaintiffs allege in their pending FINRA arbitrations, the plaintiffs in *Shafer* alleged that the Plans are "employee pension benefit plan[s]" under ERISA,[11] defined as:

> any plan, fund, or program which . . . by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made

---

[10]  Opinion Letters, U.S. DEP'T OF LABOR, www.dol.gov/agencies/oasp/compliance-initiatives/opinion-letters (last visited Oct. 28, 2025) (emphasis added).

[11]  Pls.' Am. Class Action Compl. at ¶ 53, *Shafer I*, 1:20-cv-11047-PGG (Mar. 3, 2022), ECF 58.

to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

27.     And like Plaintiffs in their FINRA arbitrations, the plaintiffs in *Shafer* alleged that the Plans fell within Subsection (ii) because they "result[ed] in" financial advisors deferring income "for periods extending to the end of covered employment or beyond." *See* Pls.' Am. Class Action Compl., *supra* note 11, at ¶¶ 3, 59-67.

28.     On June 29, 2022, Morgan Stanley moved to compel arbitration in *Shafer*. On November 21, 2023, the Hon. Paul G. Gardephe granted Morgan Stanley's motion. To decide if the plaintiffs' claims were arbitrable, however, Judge Gardephe first had to determine whether ERISA covered the Plans. *Shafer I*, 2023 WL 8100717 at *15.

29.     Judge Gardephe concluded the Plans were an "employee pension benefit plan" under ERISA, 29 U.S.C. § 1002(2)(A)(ii), because they "result[ed] in a deferral of income by employees for periods extending to the termination of covered employment or beyond." *Id.* at *6-20. This Court also found that the DOL's Bonus Regulation, 29 C.F.R. § 2510.3-2(c), did not apply to the Plans because they were not "bonus programs." *Id*. at *18-19.

30.     *Shafer I* was consistent with the Fifth Circuit's decision in *Tolbert*, 758 F.3d 619, which applied a "results in" test to determine whether § 1002(2)(A)(ii) covered Royal Bank of Canada's deferred compensation plan for financial advisors. *Shafer I* was also consistent with the district court's decision in *Paul*, 2018 WL 784577, which agreed with the *Tolbert* court.

31.     Morgan Stanley moved for reconsideration or clarification of *Shafer I* on December 5, 2023, arguing that the Court's ruling on ERISA had improperly intruded into the

"ultimate question presented by plaintiffs' lawsuit" that "must be decided by the arbitrators[.]"[12] The Court denied Morgan Stanley's motion, explaining that it had to decide whether ERISA governed the Plans in order to determine whether the plaintiffs' claims must be arbitrated. *Shafer II*, 2024 WL 4697235 at *11.

32.    Morgan Stanley appealed the *Shafer* Court's ERISA ruling, even though the Court had *granted* its motion to compel arbitration, and petitioned for a writ of mandamus seeking to force the judge to vacate his ERISA ruling. On July 9, 2025, the Second Circuit dismissed the appeal and denied the petition.[13]

33.    Consistent with the Court's decision compelling arbitration in *Shafer*, approximately 300 former Morgan Stanley financial advisors have commenced arbitrations before FINRA. Upon information and belief, there are at least fifty pending arbitration cases filed by different law firms on behalf of former Morgan Stanley financial advisors.

34.    The primary issue before the arbitrators in these arbitrations is whether the Plans are covered by ERISA.

**C.    Morgan Stanley lobbied the DOL extensively for over a year.**

35.    On August 1, 2024, Morgan Stanley, through Greg Jacob of O'Melveny Myers LLP, submitted its request for an advisory opinion to the DOL. Many of the arbitrations against Morgan Stanley were proceeding in discovery at this time. Morgan Stanley's motion for reconsideration was still pending in *Shafer*.

36.    O'Melveny Myers LLP represented Morgan Stanley in *Shafer*. O'Melveny also represents Morgan Stanley in many of the FINRA arbitrations.

---

[12] Mem. of Law in Supp. of Defs.' Mot. for Recons. or Clarification at 7, *Shafer I*, 1:20-cv-11047-PGG (Dec. 5, 2023), ECF 88.

