# EXHIBIT 10

Draft 8.12.25

Draft Supporting Representations (Case No. A01533)

The following summary is based on the materials and representations provided in support of the request and should not be treated as factual findings by the Department.

You represent that the Firm's financial advisors receive a guaranteed base salary and are eligible to earn cash incentive compensation which is paid throughout the year. In addition, financial advisors are eligible to earn deferred incentive compensation, with twenty-five percent issued as an unsecured deferred stock award under the EICP and the remaining seventy-five percent as an unsecured deferred cash-based award under the MSCIP.[1] The deferred stock units are converted to shares of Morgan Stanley common stock and deposited into a brokerage account, while cash-based awards are deposited into the financial advisors' payroll accounts, on the "scheduled vesting date" only when all conditions are met, as described below.

All incentive compensation is calculated based on "Total Credits". The financial advisor's Total Credits for each month are determined by the applicable "Credit Rate" multiplied by the creditable revenue generated by the financial advisor. The Credit Rate is a percentage between 28% and 55.5% that increases with the financial advisor's revenue and length of service with the Firm. A portion of the Total Credits is allocated to "Deferred Credits" (between 1.5% and 15.5% of the financial advisor's total incentive compensation), based on the level of revenue the financial advisor generates.

The cumulative value of the monthly Deferred Credits for the year is granted to the financial advisor in the form of deferred incentive compensation (deferred stock and cash awards) shortly after the year-end. Deferred incentive compensation awards are generally contingent, among other things, upon the advisor remaining continuously employed through the grant and vesting dates. Accordingly, if the financial advisor terminates employment during the year, there is no award of the Deferred Credits granted for that year. The rest (between 84.5% and 98.5%) of the Total Credits are allocated to "Cash Credits", which are used to calculate and pay cash incentive compensation monthly.

Both cash and deferred incentive compensation reward good performance by calculating the amount, in part, based on a financial advisor's generation of revenue for the Firm. Deferred incentive compensation, however, serves additional purposes: to reward financial advisors for their "continued employment and service to the Firm in the future and [advisor] compliance with the Firm's policies (Including the Code of Conduct)." In this regard, you represent that by conditioning payment on continuous employment and good guardianship, the deferred compensation awards are designed to motivate advisors to stay with the Firm and to comply with firm policies that require advisors to act as good stewards of client assets. Accordingly, other than as described below, financial advisors are generally eligible for payment of the deferred incentive compensation awards only if they remain continuously employed and in good standing

---

[1] The advisors have individual, notional accounts in the MSCIP, and they can invest their accounts in notional investments, with the value of their accounts tracking the performance of the selected investments.

2

on the "scheduled vesting date," which occurs after four years (for stock awards) or six years (for cash awards) of continuous service.

With certain exceptions, the deferred incentive compensation awards are canceled if a financial advisor: (1) terminates employment before the scheduled vesting date; or (2) engages in prohibited activity, such as violating securities rules and regulations, engaging in dishonest or fraudulent conduct, disclosing privileged or confidential information or trade secrets, making disparaging or defamatory comments about the Firm before the scheduled award distribution date, soliciting customers the financial advisor serviced while employed by the Firm for a competitor without the Firm's consent before the earlier of the three years after termination or the scheduled award distribution date, taking employment with a competitor within 100 miles without the Firm's consent before the earlier of one year after termination or the scheduled award distribution date, or engaging in other conduct that is cause for termination. The awards are not cancelled if a financial advisor's employment terminates due to: (1) death; (2) disability; (3) retirement; (4) involuntary termination not involving any prohibited activity; or (5) termination due to government service not involving any prohibited activity. In these cases, the payment schedule depends on the exception clause under which the awards are paid.[2] You represent that payments under these relatively uncommon situations are designed to uphold the awards' primary purposes of encouraging long-term retention of financial advisors and promoting good conduct.

