UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE SHERESKY, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | 25 Civ. 8935 (PGG) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED CLASS ACTION COMPLAINT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

*Of Counsel*
ROBERT WILLIAM YALEN
Assistant United States Attorney

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiffs Lack Standing ............................................................................................ 2

        A.    Plaintiffs' Argument Regarding Future Arbitration Results Fails .................. 2
        B.    Plaintiffs' "Attorneys' Fees Risk" Fails for the Same Reason ....................... 6
        C.    Plaintiffs' Procedural Rights Theory Fails ..................................................... 7

    II.    The Advisory Opinion Is Not a Final Agency Action ............................................. 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

*Cases*

*African Communities Together v. Lyons*,
  799 F. Supp. 3d 362 (S.D.N.Y. 2025) .................................................................................. 10

*Air Brake Sys., Inc. v. Mineta*,
  357 F.3d 632 (6th Cir. 2004). ................................................................................................ 9

*AT&T Co. v. EEOC*,
  270 F.3d 973 (D.C. Cir. 2001) ............................................................................................. 10

*Casillas v. Madison Avenue Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019) ................................................................................................. 2

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..................................................................................................... 2, 3, 5

*Clinton v. City of New York*
  524 U.S. 417 (1998) .............................................................................................................. 6

*Data Marketing Partnership v. DOL*,
  45 F.4th 846 (5th Cir. 2022), ................................................................................................. 9

*Hall St. Assocs. LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008) .............................................................................................................. 4

*Harty v. W. Point Realty, Inc.*,
  28 F.4th 435 (2d Cir. 2022) ................................................................................................... 5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................... 2, 7, 8

*Milligan v. Bank of Am. Corp.*,
  No. 3:24-CV-00440-KDB-DCK, 2025 WL 892972 (W.D.N.C. Mar. 11, 2025). ................. 5

*New York v. Trump*,
  767 F. Supp. 3d 44 (S.D.N.Y. 2025) ................................................................................... 10

*New York v. U.S. Dep't of Commerce*,
  315 F. Supp. 3d 766, 782 (S.D.N.Y. 2018), .......................................................................... 4

*Newman v. Krintzman*,
  723 F.3d 308, 314 (1st Cir. 2013) ......................................................................................... 7

*Shafer v. Morgan Stanley*, No. 20 Civ. 11047 (PGG),
   2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023). ................................................................... 4

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)). ......................................................................................................... 3

*Summers v. Earth Island Inst.*,
   555 U.S. 488, 496 (2009) ............................................................................................... 7, 8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................................................... 2

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) ........................................................................................................... 9

*Vertex Pharm. Inc. v. U.S. Dep't of Health & Human Servs.*,
   774 F. Supp. 3d 211 (D.D.C. 2025) ................................................................................. 10

*Wallace v. Buttar*,
   378 F.3d 182 (2d Cir. 2004) ............................................................................................... 4

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................................................... 3

*Wiegand v. Royal Caribbean Cruises Ltd.*,
   No. 21-12506, 2023 WL 4445948 (11th Cir. July 11, 2023) ............................................. 7

*Arbitral Decisions*

*Rude v. Morgan Stanley*,
   FINRA Arb. No. 22-02183 (June 14, 2024), *available at*
   https://www.finra.org/sites/default/files/aao_documents/22-02183.pdf .................................. 3

*Statutes, Regulations, & Federal Register*

9 U.S.C. §§ 1-10 ....................................................................................................................... 4

Office of Employee Benefits Security, *Employee Benefits Plans—
   Advisory Opinion Procedure,* 41 Fed. Reg. 36,281 (Aug. 27, 1976) ......................................... 8

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Amended Complaint, ECF No. 37.[1]

## PRELIMINARY STATEMENT

In their opposition brief, Plaintiffs do not dispute that DOL's Advisory Opinion is non-binding and leaves courts and arbitrators free to exercise their independent judgment as to the applicability of ERISA to Morgan Stanley's deferred compensation plans. Plaintiffs also do not dispute that the Advisory Opinion is premised only on assumed facts, any of which may be disputed before a court or arbitrator. They do not dispute that the Advisory Opinion uses tentative language, stating that certain conclusions "appear" or "do not appear" to be the case. And they do not dispute that, in their individual arbitrations, they will be able to raise all their ERISA arguments. Because Plaintiffs' arbitrators will render independent decisions on the merits of the underlying question—whether ERISA applies to Plaintiffs' deferred compensation—Plaintiffs cannot show a legally cognizable injury, caused by the Advisory Opinion and redressable by setting it aside, and thus lack standing. Def. Mem. at 10-15. And because the Advisory Opinion is inherently tentative and neither determines rights or obligations nor has legal consequences, it is not a "final agency action" within the meaning of the Administrative Procedure Act. Def. Mem. at 15-21. The First Amended Complaint should be dismissed.

