## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE SHERESKY, JEFFREY SAMSEN, and NICHOLAS SUTRO, | |
|      Plaintiffs, | No. 25-cv-08935 |
| v. | Related to Shafer v. Morgan Stanley, No. 1:20-cv-11047 (S.D.N.Y.) |
| UNITED STATES OF AMERICA; | |
| LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor; | **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| DANIEL ARONOWITZ, in his official capacity as Assistant Secretary of the United States Department of Labor; and | |
| JANET DHILLON, in her official capacity as Principal Deputy Assistant Secretary of the United States Department of Labor, | |
|      Defendants. | |

Mathew P. Jasinski
MOTLEY RICE LLC
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
mjasinski@motleyrice.com

*New York Office:*
800 Third Avenue, Suite 2401
New York, New York 10022

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 1

      A.      The named Plaintiffs have standing to challenge the Advisory Opinion. ............... 1

      B.      The proposed class satisfies Rule 23(b)(2). ........................................................... 3

            1.      Plaintiffs need not demonstrate that each class member has standing........ 4

            2.      Rule 23(b)(2) certification is appropriate because a single injunction or declaratory judgment would provide relief to each member of the class....................................................................................................... 6

                a.      The composition of individual arbitration panels is irrelevant. ...... 6

                b.      Any variation in attorneys' fee exposure is irrelevant. ................... 7

                c.      The timing of individual claims is irrelevant. ................................ 8

                d.      The change in plan disclosure language is irrelevant. .................. 10

III.    CONCLUSION ............................................................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................................ 9

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020) .................................................................................. 5

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
   954 F.3d 118 (2d Cir. 2020) .................................................................................. 9

*Hyland v. Navient Corp.*,
   48 F.4th 110 (2d Cir. 2022) ................................................................................... 5

*Latino Officers Ass'n City of New York v. City of New York*,
   209 F.R.D. 79 (S.D.N.Y. 2002) ............................................................................. 5

*Liberty Cap. Grp. v. Oppenheimer & Co.*,
   811 F. Supp. 3d 647 (S.D.N.Y. 2025) ................................................................... 1

*M.G. v. New York City Dep't of Educ.*,
   162 F. Supp. 3d 216 (S.D.N.Y. 2016) ................................................................... 6

*Shafer v. Morgan Stanley*, No. 20-cv-11047-PGG,
   2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023) ................................................... 7, 9

*Shafer v. Morgan Stanley*, No. 20-cv-11047-PGG,
   2024 WL 4697235 (S.D.N.Y. Nov. 5, 2024) .......................................................... 7

*Shafer v. Morgan Stanley*, No. 24-3141(L),
   2025 WL 1890535 (2d Cir. July 9, 2025) .............................................................. 9

*Sykes v. Mel. S. Harris and Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) ..................................................................................... 5

*Tolbert v. RBC Capital Mkts. Corp.*,
   758 F.3d 619 (5th Cir. 2014) ................................................................................. 7

*Toussaint v. JJ Weiser, Inc.*,
   648 F.3d 108 (2d Cir. 2011) ................................................................................... 7

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................ 4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................ 1, 3

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................... 8, 9, 10

**Statutes**

29 U.S.C. § 1132(k) ....................................................................................................... 9

5 U.S.C. § 702................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 3, 4, 5

**Regulations**

ERISA Procedure 76-1.................................................................................................... 2

**Treatises**

1 Newberg and Rubenstein on Class Actions § 2:3 (6th ed. 2025)................................. 4

**Other Authorities**

Advisory Opinion No. 2025-03A,
    2025 WL 2642870 (Sept. 9, 2025)........................................................................ 10

FINRA Code of Arb. Proc. for Industry Disputes R. 13411 (2024),
    www.finra.org/rules-guidance/rulebooks/finra-rules/13411 ............................... 2

FINRA Reg. Notice 09-16 (Mar. 1, 2009),
    www.finra.org/rules-guidance/notices/09-16................................................... 2

*Rude v. Morgan Stanley*,
    FINRA No. 22-02183 (June 14, 2024)........................................................... 1, 2

## I.    INTRODUCTION

This case is about a single government action—an Advisory Opinion—that similarly prejudices every member of the proposed class. Morgan Stanley's conduct confirms as much: it has presented the Advisory Opinion to arbitrators as "the official position of DOL on whether ERISA applies to its deferred compensation program," Am. Compl. ¶ 81, and has sent identical threatening "settlement" letters to class members based on that Opinion, Am. Compl. Exs. 13A, 13B; Jasinski Decl.[1] Ex. 2. Vacatur of the Advisory Opinion would benefit every class member, resolving this litigation in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Defendants' opposition to class certification raises a variety of arguments, each of which fails.

