**U.S. Department of Labor**

Employee Benefits Security Administration
Washington, D.C. 20210

September 9, 2025

Kent A. Mason
Davis & Harmon LLP
1455 Pennsylvania Avenue
Suite 1200
Washington, DC 20004

2025-03A
3(2)

Dear Mr. Mason:

This is in response to your request on behalf of Morgan Stanley Smith Barney LLC (Morgan Stanley or the Firm) for an advisory opinion from the Department of Labor (Department) regarding the applicability of the Employee Retirement Income Security Act of 1974, as amended (ERISA). Specifically, you ask whether the Firm's deferred incentive compensation program, comprised of the Equity Incentive Compensation Plan (EICP) and Morgan Stanley Compensation Incentive Plan (MSCIP), (i) is not an "employee pension benefit plan" under section 3(2)(A) of Title I of ERISA; and (ii) qualifies as an exempt "bonus program" under 29 C.F.R. § 2510.3-2(c).

You represent that the Firm's financial advisors receive a guaranteed base salary and are eligible to earn cash incentive compensation which is paid throughout the year. In addition, financial advisors are eligible to earn deferred incentive compensation, with 25% issued as an unsecured deferred stock award under the EICP and the remaining 75% percent as an unsecured deferred cash-based award under the MSCIP.[1] The deferred stock units are converted to shares of Morgan Stanley common stock and deposited into a brokerage account, while cash-based awards are deposited into the financial advisors' payroll accounts, on the "scheduled vesting date" only when all conditions are met, as described below.

All incentive compensation is calculated based on "Total Credits." The financial advisor's Total Credits for each month are determined by the applicable "Credit Rate" multiplied by the creditable revenue generated by the financial advisor. The Credit Rate is a percentage between 28% and 55.5% that increases with the financial advisor's revenue and length of service with the Firm. A portion of the Total Credits is allocated to "Deferred Credits" (between 1.5% and 15.5% of the financial advisor's total incentive compensation), based on the level of revenue the financial advisor generates. The cumulative value of the monthly Deferred Credits for the year is granted to the financial advisor in the form of deferred incentive compensation (deferred stock and cash awards) shortly after the year-end. Deferred incentive compensation awards are generally contingent, among other things, upon the advisor remaining continuously employed through the grant and vesting dates. Accordingly, if the financial advisor terminates employment

[1] The advisors have individual, notional accounts in the MSCIP, and they can invest their accounts in notional investments, with the value of their accounts tracking the performance of the selected investments.

during the year, there is no award of the Deferred Credits granted for that year. The rest (between 84.5% and 98.5%) of the Total Credits are allocated to "Cash Credits," which are used to calculate and pay cash incentive compensation monthly.

Both cash and deferred incentive compensation reward good performance by calculating the amount, in part, based on a financial advisor's generation of revenue for the Firm. Deferred incentive compensation, however, serves additional purposes: to reward financial advisors for their "continued employment and service to the Firm in the future and [advisor] compliance with the Firm's policies (including the Code of Conduct)." In this regard, you represent that by conditioning payment on continuous employment and good guardianship, the deferred compensation awards are designed to motivate advisors to stay with the Firm and to comply with firm policies that require advisors to act as good stewards of client assets. Accordingly, with five exceptions described below, financial advisors are generally eligible for payment of the deferred incentive compensation awards only if they remain continuously employed and in good standing on the "scheduled vesting date,"[2] which occurs after four years (for stock awards) or six years (for cash awards) of continuous service following the grant date of such awards.

The deferred incentive compensation awards are canceled if a financial advisor: (1) terminates employment before the scheduled vesting date; or (2) engages in prohibited activity, such as violating securities rules and regulations, engaging in dishonest or fraudulent conduct, disclosing privileged or confidential information or trade secrets, making disparaging or defamatory comments about the Firm before the scheduled award distribution date, soliciting customers the financial advisor serviced while employed by the Firm for a competitor without the Firm's consent before the earlier of the three years after termination or the scheduled award distribution date, taking employment with a competitor within 100 miles without the Firm's consent before the earlier of one year after termination or the scheduled award distribution date, or engaging in other conduct that is cause for termination.[3] The awards are not cancelled if a financial advisor's employment terminates due to: (1) death; (2) disability; (3) retirement; (4) involuntary termination not involving any prohibited activity; or (5) termination due to government service not involving any prohibited activity. In these cases, the payment schedule depends on the exception clause under which the awards are paid.[4] You represent that payments under these relatively uncommon situations are designed to uphold the awards' primary purposes of encouraging long-term retention of financial advisors and promoting good conduct.

[2] Except as noted in footnote 4, the terms "scheduled vesting date," "distribution date," and "award distribution date" all refer to the same date on which, after meeting all conditions of the program, the benefits are paid to the financial advisors (payment is typically made within a matter of days due to administrative processing times).
[3] The Department does not express any view on whether the non-disparagement, non-compete, and non-solicitation provisions under the program are reasonable.
[4] For the exception due to death, the award is paid to a designated beneficiary upon notification to the Firm. For the exception due to retirement, 50% of the award is paid on the first anniversary after retirement, with the remaining 50% paid on the second anniversary, if the retiree does not engage in specified prohibited activity. For the exception due to governmental service termination, the award is paid on the date of termination. For the exception due to disability or involuntary termination by the Firm, the award is paid on the scheduled vesting date (four years for EICP and six years for MSCIP).