[13] Summ. Order, *Shafer v. Morgan Stanley*, 2025 WL 1890535 (2d Cir. July 9, 2025), ECF 103.1.

37.     The August 2024 letter was addressed to then Assistant Secretary for EBSA, Lisa Gomez, and explained the "purpose" of the Plans. Ex. 3 at 1. It explained that "[f]or many years, Morgan Stanley has issued . . . awards under [the Plans] to eligible financial advisors," and requested an advisory opinion "confirming that (i) the deferred incentive compensation awards are not an 'employee pension benefit plan' under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and (ii) the awards qualify as an ERISA-exempt 'bonus program' under 29 C.F.R. § 2510.3-2(c)." *Id.* It explained that "the Department's guidance would help ***put to rest*** questions that have recently been raised about whether ERISA applies to these awards...." *Id.* at 2 (emphasis added).

38.     Upon information and belief, the attachments to the letter included the following: MSCIP award certificate for years 2015-2021; EICP award certificates for 2015-2021; MSCIP award summary 2015-2021; EICP stock unit summaries for 2015-2021; and financial advisor compensation plans for 2015-2021. Upon information and belief, Morgan Stanley submitted no current or prospective versions of the Plans.

39.     The request was assigned to Janet Song. Ex. 4 at 5.

40.     On August 13, 2024, Jacob emailed Timothy Hauser, asking for a call on the "time sensitive" request filed by Morgan Stanley. *Id.* at 4-5. Hauser is the Deputy Assistant Secretary for Program Operations and chief operating officer of EBSA.[14] Hauser was also a personal acquaintance of Jacob, who is a former Solicitor of Labor, the third highest ranking position in the DOL. Hauser responded to attorney Jacob within minutes, agreed to speak with him, and gave him his cell phone number. Ex. 4 at 4.

---

[14] *EBSA: Organization Chart*, EMP. BENEFITS SEC. ADMIN., U.S. DEP'T OF LABOR, www.dol.gov/agencies/ebsa/about-ebsa/about-us/organization-chart (last visited Oct. 28, 2025).

41.     In November, Jacob reached out again to Hauser about the advisory opinion: "Morgan Stanley is going to be appealing to the Second Circuit the issue that is the subject of the Advisory Opinion Request that we discussed back in August; the attached opinion of the District Court that was entered on November 5, 2024 is the decision that will be appealed." Ex. 4 at 4. Jacob also noted that "Morgan Stanley would like to discuss with the Department the possibility of filing a brief in support of our appeal at the appropriate time next year." *Id.* Jacob also invited Hauser to lunch. *Id.* Hauser replied that he would be happy to have lunch and set up a meeting with the DOL's Plan Benefits Security Division (PBSD) about Morgan Stanley's advisory opinion request. *Id.* at 3. They scheduled lunch for December 5, 2024, and a meeting between Morgan Stanley and the PBSD for December 19, 2024. *Id.* at 2-3.

42.     In addition to DOL employees, attendees at the December 19, 2024 meeting appear to have included Jacob, Brian Boyle, and Meaghan VerGow of O'Melveny Myers LLP, and Mark Greenfield and Tom D'Elisa of Morgan Stanley's in-house legal team. *Id.* at 1. VerGow was one of the lead attorneys for Morgan Stanley in *Shafer*, along with her colleagues from O'Melveny, Brian Boyle and Pamela Miller. VerGow and Boyle are also the lead O'Melveny attorneys representing Morgan Stanley in many of the FINRA arbitrations.

43.     On January 6, 2025, Song and Eric Berger from the DOL and Jacob, VerGow, and Alex Reed from O'Melveny held a follow-up Teams meeting. Ex. 5. Berger heads the Division of Coverage, Reporting and Disclosure, one of three divisions in EBSA's Office of Regulations and Interpretations.[15]

44.     In April 2025, while Morgan Stanley's appeal to the Second Circuit was pending, Jacob again wrote the DOL about Morgan Stanley's request for an advisory opinion. This time

---

[15] *EBSA: Organization Chart*, *supra* note 14.