Financial advisors do not have the option to extend or delay the distribution date. From 2009-2019[3], 89.9% to 95.2% of deferred incentive stock awards issued under EICP were ~~awarded~~ distributed to current employees (compared to 8.2% for former employees). Similarly, from 2009 to 2017, 80.1% to 92.6% of cash distributions were ultimately paid to current employees; in the aggregate over that period current employees were paid 85.3% of deferred incentive cash awards issued under the MSCIP ~~were awarded to current employees~~ (compared to 14.7% for former employees).[4]

The award conditions are disclosed annually in the award certificates, summary descriptions and other communications. These disclosures also clearly state that the deferred incentive compensation awards are "contingent and unsecured" and that the program is a:

> "… bonus program and not a retirement plan. Its purposes are to reward and retain key employees of the Firm and to align their interests with those of the shareholders.

---

[2] For the exception due to death, the award is paid to a designated beneficiary upon notification to the Firm. For the exception due to retirement, 50% of the award is paid on the first anniversary after retirement, with the remaining 50% paid on the second anniversary, if the retiree does not engage in specified prohibited activity. For the exception due to governmental service termination, the award is paid on the date of termination. For the exception due to disability or involuntary termination by the Firm, the award is paid on the scheduled vesting date (four years for stock awards and six years for cash awards).

[3] You represent that for stock awards issued under the EICP, the most recent plan year to have vested (as of August 2024) was the 2019 plan year.

[4] You represent that for cash awards issued under the MSCIP, the most recent plan year to have vested (as of August 2024) was the 2017 plan year.

> Participants should not look to this bonus program as a source of retirement income. This bonus program is not subject to the Employee Retirement Income Security Act of 1974."[5]

You also state that the awards are structured to meet the expectations of the Firm's financial regulators regarding the use of deferred compensation to motivate good conduct and penalize bad conduct.[6]

Financial advisors earn the right to award payments only upon satisfying the award conditions, which require them to remain continuously employed and in good standing through the scheduled vesting date (four or six years of continuous service after the ~~end of the year for which the Deferred Credits are granted in the form of deferred stocks and cash awards~~award is granted). On the scheduled vesting date, the award payments are made automatically, and financial advisors are not permitted to defer the payments to a later date. If a financial advisor terminates employment or engages in prohibited activities before vesting, the awards are cancelled, except under limited circumstances. These conditions are disclosed annually to the financial advisors. These annual disclosures also expressly state that financial advisors "have no right to … [the] award until it is 'earned,'" the awards are "contingent upon the [financial advisor] remaining employed through the grant and vesting dates of the award," the awards are "not intended to provide for retirement income," and that the program is "not a retirement plan subject to [ERISA]."

The express purposes of the deferred incentive compensation program are to reward financial advisors for their long-term tenure and incentivize good behaviors desired by the Firm. The program's design and administration are tailored to achieve those goals and meet the financial regulatory requirements regarding using deferred compensation to motivate good conduct and penalize bad conduct. The deferred incentive compensation awards are unsecured and not guaranteed, there is no accrual (*i.e.*, no partial payouts before the scheduled vesting date) and financial advisors are notified annually about the express purposes and conditions of the program and informed that it is not a retirement plan subject to ERISA.

---

[5] *See e.g.,* EICP 2021 Discretionary Retention Awards Stock Unit Summary Description and MSCIP 2021 Discretionary Retention Awards Summary Descriptions. Per your submission, the exact language in the description of this program has changed over the years, but the substance of the program has not changed.

[6] You note that financial regulators, including Financial Industry Regulatory Authority, the Federal Reserve Board of Governors, the Securities and Exchange Commission, and the office of the Comptroller of the Currency, have issued ~~and proposed~~ guidance advising and proposed regulations requiring regulated entities to defer portions of employee incentive compensation, and to make that compensation contingent and cancelable, to address risk-taking and other behaviors that may be harmful to customers and the public markets.