Rather than rebut these dispositive points, Plaintiffs principally contend that, even though the Advisory Opinion is not binding, their arbitrators will be unable or willing to exercise independent judgment, at least in part because FINRA arbitrators need not be attorneys. Opp.

---

[1] Capitalized terms not defined in this brief have the meaning given them in the Memorandum of Law in Support of Defendants' Motion to Dismiss the First Amended Class Action Complaint, dated January 16, 2026 ("Def. Mem."). "Opp. Mem." will refer to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated Feb. 20, 2026.

Mem. at 10 & n.5. But Plaintiffs allege no facts to dispute that their arbitrators will fairly and thoroughly consider the matters before them. The arbitrators' independent decisionmaking means Plaintiffs lack standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

Plaintiffs' further argument that they have standing to vindicate alleged "procedural rights" lacks any merit. The relevant procedures do not provide that DOL may only issue advisory opinions about prospective matters, as Plaintiffs' assert, and the procedures accord Plaintiffs no rights to enforce such a limitation. Moreover, procedural rights, even where they exist, only provide standing where their violation would endanger a party's concrete interests. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.8 (1992). Because Plaintiffs' arbitrators will consider ERISA's applicability to their deferred compensation *de novo*, Plaintiffs cannot make this showing.

Plaintiffs' contention that the Advisory Opinion is a final agency action fails for similar reasons. The non-binding nature of the Advisory Opinion and its inherently tentative nature preclude it from constituting a final agency action.

## ARGUMENT

### I. Plaintiffs Lack Standing

Plaintiffs lack standing because the Advisory Opinion is non-binding and premised only on assumed fact, and Plaintiffs' arbitrators will render an independent decision on the merits. Def. Mem. at 10-15. As a result, Plaintiffs cannot allege "an injury that the defendant caused and the court can remedy." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)).

#### A. Plaintiffs' Argument Regarding Future Arbitration Results Fails

Plaintiffs do not dispute that the Advisory Opinion is non-binding, such that a court would consider it de novo. As such, "[i]t is just not possible for a litigant to prove in advance that the

2

judicial system will lead to any particular result in his case." *Clapper*, 568 U.S. at 413-14 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990)) (cleaned up)); Def. Mem. at 12.

Plaintiffs appear to argue that FINRA arbitrators are different from judicial decisionmakers in some way that makes them unable or unwilling to recognize the Advisory Opinion's non-binding nature and exercise independent judgment. In particular, they underscore that FINRA rules do not require arbitrators to be attorneys, making it "reasonable to infer" that they will not act independently. Opp. Mem. 10 & n.5. The Court should reject this argument.

As an initial matter, Plaintiffs' Amended Complaint lacks any factual allegations to support this proposition as it relates to Plaintiffs' own cases. The Amended Complaint fails to identify the actual members of Plaintiffs' own arbitration panels, whether they are attorneys, and whether they have any other material qualifications. Standing requires a showing of "particularized" injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Plaintiffs' failure to allege that their own arbitrators are non-lawyers precludes this argument; they cannot rely on the general possibility that some FINRA arbitration panels lack attorneys.

More generally, Plaintiffs nowhere acknowledge that FINRA arbitrators can and do address complex legal and factual issues, including the very ones presented here. For example, in *Rude v. Morgan Stanley*, an arbitration panel exercised its independent legal and factual judgment in rejecting the ERISA claims of former Morgan Stanley financial analysts. *Rude v. Morgan Stanley*, FINRA Arb. No. 22-02183 (June 14, 2024), at *4-*5, *available at* https://www.finra.org/sites/default/files/aao_documents/22-02183.pdf. This decision, issued after the Court's *Shafer* decision but before the Advisory Opinion, shows arbitrators grappling with complex legal issues and ultimately reaching independent conclusions.