## II.    ARGUMENT

### A.    The named Plaintiffs have standing to challenge the Advisory Opinion.

Defendants open their opposition by arguing that the named Plaintiffs lack standing and that, without a named plaintiff who has standing, the Court may not certify a class.[2] Cert. Opp'n at 9-10. Plaintiffs have already demonstrated at length that the named Plaintiffs have standing to challenge the Advisory Opinion. *See generally* ECF 49 ("MTD Opp'n") at 6-19. Defendants' invocation of *Rude v. Morgan Stanley*, FINRA No. 22-02183 (June 14, 2024), Cert. Opp'n at 9, does not undermine this conclusion. In *Rude*, a divided arbitration panel applied the same, incorrect test for determining ERISA coverage that Morgan Stanley *later* convinced the DOL to adopt. *Rude*

---

[1] Decl. of Mathew P. Jasinski in Supp. of Pls.' Mot. for Class Cert. (Jan. 15, 2026).

[2] In support of this proposition, Defendants cite *Liberty Capital Group v. Oppenheimer & Co.*, 811 F. Supp. 3d 647, 656-57 (S.D.N.Y. 2025). That decision holds only that a court "may not reach the merits" of class certification where the named plaintiff lacks Article III standing as to a particular claim—not that standing operates as a separate criterion for certification. *See id.* Defendants' standing argument thus does no independent work in the class-certification context: if the Court denies Defendants' motion to dismiss for lack of standing (as it should), then standing presents no further obstacle to class certification. *See infra*, Part II.B.1.

confirms that arbitrators are already prone to misapply ERISA and that any official governmental thumb on the scale in favor of Morgan Stanley, which the Advisory Opinion supplies, materially worsens Plaintiffs' position. In contrast to *Rude*, which is non-precedential,[3] Plaintiffs and every putative class member will now confront the Advisory Opinion as the DOL's "official position."

Defendants also claim that because the named Plaintiffs have not alleged whether their own arbitrators are attorneys, they cannot base an injury-in-fact on the risk that non-attorney arbitrators will fail to recognize the Advisory Opinion as non-binding.[4] Cert. Opp'n at 9. That argument misconstrues Plaintiffs' position, which is that the Advisory Opinion creates a substantial risk that arbitrators will follow it. MTD Opp'n at 8-12. That risk does not disappear when an arbitrator holds a law degree. The point that FINRA arbitrators need not be attorneys, MTD Opp'n at 10 n.5, is one indicium of that substantial risk, not the *sine qua non* of Plaintiffs' injury theory. That risk also poses a present injury, in the form of the contingent-liability exposure of an adverse fee-shifting award. That injury does not hinge on whether Morgan Stanley had previously made fee threats in any individual case. Cert. Opp'n at 12. It hinges on whether the Advisory Opinion objectively strengthened Morgan Stanley's hand. *See infra*, Part II.B.2.b.

Finally, Defendants reiterate their argument that Plaintiffs have no procedural rights that could support standing. Cert. Opp'n at 10. Defendants maintain that ERISA Procedure 76-1 is "descriptive, rather than prescriptive or rights-creating," and that its stated goals—"promoting efficient handling of inquiries" and "facilitating prompt responses"—do not protect the rights of

---

[3] FINRA Reg. Notice 09-16 (Mar. 1, 2009), www.finra.org/rules-guidance/notices/09-16 (awards "have no precedential value in other cases") (last visited Mar. 30, 2026).