Financial advisors do not have the option to extend or delay the distribution date. From 2009-2019[5], 89.9% to 95.2% of deferred incentive stock awards issued under EICP were distributed to current employees; in the aggregate over that period 91.8% of such distributions were made to current employees (compared to 8.2% for former employees). Similarly, from 2009 to 2017, 80.1% to 92.6% of cash distributions were ultimately paid to current employees; in the aggregate over that period current employees were paid 85.3% of deferred incentive cash awards issued under the MSCIP (compared to 14.7% for former employees).[6]

The award conditions are disclosed annually in the award certificates, summary descriptions and other communications. These disclosures also clearly state that the deferred incentive compensation awards are "contingent and unsecured" and that the program is a:

> bonus program and not a retirement plan. Its purposes are to reward and retain key employees of the Firm and to align their interests with those of the shareholders. Participants should not look to this bonus program as a source of retirement income. This bonus program is not subject to the Employee Retirement Income Security Act of 1974.[7]

You also state that the awards are structured to meet the expectations of the Firm's financial regulators regarding the use of deferred compensation to motivate good conduct and penalize bad conduct.[8]

Section 3(2)(A) of ERISA defines the terms "employee pension benefit plan" and "pension plan" as follows:

> [T]he terms "employee pension benefit plan" and "pension plan" means any plan, fund, or program established or maintained by an employer to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

---

[5] You represent that for stock awards issued under the EICP, the most recent plan year to have vested (as of August 2024) was the 2019 plan year.

[6] You represent that for cash awards issued under the MSCIP, the most recent plan year to have vested (as of August 2024) was the 2017 plan year.

[7] *See, e.g.*, EICP 2021 Discretionary Retention Awards Stock Unit Summary Description and MSCIP 2021 Discretionary Retention Awards Summary Description. Per your submission, the exact language in the description of this program has changed over the years, but the substance of the program has not changed.

[8] You noted that financial regulators, including Financial Industry Regulatory Authority, the Federal Reserve Board of Governors, the Securities and Exchange Commission, and the office of the Comptroller of the Currency, have issued guidance advising and proposed regulations requiring regulated entities to defer portions of employee incentive compensation, and to make that compensation contingent and cancelable, to address risk-taking and other behaviors that may be harmful to customers and the public markets.

The Department's regulation at 29 C.F.R. § 2510.3-2(c) "clarifies the limits" of the term pension plan for purposes of Title I of ERISA by describing certain arrangements that will not constitute an employee pension benefit plan within the meaning of ERISA section 3(2). Specifically, 29 C.F.R. § 2510.3-2(c) provides:

> For purposes of Title I of [ERISA], the term . . . "pension plan" shall not include payments made by an employer to some or all its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.

The EICP and MSCIP do not, by their express terms, make payment of deferred incentive compensation awards contingent on termination of employment or retirement. Financial advisors earn the right to award payments only upon satisfying the award conditions, which require them to remain continuously employed and in good standing through the scheduled vesting date (four or six years of continuous service after the award is granted). On the scheduled vesting date, the award payments are made automatically, and financial advisors are not permitted to defer the payments to a later date. If a financial advisor terminates employment or engages in prohibited activities before vesting, the awards are cancelled, except under limited circumstances. These conditions are disclosed annually to the financial advisors. These annual disclosures also expressly state that financial advisors "have no right to ... [the] award until it is 'earned,'" the awards are "contingent upon the [financial advisor] remaining employed through the grant and vesting dates of the award," the awards are "not intended to provide for retirement income," and that the program is "not a retirement plan subject to [ERISA]." Accordingly, we find the program, by its express terms, not to be an employee pension benefit plan within the meaning of ERISA section 3(2)(A).

Although the deferred incentive compensation program does not, by its express terms, defer income to termination of employment or beyond or provide retirement income, awards may be paid after the end of employment in limited circumstances where financial advisors are unable to remain employed through the awards' vesting dates due to death, disability, retirement, involuntary termination or government service. The Department has previously expressed the view that, even though a program allows payments, which would otherwise be made on a specified date, to be paid earlier in the event an employee terminates employment, allowing such earlier payment does not automatically mean that the arrangement is a pension plan. Instead, the Department considers such provisions as one factor to be considered along with other surrounding circumstances in determining whether the program may be providing retirement income or results in a deferral of income for periods extending to the termination of covered employment or beyond. Advisory Opinion 83-46A (Sept. 8, 1983). *See also* Advisory Opinion

2002-13A (Dec. 6, 2002); Advisory Opinion 82-29A (July 8, 1996); Advisory Opinion 81-74A (Sep. 29, 1981).[9]