Jacob emailed the Deputy Director of EBSA, Jeffrey Turner, attaching a letter in which Jacob claimed an advisory opinion was necessary "*given ongoing legal challenges that have created a cloud of uncertainty concerning ERISA's application to Morgan Stanley's awards ....*" Ex. 6 at 1-2 (emphasis added). He copied the DOL's Wayne Berry, the Associate Solicitor for Plan Benefits Security,[16] on this email. *Id.* at 1.

45.     Jacob also corresponded with Jonathan Snare, the Deputy Solicitor of the DOL,[17] claiming EBSA agreed "after we met with Jeff Turner and Wayne Berry back in December 2024 that this request was meritorious, and Eric Berger told me two weeks ago that getting this letter out is now the office's top interpretive priority." Ex. 1 at 2. "What we're hoping for is *a little Front Office nudge* to get this really important '*tort reform*' type of letter over the finish line and out." *Id.* (emphasis added). "The timing is getting increasingly important given the confusion sown by a very sloppy district court," referring to this Court's decisions in *Shafer*. *Id.* Jacob followed up again later in July. *Id.* at 1.

46.     Upon information and belief, Morgan Stanley hired Kent Mason, a Washington D.C. lawyer and lobbyist, in or about July 2025, to ramp up its lobbying efforts with the DOL about the advisory opinion.

47.     On July 25, 2025, Mason emailed Acting Assistant Secretary of Labor Janet Dhillon and Jack Lund, Senior Policy Advisor at EBSA, referencing the DOL's June 2, 2025 announcement of its revamped opinion letter program. Ex. 7 at 1-2; *see also supra* ¶ 24. Mason claimed "one district court" (i.e., this Court in *Shafer*) had, "contrary to law," applied ERISA to the Plans and that "*[d]ozens of very expensive claims have been filed against Morgan Stanley since this strange*

---

[16]     *SOL:    Office    Leadership*, U.S. DEP'T OF LABOR, www.dol.gov/agencies/sol/about/leadership (last visited Oct. 28, 2025).

[17]     *Id.*

*district court ruling*. The law really needs to be clarified quickly…." Ex. 7 at 2. That was why Mason contacted the DOL and "the Hill" for help. *Id.*

48.     A Teams meeting was held on July 31, 2025, between Mason, DOL officials, and Morgan Stanley government relations personnel. *Id*. at 1. It appears that attendees at this meeting included Dhillon, Lund, Mason, another attorney at Mason's firm, Morgan Stanley's in-house counsel, and two Morgan Stanley employees in government relations. *Id.*

49.     After the Teams meeting, Mason emailed Dhillon to thank her for an "excellent meeting earlier today." Ex. 8 at 1. Mason told Dhillon there was "real urgency on this issue" posed in the Advisory Opinion "for two reasons, one being the growing amount of litigation/arbitration spurred by the strange decision in New York," including "*literally hundreds of individual disputes*" against Morgan Stanley. *Id.* (emphasis added).

50.     Following up on August 12, 2025, Mason stated that Morgan Stanley was considering asking trade associations to weigh in with EBSA "on the importance of this issue and the need for a fast and clear confirmation of the DOL's longstanding position that such long-term incentive programs are not subject to ERISA." Ex. 9 at 2.

51.     O'Melveny had previously made the same argument on behalf of just such a trade organization. With Jacob as lead attorney, it filed an *amicus* brief on behalf of the Securities Industry and Financial Markets Association (SIFMA), a trade association in which Morgan Stanley is a member,[18] with the Fifth Circuit in *Tolbert*, 758 F.3d 619. In its *amicus* brief, O'Melveny (on behalf of SIFMA) argued that the issue of whether ERISA covered RBC's deferred compensation plan for financial advisors was "vitally important to the operation and continued viability of

---

[18] Member Directory, SIFMA, my.sifma.org/Directory/Member-Directory#M (last visited Oct. 28 2025).

deferred compensation arrangements of the sort used by its members."[19] SIFMA's *amicus* in *Tolbert* referenced Morgan Stanley's "financial advisor deferred compensation programs," stating that these programs are entirely about "employee retention."[20]

52.    The Fifth Circuit, however, had rejected the SIFMA's policy-based argument that "financial services firms face a problem with retaining financial advisors and that plans such as [RBC's deferred compensation plan] are designed to combat that problem," stating that it "decline[d]…to engage in any policy debate that would affect how we interpret this statute….[w]e instead apply ERISA as written." *Tolbert*, 758 F.3d at 627 n.6.