3

In any event, even if Plaintiffs had plausibly alleged a meaningful difference in this respect between FINRA arbitration and the judicial system, *they* agreed to arbitration for resolving their dispute. *Shafer v. Morgan Stanley*, No. 20 Civ. 11047 (PGG), 2023 WL 8100717, at *9 (S.D.N.Y. Nov. 21, 2023) (finding that "Plaintiffs and Defendants entered into agreements to arbitrate"). The Federal Arbitration Act, 9 U.S.C. §§ 1-10, "replace[d] judicial indisposition to arbitration with a national policy favoring it." *Hall St. Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) (cleaned up). Where parties have made their choice to arbitrate, courts will not upset the arbitrators' legal and factual conclusions absent extreme circumstances. *See Wallace v. Buttar*, 378 F.3d 182, 189-90 (2d Cir. 2004). To the extent that differences in processes do exist, they are not caused by the Advisory Opinion, but by Plaintiffs' own decision to agree to arbitration.

Beyond attacking the arbitral process, Plaintiffs rely heavily on *Department of Commerce v. New York*, 588 U.S. 752 (2019), arguing that showing a sufficiently third-party likely response to an agency action can suffice for standing purposes. Opp. Mem. at 11, 12, 17, 18. Far from supporting Plaintiffs, however, *Department of Commence* lays bare the inadequacies of Plaintiffs' factual allegations. In *Department of Commerce*, standing turned on whether adding a question regarding citizenship to the federal census would deter individuals from participating in the census. Unlike Plaintiffs' Amended Complaint, the complaint in *Department of Commerce* included paragraph after paragraph of specific factual allegations showing the plausibility of their allegation that this effect would occur. *New York v. U.S. Dep't of Commerce,* No. 18 Civ. 2921 (JMF), ECF No. 214 (Second Am. Cplt., filed July 25, 2018), ¶¶ 39-47. The district court there, on a motion to dismiss, relied heavily on these detailed factual allegations to hold that the plaintiffs there clearly, and non-speculatively, satisfied standing requirements. *New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 782 (S.D.N.Y. 2018). The Supreme Court later found the same

detailed facts critical to its analysis (although by that stage in the case, the facts were not simply allegations but instead findings of fact after trial). *Dep't of Commerce*, 588 U.S. at 767. In contrast, Plaintiffs in this case have offered no facts to suggest that their arbitrators will defer to the Advisory Opinion rather than exercise their independent judgment.[2]

Finally, in support of their standing claims, Plaintiffs rely on the "surrounding circumstances" that Morgan Stanley's requested the Advisory Opinion and subsequently emphasized it in briefing and settlement discussions. Opp. Mem. at 9. Yet it is undisputed that the Advisory Opinion is not binding on courts or arbitrators. Morgan Stanley will no doubt continue to emphasize the Advisory Opinion and other authorities favorable to it, such as the Western District of North Carolina's decision in *Milligan v. Bank of Am. Corp.*, No. 3:24-CV-00440-KDB-DCK, 2025 WL 892972 (W.D.N.C. Mar. 11, 2025), and the *Rude* arbitration award. It will surely criticize or downplay adverse authorities. Plaintiffs will do the opposite. This reflects the back and forth of the litigation (and arbitration) process. It does not change the fact that the arbitrators will reach their own independent judgment. *Clapper*, 568 U.S. at 408.[3]

---

[2] Plaintiffs also point to the Supreme Court's use, in *Department of Commerce* and other cases, of a "substantial risk of harm" standard for future injury. Opp. Mem. at 8. As in *Clapper*, whether to frame the standard as "clearly impending" or "substantial risk" is not material. "[T]o the extent that the 'substantial risk' standard is relevant and is distinct from the 'clearly impending' requirement," Plaintiffs cannot satisfy it through "speculation about the unfettered choices made by independent actors not before the courts." *Clapper*, 568 U.S. at 414 n.5 (cleaned up).

[3] Plaintiffs have also submitted an attorney declaration asserting that certain *other* individual clients of the attorney have withdrawn claims against Morgan Stanley "given the likelihood that arbitrators will follow the DOL Opinion." Declaration of Alan Rosca, dated Feb. 20, 2026, ¶ 10. The Court has broad discretion whether to consider evidence submitted by a plaintiff in response to a defendant's facial standing challenge. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441-42 (2d Cir. 2022). The Court should not consider it here, where the evidence is self-serving hearsay and lacks any specific facts from which the Court can assess credibility and reliability. More fundamentally, the proposition that these non-party clients were motivated by the Advisory

### B. Plaintiffs' "Attorneys' Fees Risk" Fails for the Same Reason

Plaintiffs assert that they have standing because the Advisory Opinion changed their risk of having to pay attorneys' fees from "nominal" or "functionally dormant" to "substantial." Opp. Mem. at 7, 13. They argue that the Advisory Opinion thus created a "substantial contingent liability" supporting standing pursuant to *Clinton v. City of New York*, 524 U.S. 417 (1998). The Court should reject this argument.