[4] Because FINRA's rules allow arbitrators to withdraw if they are "unwilling to serve," which by default prompts appointment of a replacement arbitrator, FINRA Code of Arb. Proc. for Industry Disputes R. 13411 (2024), www.finra.org/rules-guidance/rulebooks/finra-rules/13411 (last visited Mar. 30, 2026), the composition of any given panel is subject to change.

third parties. ECF 52, MTD Reply, at 7-8 (cleaned up). But the limitations Plaintiffs invoke are not housekeeping provisions. They are substantive protections that could serve no purpose other than to prevent precisely what happened here: a regulated entity using the advisory-opinion process as an *ex parte* mechanism to obtain governmental support for a position it is litigating against adverse parties who are given no notice and no opportunity to be heard.[5]

### B.    The proposed class satisfies Rule 23(b)(2).

Defendants do not challenge the prerequisites to class certification under Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. Instead, they argue that Plaintiffs "cannot show that 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Cert. Opp'n at 10 (quoting Fed. R. Civ. P. 23(b)(2)). As Defendants acknowledge, "'[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Cert. Opp'n at 10-11 (quoting *Dukes*, 564 U.S. at 360). That is true here. The DOL issued an Advisory Opinion that applies to the plans at issue in each class member's proceeding. Am. Compl. ¶ 91.

Nevertheless, Defendants insist that no class may be certified under Rule 23(b)(2) because of purported individualized issues concerning whether each class member (1) "can claim injury from the Advisory Opinion," Cert. Opp'n at 11, (2) suffered a change in "their exposure to attorneys' fees from 'nominal' to 'dormant' to 'substantial,'" *id*. at 12, (3) has a "basis to assert that their procedural rights were violated," *id*. at 13, or (4) can rely on the alleged discrepancy in plan disclosure language, *id*. at 14. As shown below, each argument fails on its own merits, but

---

[5] For example, the DOL expressly states that it "do[es] not issue letters for use in any investigation or litigation matter that existed before submitting your request." U.S. Dep't of Labor, Opinion Letters, https://beta.dol.gov/policy-regulations/opinion-letters (last visited Mar. 30, 2026).

there is an additional, threshold reason to reject them all: because the named Plaintiffs have standing to seek injunctive relief, Plaintiffs need not demonstrate that each class member independently has standing, and Rule 23(b)(2) applies because every class member would benefit from vacatur of the Advisory Opinion regardless of any variation in the degree of injury faced.

### 1.    Plaintiffs need not demonstrate that each class member has standing.

To be sure, Defendants do not invoke Article III when they argue that "the Court cannot conclude that injury will be able to be determined for the class as a whole." Class Opp'n at 11. But it is apparent that this is a standing argument in Rule 23 clothing. Indeed, Defendants ground their argument in a case about standing, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), which they cite for the proposition that "courts lack the 'power to order relief to any *uninjured* plaintiff, class action or not.'" Cert. Opp'n at 1 (emphasis added); *accord id*. at 11.

Defendants' reliance on *TransUnion* is misplaced. That case involved claims for statutory *damages* under the Fair Credit Reporting Act, even when the defendant never disseminated the false information at issue. *TransUnion*, 594 U.S. at 421. The Supreme Court held that "[e]very class member must have Article III standing in order to recover *individual damages*." *Id*. at 431 (emphasis added). But the Court declined to address "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *Id*. at 431 n.4. Moreover, the Court distinguished damages from *injunctive* relief, recognizing that someone "exposed to a risk of future harm may pursue forward-looking, injunctive relief," even where that same risk of harm would be insufficient to support Article III standing for a damages claim. *Id*. at 435-36, 441.

After *TransUnion*, there is "some confusion" about "whether (1) at the *outset* of (2) *money damage* cases, the class proponent need demonstrate that each putative class member can individually meet the requirements of Article III." 1 Newberg and Rubenstein on Class Actions § 2:3 (6th ed. 2025) (emphases added). But "there is no confusion in cases seeking injunctive or

4

other equitable relief: it is well settled that in such cases the standing inquiry focuses solely on the named plaintiff or proposed class representative." *Id.*; *see also Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022) ("Standing is satisfied so long as at least one named plaintiff can demonstrate the requisite injury.").