The question of whether a plan, fund, or program is a pension plan within the meaning of ERISA section 3(2)(A) "as a result of surrounding circumstances," is inherently factual in nature and the Department generally does not issue advisory opinions on purely factual questions under ERISA. *See* Section 5.01 of ERISA Procedure 76-1, 41 Fed. Reg. 36281 (Aug. 27, 1976). In this case, however, the materials you submitted do not appear to indicate the existence of any of the surrounding circumstances that the Department has previously said would tend to support the finding that an arrangement constitutes a pension plan. For example, there is no evidence suggesting any of the following: (i) an inordinate percentage of the award recipients were at or near retirement age when the benefits were to be paid; (ii) distributions were skewed toward the last years of the participants' careers; (iii) amounts were distributed with a relatively long payout schedule; (iv) individuals not otherwise eligible were selected to receive the award based on being at or near retirement age; (v) participation was limited to individuals ineligible for the Firm's retirement plan (which might suggest that the program is meant to replace the Firm's retirement plan); or (vi) the program was communicated to participants in a manner that caused them to defer income until retirement. *See* Advisory Opinion 98-02A (Mar. 6, 1998); Advisory Opinion 83-46A (Sept. 8, 1983); Advisory Opinion 83-42A (Sept. 8, 1983); Advisory Opinion 81-27A (Mar. 9, 1981). Taking into account both the program's design and operative provisions, its annual disclosures, the data on when most awards were received, and all other materials you provided, in the Department's view, the mere fact that the terms of the program contemplate limited situations where an award *could* be paid after termination of employment does not implicate a deferral of income of the kind contemplated by ERISA section 3(2)(A). Thus, the Department has no reason to believe that the deferred incentive compensation program is an employee benefit pension plan under ERISA section 3(2)(A) as a result of such surrounding circumstances.

At any rate, the deferred incentive compensation program qualifies as an exempt "bonus program" under 29 C.F.R. § 2510.3-2(c), which clarifies the definition of the term employee benefit pension plan for purpose of Title I of ERISA by describing certain arrangements that will not constitute an employee pension benefit plan within the meaning of ERISA section 3(2)(A). The Department has applied the "bonus program" regulation to programs that calculate bonuses in diverse ways, including an incentive plan that calculates bonus as a percentage of revenue

---

[9] The courts have similarly rejected the notion that all post-employment payments trigger ERISA coverage under ERISA section 3(2)(A). *See e.g.*, *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574-75 (5th Cir. 1980) ("[ERISA] does not embrace all plans that may incidentally result in the payment of benefits after death or disability but only plans established for the purpose of providing those benefits . . . . Under the statutory definition, the mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage."); *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 436 (6th Cir. 2019) ("[t]o determine if the Safelite Plan is covered, we look to its design and administration, applying the language of the statute to the Plan's express terms and/or its surrounding circumstances"); *Oatway, Inc. v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) ("post-retirement payments were only incidental to the goal of providing current compensation"); *Milligan v. Bank of America Corp.*, 2025 WL 892972, *5 (W.D.N.C March 11, 2025) (In interpreting ERISA section 3(2)(A), the "mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage").

generated by the participants, much like the Firm's deferred incentive compensation program, as well as a percentage of revenue generated by the Company, a percentage of a company's net revenue interest, royalties from oil and gas leases and the safe conduct of an employer's business. *See e.g.*, Advisory Opinion 2002-13A (Dec. 6, 2002); Advisory Opinion 98-02A (March 6, 1998); Advisory Opinion 83-42A (Aug. 17, 1983); Advisory Opinion 82-29A (Jul. 2, 1982).

The express purposes of the deferred incentive compensation program are to reward financial advisors for their long-term tenure and incentivize good behaviors desired by the Firm. The program's design and administration are tailored to achieve those goals and to meet the financial regulatory requirements regarding using deferred compensation to motivate good conduct and penalize bad conduct.[10] The awards are unsecured and not guaranteed, unlike salary and commissions, there is no accrual (*i.e.*, no partial payouts for partial periods of performance) and financial advisors are notified annually about the express purposes and conditions of the program and informed that it is not a retirement plan subject to ERISA. Accordingly, the program's express purposes, design, administration and the conditions on the award payments support the conclusion that the awards are bonuses. Moreover, the proportion of payments to current employees (over 85% for cash awards, over 91.8% for stock conversions) compared to former employees, clearly demonstrate that such payments are only incidental and not "systematically deferred" to termination of covered employment or beyond, or so as to provide retirement income. *See* Advisory Opinion 2002-13A (Dec. 6, 2002).

Accordingly, it is the Department's view that the deferred incentive compensation program appears to be a bonus program within the meaning of 29 C.F.R. § 2510.3-2(c). The payment of a small percentage of awards to financial advisors who terminated employment before the awards' vesting dates due to death, disability, involuntary termination or government service, is not the sort of deferral of income contemplated by ERISA section 3(2)(A). As described above, the program does not involve the systematic deferral of payments to the termination of covered employment or beyond, which would preclude the deferred incentive compensation program from being a bonus program.

This letter constitutes an advisory opinion under ERISA Procedure 76-1 and is issued subject to the provisions of that procedure, including section 10 thereof relating to the effect of an advisory opinion.

Sincerely,

Jeffrey J. Turner
Director
Office of Regulations and Interpretations

[10] *See* footnote 8.