53.    In response to Mason's August 12, 2025, email, Dhillon asked whether the DOL should send its "draft of the statement of facts" for its advisory opinion to Mason or Jacob. Ex. 9 at 1. Berger emailed Mason the draft facts for his review. Ex. 12 at 9-10.

54.    Mason replied that the "draft looks great" and sent "minor clarifications." *Id*. at 3. He attached a redlined version of the draft facts. *See id*. at 3; Ex. 10.

55.    Notably, Morgan Stanley concealed a factual discrepancy from the DOL in pursuit of a favorable advisory opinion. The Advisory Opinion states that the Plans' disclosures "clearly state" every year that the program is a "bonus program and not a retirement plan." Ex. 2 at 2. But the 2015-2020 disclosures do not use the phrase "bonus program" at all. *See, e.g.*, Ex. 11 at 7 ("This program is not a retirement plan."). Rather than correcting this misrepresentation, however, Morgan Stanley obscured it by suggesting footnote text stating that "the exact language in the description of this program has changed over the years, but the substance of the program has not changed." Ex. 10 at 3 n.5.

---

[19] Br. of SIFMA as Amicus Curiae in Supp. of Appellees and Affirmance at 1, *Tolbert*, 758 F.3d 619, ECF 57-1 (Nov. 1, 2013).
    [20] *Id.* at 3, 14.

56.     The erroneous statement that Morgan Stanley "annually" disclosed to its employees that the Plans were "bonus plans" was included in the Advisory Opinion along with the footnote language added by Morgan Stanley.

57.     Throughout the entire Advisory Opinion drafting process, the DOL never notified Morgan Stanley's former financial advisors, whom the DOL knew had pending arbitration claims against Morgan Stanley, about its upcoming advisory opinion, and the DOL never sought their views on the ERISA issue, despite knowing that Morgan Stanley intended to use its Advisory Opinion to try to defeat those pending arbitrations. The process was entirely one-sided. The financial advisors did not learn about the Advisory Opinion until it was issued.

58.     As discussed, the DOL knew Morgan Stanley sought an Advisory Opinion in this landscape and for the specific purpose of using such Advisory Opinion in those cases in order to defeat its former financial advisors' cases, and yet weighed in on the exact issue decided twice by this Court and pending before the arbitrators, putting its thumb on the scale in Morgan Stanley's favor by disregarding the law and its own internal procedures. *See* Ex. 3 at 6-7; *supra* ¶¶ 37, 41, 44-45, 47, 49.

59.     In effect—as the DOL was well aware—the Advisory Opinion request was an *ex parte* process intended to deprive those financial advisors of their rights without their knowledge of, much less participation in, such process, a gross violation of their due process rights.

**D.     The Advisory Opinion is riddled with legal errors.**

60.     On September 9, 2025, Turner emailed a copy of the final Advisory Opinion to Mason, who replied, "This was a perfect example of government at its best[.]" Ex. 12 at 1.

61.     The Advisory Opinion began by restating Morgan Stanley's questions from its August 2024 letter request and briefly describing the Plans. Ex. 2 at 1-2.