As an initial matter, *Clinton* is irrelevant. That case concerned President Clinton's use of a line-item veto to strike a statutory section that would have waived the federal government's claim to recoup more than $2.6 billion in taxes from New York State, leaving New York dependent on obtaining a discretionary waiver from the U.S. Department of Health and Human Services. *Id.* at 422-23. New York had standing there because President Clinton had changed substantive law to revive a large financial liability, leaving New York dependent on the contingency of a discretionary waiver. *Id.* at 430-431. Unlike in *Clinton*, the Advisory Opinion did not change the law at all and is not binding. The arbitrators' will exercise their independent judgment on what the law is.

Beyond the irrelevance of *Clinton*, Plaintiffs also fail to allege facts supporting the asserted change in their clients' attorneys' fees exposure. While the Amended Complaint alleges that Morgan Stanley has called Plaintiffs' claims "frivolous" and threatened attorneys' fees in a settlement letter, Am. Cplt. ¶ 7, it is silent on Plaintiffs' actual risk of a fee award. The Amended Complaint does not explain which legal authorities might allow attorneys' fees, and whether

---

Opinion to dismiss their claims is irrelevant, because the Advisory Opinion is non-binding and subject to the arbitrators' independent review. However, to the extent that the Court concludes otherwise, Defendants intend to take depositions to determine the accuracy and reliability of the hearsay representations in this declaration.

6

"frivolousness" is the standard. It does not allege whether Morgan Stanley had asserted an attorneys' fees claim prior to the Advisory Opinion. It does not describe the frequency with which attorneys' fees are awarded in arbitration proceedings. And it does not describe—even conclusorily—what Plaintiffs' risk of a fee award was before and after the Advisory Opinion.

### C. Plaintiffs' Procedural Rights Theory Fails

Plaintiffs also attempt to base standing on "procedural rights": Specifically, a claimed procedural entitlement to have DOL issue advisory opinions about prospective transactions only. Opp. Mem. at 15-16. Nothing in the relevant procedures limits DOL's authority in this regard. *See generally* Def. Mem. at 2-4 (reviewing ERISA Procedure 76-1). To the contrary, DOL's procedures emphasize DOL's discretion, expressly noting that the agency has the "*Discretionary* Authority to Render Advisory Opinions." ERISA Procedure 76-1, § 5 (emphasis added). It is true that the procedures then state "*Generally*, advisory opinions will be issued by the Department only with respect to prospective transactions (*i.e.*, a transaction which will be entered into)." *Id.* (emphasis added). But "'generally' does not mean 'always'. . . ." *Newman v. Krintzman*, 723 F.3d 308, 314 (1st Cir. 2013). To the contrary, the use of "generally" puts the reader on notice that contrary cases exist. *Wiegand v. Royal Caribbean Cruises Ltd.*, No. 21-12506, 2023 WL 4445948, at *5 (11th Cir. July 11, 2023) (unpublished) ("Of course, the word "generally" means there are exceptions."). DOL's procedures simply do not suggest that DOL has limited its advisory opinion authority to prospective transactions.

Moreover, nothing in ERISA Procedure 76-1 suggests that the procedures "accorded a procedural right" to Plaintiffs or any other members of the public. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (cleaned up); *accord Lujan*, 504 U.S. at 572 n.7 (same). The procedures are consciously descriptive, rather than prescriptive or rights-creating. They "describe[] the

7

general procedures of the Department in issuing . . . advisory opinions under [ERISA]," with the goals of "promot[ing] efficient handling of inquiries and to facilitat[ing] prompt responses" by the agency.  Office of Employee Benefits Security, *Employee Benefits Plans—Advisory Opinion Procedure,* 41 Fed. Reg. 36,281, 36,281 (Aug. 27, 1976).  They do not "accord[] . . . rights."

Finally, standing based on procedural rights exists only where those procedures are "designed to protect a concrete interest" of the plaintiff and deprivation of those procedures "endangers [plaintiff's] concrete interest."  *Lujan*, 504 U.S. at 572 n.8.  "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."  *Summers*, 555 U.S. at 496.  Because the Advisory Opinion is non-binding and based on assumed facts, and the arbitrators will render their own independent judgment, Plaintiffs cannot show the concrete harm necessary for procedural standing.