Defendants also invoke the Second Circuit's formulation that "a class may not be certified under Rule 23(b)(2) if any class member's injury is not remediable by the injunctive or declaratory relief sought." Cert. Opp'n at 11 (quoting *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020)). But this principle focuses on the benefit of the remedy, not differences in injury. A Rule 23(b)(2) class fails where some members cannot benefit at all from the injunction. In *Berni*, past purchasers of pasta were not eligible for inclusion in a Rule 23(b)(2) class because the injunction—a "fill-line" and disclaimer language on boxes—could provide no benefit to class members who *would never buy the pasta again*. *Berni*, 964 F.3d at 147-48; *see also id.* at 147 n.28 ("[S]ome, and maybe all, members of the class would receive no benefit from the relief provided, since the prospective injunctive relief would not redress their past harms.").

This case involves no such ineligibility. The putative class includes former Morgan Stanley financial advisors with *pending* claims. The Advisory Opinion hangs over each such claim like the sword of Damocles. Regardless of whether the Advisory Opinion poses a greater risk of injury to some claimants than it does to others, a "single injunction or declaratory judgment would provide relief to each member of the class." *Berni*, 964 F.3d at 146. That relief "need not 'be identical, only . . . beneficial.'" *Id.* at 147 n.28 (quoting *Sykes v. Mel. S. Harris and Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015)); *see also Latino Officers Ass'n City of New York v. City of New York*, 209 F.R.D. 79, 92 (S.D.N.Y. 2002) (certifying a 23(b)(2) class where "the actions complained of allegedly were taken on grounds generally applicable to the proposed class, *even if not every*

5

*member actually felt the brunt of the actions*" (emphasis added)).

Defendants' response is to hypothesize varied circumstances of individual class members' arbitrations. *See* Cert. Opp'n at 11-13. But, as shown below, the purportedly individualized questions defendants identify concern the *strength or degree* of each class member's injury (or risk of injury)—not whether the class will benefit from the relief sought.

> **2.      Rule 23(b)(2) certification is appropriate because a single injunction or declaratory judgment would provide relief to each member of the class.**

> **a.      The composition of individual arbitration panels is irrelevant.**

Defendants assert that individual variations in the composition of arbitration panels preclude certification because the Court would supposedly need to conduct a separate inquiry for each class member to assess whether that particular arbitration panel includes attorneys, how many attorneys are on the panel, what non-legal credentials any non-attorney arbitrators may have, and whether any of the arbitrators had previously issued public decisions that tipped their hand.[6] Cert. Opp'n at 11-12. This argument confuses the question of whether the risk that arbitrators will follow the Advisory Opinion is sufficiently substantial to satisfy Article III—a question asked only of the named Plaintiffs—with the question of whether the class includes individuals who face *no risk at all*, such that they cannot benefit from the relief sought. *See supra* Part II.B.1. Plaintiffs need not assess the background of each arbitrator to establish that there is at least *some* risk to every putative class member that arbitrators presented with the Advisory Opinion will follow it—a risk that will

---

[6] Defendants also note that the proposed class definition would include individuals with claims in litigation. But Plaintiffs are not aware of any cases pending in court, given this Court's order compelling arbitration. Nor do Defendants offer any plausible explanation as to why Morgan Stanley—having secured an order from this Court compelling arbitration of such claims—would agree to defend those same claims in court. Regardless, the Court may choose to narrow the class definition to include only former financial advisors with pending FINRA arbitration proceedings. *See, e.g.*, *M.G. v. New York City Dep't of Educ.*, 162 F. Supp. 3d 216, 232 (S.D.N.Y. 2016) ("[T]he court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision.").

be eliminated (and thus remedied) if Plaintiffs prevail.