62.    The Advisory Opinion improperly relied on the Plans' "purposes" even though ERISA establishes a "*results in*" test to determine whether a plan is covered by its statutory scheme. 29 U.S.C. § 1002(2)(A)(ii); *see, e.g.*, *Pasternack v. Shrader*, 863 F.3d 162, 170 n.5 (2d Cir. 2017) ("The word 'results' calls for an effects-based inquiry rather than one based on purpose."); *Tolbert*, 758 F.3d at 624 (finding subsection (ii) applies when a "'deferral of income' arises as an 'effect issue, or outcome' from that plan."); *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 435 (6th Cir. 2019) ("§ 1002(A)(ii) covers plans containing terms that have as an effect, issue or outcome—even if not as a requirement—deferral of income…"); *Paul*, 2018 WL 784577 at *6 (finding ERISA applied because "the WAP resulted in the deferral of income by RBC employees for periods extending to the termination of covered employment or beyond").

63.    The DOL Advisory Opinion also relied on irrelevant and inapplicable materials. *See, e.g.*, *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015) ("agency action is lawful only if it rests on a consideration of the relevant factors."). Rather than conducting its own analysis of guidance and proposed regulations authored by FINRA, the Federal Reserve, the Securities and Exchange Commission ("SEC"), and the Office of the Comptroller of the Currency ("OCC"), the DOL improperly adopted Morgan Stanley's position that those entities "have issued guidance advising and proposed regulations *requiring* regulated entities to defer portions of employee incentive compensation...." Ex. 2 at 5 n.8 (emphasis added); *see also* Ex. 3 at 3 n.3.

64.    The DOL's reliance on Morgan Stanley's representation concerning what proposed regulations[21] require was arbitrary and capricious because a "proposed regulation has no legal effect." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 699 (2d Cir. 2023). "Proposed

---

[21] *See* Ex. 3 at 3 n.3 (citing Office of the Comptroller of the Currency, Draft Notice of Proposed Rulemaking at 180-81, 192 (May 6, 2024), www.occ.treas.gov/news-issuances/news-releases/2024/nr-ia-2024-47a.pdf); Ex. 2 at 5 n.8 (referring to Ex. 3 at 3 n.3).

regulations are suggestions for comment; they modify nothing." *LeCroy Rsch. Sys. Corp. v. Comm'r of Internal Revenue*, 751 F.2d 123, 127 (2d Cir. 1984). And regardless, the OCC's notice of proposed rulemaking is not on point: it would not apply to financial advisors because it focuses on high-level employees who are in positions to jeopardize the firm's own capital.

65.    Further, the DOL's reliance on the OCC's "guidance"[22] was arbitrary and capricious because the OCC is not a regulatory agency that interprets ERISA and did not interpret ERISA in its guidance. The OCC's 2010 guidance does not apply to Morgan Stanley's financial advisors or stand for the proposition that DOL advances. Instead, the guidance concerns the long-term credit, market liquidity, and compliance risks associated with investing the bank's assets in securities like sub-prime mortgages. 75 Fed. Reg 36,395. Morgan Stanley financial advisors advise their clients on investing their assets, not Morgan Stanley's assets.

66.    It was arbitrary and capricious for the DOL to rely on Morgan Stanley's representation about the SEC's "Best Interest Regulation"[23] because the SEC is not an agency that interprets ERISA, the regulation does not interpret ERISA, and the regulation does not even apply to the Plans. The SEC's Best Interest Regulation concerns managing conflicts of interest, and the "incentives provided" when an individual is "making a recommendation in a brokerage capacity and not when making a recommendation in an investment advisory capacity." 84 Fed. Reg. 33,318, at 33,391. The SEC's guidance mentions "adjusting compensation" when someone fails to disclose a conflict of interest when serving as a broker dealer as one of the "practices [that] could be used as mitigation methods," *id.* at 33,292, but in no way "require[s] regulated entities to defer portions

---

[22] *See id.* (citing 75 Fed. Reg. 36,395, 36, 396, 36,408-410 (June 25, 2010)); Ex. 2 at 5 n.8 (referring to Ex. 3 at 3 n.3).
[23] *See id.* (citing 84 Fed. Reg. 33,318, 33,392 (July 12, 2019)); Ex. 2 at 5 n.8 (referring to Ex. 3 at 3 n.3).

of employee incentive compensation." Ex. 2 at 5 n.8. Indeed, compensation adjustment is one of the methods that are "*not* required" on a "non-exhaustive list of practices [that] could be used as potential mitigation methods." *Id.* at 33,392. It was arbitrary and capricious for the DOL to rely on Morgan Stanley's representation about what the SEC "requires" when the SEC itself says that adjusting compensation is "not required." *Id*.