To the extent that Plaintiffs also rely on language from a DOL website on opinion letters—appearing under the heading "Tips for writing a request," https://beta.dol.gov/policy-regulations/reference-materials/guidance-searches/opinion-letters—their argument is no better.  Opp. Mem. at 16.  The webpage provides general advice related to "opinion letters" under all statutes administered by DOL, and is not ERISA-specific.  Statements on the website do not constitute rules of agency procedure; instead, they include "tips [to] help you [requesters] present your question in a way that highlights for us why your request should be addressed."  While among those tips is the language quoted by Plaintiffs, "we do not issue letters for use in any investigation or litigation matter that existed before submitting your request," Opp. Mem. at 16, this language is not prescriptive and not explained in any detail.  Nothing about it "accord[s] . . . . procedural rights" to Plaintiffs.

8

## II. The Advisory Opinion Is Not a Final Agency Action

In addition to lacking standing, Plaintiffs cannot show that the Advisory Opinion is a final agency action. Plaintiffs cannot satisfy the first part of the "final agency action" test—showing that the action is more than a "merely tentative or interlocutory nature," *U.S. Army Corps of Eng'rs v. Hawkes*, 578 U.S. 590, 597 (2016)—for two independent reasons. First, the Advisory Opinion uses inherently tentative language (couching its conclusions in terms of what "appear" or "do not appear" to be the case). Def. Mem. at 16. Second, the Advisory Opinion is based only on submitted facts, assumed to be true, rather than a factfinding. *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 639 (6th Cir. 2004) (agency opinion without factfinding is non-final); *see also Hawkes*, 578 U.S. at 597-98 (emphasizing "extensive fact-finding" in finding agency action to be final). The Court should reject Plaintiffs' reliance on the Fifth Circuit's *Data Marketing Partnership v. DOL*, 45 F.4th 846, 854 (5th Cir. 2022), Opp. Mem. at 20, to claim that the mere fact that the Advisory Opinion is not subject to appeal within the agency makes it non-tentative, as explained in Defendants' opening brief. Def. Mem. at 17-18.

Plaintiffs also cannot satisfy the second prong of the final agency action test: whether the action is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes*, 578 U.S. at 597. Plaintiffs principally argue that (i) the arbitrators will likely defer to the Advisory Opinion and (ii) the Court should follow *Data Marketing Partnerships* in holding that an Advisory Opinion binds the agency and thus satisfies the second prong. For the reasons described above and in Defendants' opening brief, both arguments should be rejected. *See supra* Part I.A; Def. Mem. at 10-15, 18-21.

The Court should also reject Plaintiffs' fallback argument that the Advisory Opinion's *legal analysis* is final even if the rest of the Advisory Opinion is not. Even assuming that pure legal statements would satisfy the first prong of the final agency action test as Plaintiffs claim, they

9

fail the second: "[M]erely . . . expressing [the agency's] view of the law—a view that has force only to the extent the agency can persuade a court to the same conclusion"—is not final agency action, "even if that view is adverse to the party." *AT&T Co. v. EEOC*, 270 F.3d 973, 975-76 (D.C. Cir. 2001).

Additionally, the Court should reject Plaintiffs' suggestion that the Government's apparent failure to argue "final agency action" in asnother case provides support for their argument that the Court should find such an action here. Opp. Mem. at 21 (citing *Vertex Pharm. Inc. v. U.S. Dep't of Health & Human Servs.*, 774 F. Supp. 3d 211 (D.D.C. 2025). That case concerned an unrelated advisory opinion, issued by a different agency, under a distinct statutory regime; it has no relevance to the present litigation.

Finally, Plaintiffs assert that some courts emphasize that a "final agency action" should be determined "pragmatically" or practically. Opp. Mem. at 20-21. But the cases they cite raise very different issues from those present here. *African Communities Together v. Lyons*, 799 F. Supp. 3d 362, 387 (S.D.N.Y. 2025) (informal email constitutes a final agency action); *New York v. Trump*, 767 F. Supp. 3d 44, 77 (S.D.N.Y. 2025) (decision to disclose information protected by federal law determines rights and obligations as to that information). These cases do not, in the guise of pragmatism, turn inherently tentative agency actions into final ones.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' opening brief, Defendants respectfully request that the Court dismiss the Amended Complaint.

10

Dated: March 11, 2026
      New York, New York

                                      Respectfully submitted,

                                      JAY CLAYTON
                                      United States Attorney for the
                                      Southern District of New York
                                      *Attorney for Defendants*

By:    */s/ Robert William Yalen*
           ROBERT WILLIAM YALEN
           Assistant United States Attorney
           86 Chambers Street
           New York, New York 10007
           Telephone: (212) 637-2800
           Email: robert.yalen@usdoj.gov

Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,179 words.