> **b.    Any variation in attorneys' fee exposure is irrelevant.**

Defendants argue that Plaintiffs cannot establish class-wide injury from the Advisory Opinion's effect on their attorneys' fees risk because individual inquiries would be necessary to determine what each claimant's exposure was before and after the Opinion's issuance. Cert. Opp'n at 12. Specifically, Defendants suggest the Court would need to determine, for each class member, whether Morgan Stanley had previously asserted a right to fees, whether that individual had already concluded that other adverse developments materially increased the risk, and how each individual subjectively evaluated that risk. *Id*. This argument is misconceived. There is no individualized inquiry needed to conclude that the Advisory Opinion arms Morgan Stanley with grounds for fee-shifting that did not exist before it was issued. Whether Morgan Stanley previously threatened fee-shifting against a claimant or how that individual assessed the risk are irrelevant.

Before the Advisory Opinion, ERISA fee-shifting awards were a vanishingly small prospect. Such fees are awarded against plaintiffs almost exclusively to sanction bringing claims in bad faith. *See* MTD Opp'n at 13-14 (citing *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 111 (2d Cir. 2011)). But Plaintiffs prevailed on the ERISA-coverage issue before this Court in decisions supported by the Fifth Circuit.[7] After the Advisory Opinion, Morgan Stanley now has what it calls "the official position of DOL" to argue that Plaintiffs' claims lack merit. Am. Compl. ¶ 81. It has deployed that argument to threaten six-figure fee awards against any claimant who do not dismiss their claims with prejudice. Am. Compl. Exs. 13A, 13B; Jasinski Decl. Ex. 2. That Morgan Stanley

---

[7] *See Shafer v. Morgan Stanley*, No. 20-cv-11047-PGG, 2023 WL 8100717, at *20 (S.D.N.Y. Nov. 21, 2023) ("*Shafer I*"); *Shafer v. Morgan Stanley*, No. 20-cv-11047-PGG, 2024 WL 4697235, at *17-18 (S.D.N.Y. Nov. 5, 2024) ("*Shafer II*"); *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 624 (5th Cir. 2014).

did not send these threatening letters until after the Advisory Opinion issued—even though it had possessed other adverse authorities for months—is itself evidence that the Advisory Opinion imposes at least some risk on the fee-shifting calculus in every pending case and, thus, that the relief sought here would benefit every class member.

### c.    The timing of individual claims is irrelevant.

Defendants contend that any class members who brought their claims after Morgan Stanley submitted its request for an advisory opinion, in August 2024, cannot assert a procedural-rights claim, because that theory depends on the existence of pending proceedings at the time of the request—and later-filing class members had no proceedings pending at that time. Cert. Opp'n at 13. In Defendants' framing, those class members would be "rely[ing] on the alleged violation of rights of others." *Id*. (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

By way of background, in *Warth*, the Supreme Court ruled that taxpayers from Rochester, New York, could not challenge a suburb's exclusionary zoning ordinances. The taxpayers claimed that the suburb's "refusal to allow or to facilitate construction of low- and moderate-cost housing" forced Rochester to assume the burden of providing affordable housing, resulting in higher taxes. 422 U.S. at 508-509. Even if the plaintiffs' taxpayer injury was sufficient to satisfy Article III, the Court held that their claim fell "within the prudential standing rule that normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id*. at 509. The plaintiffs alleged that they paid higher taxes because the suburb violated the rights of third parties, but because the taxpayers were not subject to the suburb's zoning ordinance, they had no personal stake in being excluded from living there. *Id*. at 509.

*Warth* is inapposite here for at least two reasons. *First*, *Warth* itself expressly limits the prudential rule, explaining that "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules," and that "persons to whom Congress has

granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others." 422 U.S. at 501. The Court held the rule applicable to the taxpayer plaintiffs in *Warth* only because "no statute expressly or by clear implication grant[ed] a right of action" to persons in their position. *Id*. at 510. Here, in contrast, the APA expressly grants a right of action to any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Plaintiffs need demonstrate only that their injury falls within the zone of interests that the violated statute was designed to protect or regulate, a test that is "not especially demanding." *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 128 (2d Cir. 2020). Claimants are precisely the type of parties ERISA was designed to protect. *See* 29 U.S.C. § 1132(k) (addressing jurisdiction of suits by participants or beneficiaries "to review a final order of the Secretary").