67.     Nor did FINRA interpret ERISA in its Annual Regulatory Oversight Report,[24] which merely summarizes the SEC's Best Interest Regulation and related nonbinding mitigation methods.

68.     At the same time, the Advisory Opinion ignored authorities that are directly on point. The DOL failed to distinguish, or cite, *Shafer I* or *Shafer II*, despite the fact that these cases had already decided the precise legal issue Morgan Stanley asked the DOL to issue an opinion on.

69.     The Advisory Opinion failed to distinguish, or cite, *Tolbert*, despite that decision's precedential value and directly applicable holdings.

70.     The Advisory Opinion failed to distinguish, or cite, *Paul*, despite that decision's precedential value and directly applicable holdings.

71.     Despite these errors, the DOL nevertheless concluded that it "has no reason to believe that the deferred incentive compensation program is an "employee benefit pension plan under ERISA [29 U.S.C. § 1002(2)(A)] as a result of such surrounding circumstances" and that the Plans qualified as exempt bonus plans under 29 C.F.R. § 2510.3-2(c). Ex. 2 at 3-4.

---

[24] *See* Ex. 3 at 3 n.3 (citing FINRA, 2024 FINRA Annual Regulatory Oversight Report 45 (Jan. 2024), www.finra.org/sites/default/files/2024-01/2024-annual-regulatory-oversight-report.pdf); Ex. 2 at 5 n.8 (referring to Ex. 3 at 3 n.3).

**E.    The Bonus Regulation, 29 C.F.R. § 2510.3-2(c), is invalid as applied.**

72.    The Bonus Regulation relied on by the Advisory Opinion, 29 C.F.R. § 2510.3-2(c), is legally invalid and should be held unlawful and set aside by this Court pursuant to the APA.

73.    ERISA states that "*any* plan" that "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond" is subject to ERISA's statutory requirements. 29 U.S.C. § 1002(2)(A)(ii) (emphasis added). The Fifth Circuit held in *Tolbert* that subsection (ii) applies whenever "a 'deferral of income' arises as an 'effect, issue, or outcome' from that plan." *Tolbert*, 758 F.3d at 625.

74.    Nothing in ERISA's text supports the Bonus Regulation's additional requirement that the deferral must also be "systematic." Rather, that additional element of § 2510.3-2(c) is wholly an invention of the DOL, with no statutory basis whatsoever.

75.    A DOL regulation cannot supersede ERISA's clear statutory command. *See Loper Bright Ent. v. Raimondo*, 603 U.S. 369, 394 (2024) (holding that it is the responsibility of courts—and not administrative agencies—to "exercise independent judgment in determining the meaning of statutory provisions").

76.    The Advisory Opinion relies on the improper and illegal Bonus Regulation to wrongly conclude that Morgan Stanley's deferred compensation Plans are not governed by ERISA. Accordingly, the DOL's promulgation of the Bonus Regulation has caused concrete harm to each of the Plaintiffs. Other than an action in this Court, Plaintiffs have no alternative means by which they may seek redress for the Bonus Regulation.

**F.    The Advisory Opinion causes concrete harm to Plaintiffs because it unlawfully deprives them of their deferred compensation.**

77.    As described above, ERISA Procedure 76-1 states that "[o]nly the parties described in the request for opinion may rely on the opinion, and they may rely on the opinion only to the

extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." ERISA Procedure 76-1, Sec. 10.

78.     Morgan Stanley insists that it may rely on the Advisory Opinion, and it has been doing so in the pending FINRA arbitrations, to undermine its former financial advisors' position and arguments.

79.     Permitting Morgan Stanley to "rely" on the Advisory Opinion directly results in Plaintiffs being denied their Deferred Compensation. This is because, contrary to the DOL's policy, the Advisory Opinion is not exclusively guiding Morgan Stanley's *future* behavior. Instead, the DOL determined, *retrospectively*, that the Plans from 2015- 2021 were not governed by ERISA.