*Second*, Defendants wrongly dismiss the significance of *Shafer* as a pending putative class action—brought on behalf of all former Morgan Stanley financial advisors who forfeited deferred compensation—at the time Morgan Stanley submitted its advisory opinion request. Defendants assert that this Court's November 2023 order compelling arbitration[8] "ended the *Shafer* litigation in substance, eliminating any opportunity for a *Shafer* class to be certified in the future." Cert. Opp'n at 13. But that order was the subject of, not only Morgan Stanley's motion for reconsideration,[9] but also a cross-appeal in which the plaintiffs challenged the order compelling arbitration. Until the Second Circuit dismissed that cross-appeal, on July 9, 2025,[10] the question of whether the *Shafer* class could be certified in some form was not finally foreclosed. *Cf. Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974) ("Rule 23 is not designed to afford class

---

[8] *Shafer I*, 2023 WL 8100717, at *29.
[9] *See Shafer II*, 2024 WL 4697235, at *19.
[10] *Shafer v. Morgan Stanley*, No. 24-3141(L), 2025 WL 1890535, at *2 (2d Cir. July 9, 2025).

action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action.").

### d.      The change in plan disclosure language is irrelevant.

Finally, Defendants argue that some class members' claims relate to plan years 2021 and later—years when the plans used the phrase "bonus program"—and those class members therefore cannot join the named Plaintiffs' argument that the Advisory Opinion was arbitrary and capricious based on Morgan Stanley's misrepresentation about plan language. Cert. Opp'n at 14. Here, again, Defendants cite *Warth v. Seldin*, which teaches that a plaintiff may not "rest his claim to relief on the legal rights or interests of third parties." 422 U.S. at 499. This argument misunderstands the significance of the disclosure-language issue.

The disclosure language allegation is not an independent cause of action that some class members can assert and others cannot. It is a component of the broader claim that the DOL relied on Morgan Stanley's misrepresentation that the Plans "clearly state" that the program is a "bonus program and not a retirement plan." Advisory Opinion No. 2025-03A, 2025 WL 2642870, at *2 (Sept. 9, 2025). The significance of this misrepresentation is not that the 2015–2020 disclosures differ from the 2021 disclosures in a way that affects the merits of earlier claims. To the contrary, Morgan Stanley was telling the truth when it said "the substance of the program has not changed." *Id*. at *2 n.7. But it concealed a change in language that obfuscated the true nature of the plans as deferred-compensation plans, not bonus programs.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons stated in Plaintiffs' opening memorandum in support of class certification, the Court should certify the proposed class under Rule 23(b)(2).

Dated: April 3, 2026

Respectfully submitted,

*/s/ Mathew P. Jasinski*

Thomas R. Ajamie
AJAMIE LLP
150 East 58th Street, 29th Floor
New York, NY 10155
(713) 860-1600
tajamie@ajamie.com

Mathew P. Jasinski
F. Franklin Amanat
Douglas P. Needham
Riley Breakell
MOTLEY RICE LLC
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
mjasinski@motleyrice.com
famanat@motleyrice.com
dneedham@motleyrice.com
rbreakell@motleyrice.com

John S. "Jack" Edwards, Jr.
Courtney D. Scobie
AJAMIE LLP
711 Louisiana St., Suite 1600
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com
cscobie@ajamie.com

New York Office:
800 Third Avenue, Suite 2401
New York, NY 10022

Alan L. Rosca
Paul Scarlato
Lisa Fish
ROSCA SCARLATO LLC
Main Office:
3401 Enterprise Pkwy, Suite 340
Beachwood, OH 44122
(216) 946-7070
arosca@rscounsel.law
pscarlato@rscounsel.law
lfish@rscounsel.law

Seth Klein (*pro hac vice* pending)
IZARD, KINDALL & RAABE, LLP
29 South Main St., Suite 305
West Hartford, CT 06107
(860) 493-6292
sklein@ikrlaw.com

11

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the word-count limitations pursuant to Local Rule 7.1(c). Excluding the caption, table of contents, table of authorities, signature blocks, and certificates, the document is 10 pages long and the word count is 3,479 words.

/s/ Mathew P. Jasinski
Mathew P. Jasinski