80.     Morgan Stanley is thus using the Advisory Opinion as a sword in the FINRA arbitrations, just like it told the DOL it would do. In its pre-hearing brief in a recent arbitration, Morgan Stanley argued that the DOL "rejected" the former financial advisors' "very argument" to the arbitrators. In motion practice, it argued that the Advisory Opinion is "the official position of DOL on whether ERISA applies to its deferred compensation program" and "controverts the very premise of Claimants' case." Plaintiffs anticipate that Morgan Stanley will advance the same arguments in their upcoming arbitrations.

81.     Similarly, in a recent "settlement" letter to Plaintiffs and other arbitration claimants, Morgan Stanley explicitly cited the Advisory Opinion as grounds to demand dismissal with prejudice of their arbitrations. Relying in part on the Advisory Opinion, the letter—which was unsolicited and not the result of any settlement-related discussions between the parties—argued that Plaintiffs are not pursuing their claims in good faith and threatened to seek six figures in attorneys' fees and costs against Plaintiffs unless they dismiss their arbitrations with prejudice.

82. Plaintiffs have suffered a legal wrong and have been adversely affected and aggrieved by the DOL's Advisory Opinion.

## **LEGAL STANDARD**

83. Under the APA, the reviewing court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

84. The court "shall ... hold unlawful and set aside agency actions, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law…." 5 U.S.C. § 706(2)(A)-(D).

85. "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

86. In assessing whether an agency decision is "not in accordance with law," "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 391, 412. Rather, courts must "exercise independent judgment in construing the statute." *Novartis Pharms. Corp. v. Becerra*, 2024 WL 4492072, at *6 (D.D.C. Oct. 15, 2024) (cleaned up). A reviewing court must not uphold an agency's decision unless "it is: (1) devoid of legal errors; and (2) supported by any rational review

of the record." *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 2025 WL 1822487, at \*19 (D. Mass. July 2, 2025) (cleaned up).

## CLAIMS FOR RELIEF

### Count One

### 5 U.S.C. §§ 702, 706(2)(A)

87.     Plaintiffs incorporate the preceding allegations by reference.

88.     The Advisory Opinion is final agency action. 5 U.S.C. § 704.

89.     ERISA defines an "employee pension benefit plan" to include any plan that "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(ii).

90.     This statutory provision establishes a clear "results" test that focuses on the plan's actual effects, not its stated purposes or intentions.

91.     The DOL's Advisory Opinion improperly imports a "purpose test" into ERISA, § 1002(2)(A)(ii), by focusing on the Plan's purported purposes rather than its actual results.

92.     This interpretation directly contradicts the Second Circuit's analysis in *Pasternack*, 863 F.3d 162, which rejected a purpose-based test under ERISA Section 3(2)(A)(ii).

93.     The Advisory Opinion's interpretation is contrary to law and constitutes an impermissible construction of the statute.

94.     Plaintiffs respectfully request that this Court hold the Advisory Opinion unlawful and set it aside.

### Count Two

### 5 U.S.C. §§ 702, 706(2)(A)

95.     Plaintiffs incorporate the preceding factual allegations by reference.

96.     The Advisory Opinion is final agency action. 5 U.S.C. § 704.

97. The DOL failed to reasonably consider "the relevant factors and important aspects of the problem." *Data Mktg. P'ship*, 45 F.4th at 856 (quoting *Michigan v. EPA*, 576 U.S. 743, 750, 752 (2015)).

98. The DOL's failure to cite, discuss, or distinguish the directly controlling *Shafer I* and *Shafer II* decisions constituted arbitrary and capricious action under the APA.

99. The Advisory Opinion's failure to acknowledge *Tolbert*, *Paul*, *Shafer I*, *Shafer II*, and other relevant precedent further demonstrates that the DOL failed to consider an important aspect of the problem.

100. Its failure to acknowledge relevant precedent was arbitrary and capricious and not in accordance with the law.

101. The DOL further adopted Morgan Stanley's mischaracterization about guidance and proposed regulations in its Advisory Opinion. Its failure to independently assess those sources led it to erroneously conclude that FINRA, the Federal Reserve, the SEC and the OCC either advise or require Morgan Stanley to defer employee incentive compensation.

102. The Advisory Opinion's reliance on Morgan Stanley's characterization of FINRA, Federal Reserve, SEC, and OCC publications was arbitrary and capricious and not in accordance with the law.

103. Plaintiffs respectfully request that this Court hold the Advisory Opinion unlawful and set it aside.

## Count Three

### 5 U.S.C. §§ 702, 706(2)(A), 706(2)(D)

104. Plaintiffs incorporate the preceding factual allegations by reference.

105. The Advisory Opinion is final agency action. 5 U.S.C. § 704.

106.    The DOL issued the Advisory Opinion in 2025 as to Plan years 2015-2021 in violation of ERISA Procedure 76-1, which generally requires the DOL to issue advisory opinions only with respect to "prospective" transactions.

107.    The DOL issued the Advisory Opinion even though its landing page for opinion letter requests states that the DOL does not issue letters "for use in any investigation or litigation matter that existed before submitting your request."

108.    The DOL issued the Advisory Opinion in violation of its policy not to issue such opinions where there are "inherently factual" problems.

109.    The DOL issued the Advisory Opinion in violation of its policies not to issue such opinions where all parties involved are not sufficiently identified and described—namely, the Plaintiffs and the many claimants in arbitration.

110.    These procedural violations independently render the Advisory Opinion arbitrary and capricious under the APA.

111.    Plaintiffs respectfully request that this Court hold the Advisory Opinion unlawful and set it aside.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Declare that the Advisory Opinion's interpretation of ERISA Section 3(2)(A)(ii) is contrary to law;

b.    Declare that the Advisory Opinion is arbitrary, capricious, and not in accordance with law;

c.    Declare that the Advisory Opinion was issued in violation of Department of Labor procedures and is therefore invalid;

d.    Set aside and vacate the Advisory Opinion;

e.      Set aside and vacate 29 C.F.R. § 2510.3-2(c) as invalid to the extent it conflicts

with or limits the statutory "results" test in ERISA Section 3(2)(A)(ii);

f.      Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to

the Equal Access to Justice Act and other applicable law; and

g.      Grant such other relief as the Court deems just and proper.


Dated: October 28, 2025                          Respectfully submitted,

                                                 s/ F. Franklin Amanat
Thomas R. Ajamie                                 F. Franklin Amanat
AJAMIE LLP                                       Mathew P. Jasinski
150 East 58th Street, 29th Floor                 Douglas P. Needham
New York, NY 10155                               Riley Breakell**
(713) 860-1600                                   MOTLEY RICE LLC
tajamie@ajamie.com                               20 Church St., 17th Floor
                                                 Hartford, CT 06103
John "Jack" S. Edwards, Jr.*                     (860) 882-1681
Courtney D. Scobie*                              mjasinski@motleyrice.com
AJAMIE LLP                                       dneedham@motleyrice.com
711 Louisiana St., Suite 1600                    famanat@motleyrice.com
Houston, TX 77002                                rbreakell@motleyrice.com
(713) 860-1600
jedwards@ajamie.com                              New York Office:
cscobie@ajamie.com                               777 Third Avenue, 27th Floor
                                                 New York, New York 10017

Alan L. Rosca*                                   Seth Klein*
Paul Scarlato*                                   IZARD, KINDALL & RAABE, LLP
Lisa Fish*                                       29 South Main St., Suite 305
ROSCA SCARLATO LLC                               West Hartford, CT 06107
Main Office:                                     (860) 493-6292
2000 Auburn Dr. Suite 200                        sklein@ikrlaw.com
Beachwood, OH 44122
(216) 946-7070
arosca@rscounsel.law
pscarlato@rscounsel.law                          *Application for Pro Hac Vice admission
lfish@rscounsel.law                              forthcoming
                                                 **Application for admission to the bar
                                                 forthcoming