O'Melveny

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006-4061

T: +1 202 383 5300
F: +1 202 383 5414
omm.com

File Number:

August 1, 2024

**Greg Jacob**
D: +1 202 383 5110
gjacob@omm.com

**CONFIDENTIAL**

U.S. Department of Labor
Employee Benefits Security Administration
Office of Regulations and Interpretations
200 Constitution Avenue, NW, Suite N-5655
Washington, DC 20210

**Re:** ***Request for Advisory Opinion on Application of ERISA to Deferred Incentive Compensation Awards Issued to Morgan Stanley Financial Advisors***

Dear Assistant Secretary Gomez:

On behalf of Morgan Stanley Smith Barney LLC ("Morgan Stanley"),[1] I write to request an advisory opinion from the U.S. Department of Labor ("the Department") regarding whether ERISA applies to deferred incentive compensation awards that Morgan Stanley issues to financial advisors.

For many years, Morgan Stanley has issued deferred stock awards under the Equity Incentive Compensation Plan ("EICP") and deferred cash awards under the Morgan Stanley Compensation Incentive Plan ("MSCIP") to eligible financial advisors. The awards are designed to promote retention and good conduct as well as to reward good performance: Payment under the awards is contingent on the advisor remaining employed and in compliance with Morgan Stanley's Code of Conduct through a vesting period of four or six years. The awards are generally canceled if the advisor fails to meet the express vesting and other conditions of the awards, except that advisors (or their estate) may still receive payment on the awards if their Morgan Stanley employment ends on account of death, disability, retirement, not-for-cause termination, or government service—circumstances that Morgan Stanley considers important for humanitarian reasons. Consistent with the awards' primary purpose of promoting employee retention and good conduct, the substantial majority of payments under the awards has historically been to financial advisors who remain employed in good standing with Morgan Stanley through the scheduled vesting date.

Through this letter, Morgan Stanley seeks an advisory opinion confirming that (i) the deferred incentive compensation awards are not an "employee pension benefit plan" under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and (ii) the awards qualify as an ERISA-exempt "bonus program" under 29 C.F.R. § 2510.3-2(c). While Morgan Stanley believes that conclusion follows clearly from the Department's regulatory guidance and the caselaw considering similarly

[1] Morgan Stanley's EIN is 26-4310844. I am authorized to submit this letter on Morgan Stanley's behalf.

structured employee compensation programs, the Department's guidance would help put to rest questions that have recently been raised about whether ERISA applies to these awards, and ensure that Morgan Stanley can continue to provide this form of incentive compensation to its financial advisors.

## I. Background

### A. Morgan Stanley's Deferred Incentive Compensation Awards

#### 1. *Morgan Stanley Issues Contingent Deferred Incentive Compensation Awards to Promote Retention and Good Conduct*

Morgan Stanley financial advisors are eligible to earn incentive compensation. This includes cash incentive compensation, and deferred incentive compensation (in the form of cash or stock). Cash incentive compensation is paid throughout the year and makes up the vast majority of the total incentive compensation that an eligible advisor may receive. Deferred incentive compensation is issued as a contingent award under the EICP (for stock) or the MSCIP (for cash). All of the incentive compensation is based on the financial advisor's revenue generation and tenure at the firm: advisors earn "total credits" based on those metrics, and the portion of "total credits" allocated to "deferred credits" (anywhere between 1.5% and 15.5% of an eligible advisor's total incentive compensation) is based on the level of revenue an advisor generates. The rest of the advisor's "total credits" (between 98.5% and 84.5%) is allocated to "cash credits." "Cash credits" are used to compute the advisor's cash incentive compensation, and "deferred credits" are used to compute the advisor's deferred incentive compensation award.

Insofar as all of the incentive compensation is calculated in part based on an advisor's generation of revenue for Morgan Stanley, the incentive compensation rewards advisors for good performance. But the deferred compensation awards serve additional purposes: to reward advisor retention and good conduct. The Award Certificates issued to advisors each year state this explicitly:

> "The purposes of the . . . award are, among other things . . . **to reward** you for your **continued Employment and service to the Firm in the future** and your **compliance with the Firm's policies** (including the Code of Conduct) . . . ."[2]

Under the express terms of the deferred incentive compensation awards, and subject to the limited exceptions detailed below, advisors are eligible for payment under the awards only if they remain employed and in good standing on the scheduled vesting date. If the advisor leaves Morgan Stanley before the scheduled vesting date, the awards are subject to cancellation. The awards may also be canceled if the advisor engages in misconduct.

By conditioning payment on vesting and good guardianship, the deferred incentive compensation awards are designed to motivate advisors to stay with the firm and to comply with firm policies that require advisors to act as good stewards of client assets. In particular, the awards are structured to meet the expectations of Morgan Stanley's financial regulators

---

[2] *See, e.g.*, MSCIP 2015 Discretionary Retention Awards Award Certificate, at 2 (emphasis added).

regarding the use of deferred compensation to motivate good conduct and to penalize bad conduct.[3]

If and when the award conditions are met, the award payment is generally deposited in the advisor's payroll account (for cash awards) or brokerage account (for stock awards), and taxes are withheld at the time of distribution.[4] Advisors do not have the option to receive payment on the awards before vesting, nor can they defer payment on the awards beyond the vesting date, though advisors can allocate award payments after vesting and at the time of delivery to voluntary deferral programs at Morgan Stanley, such as the Morgan Stanley 401(k) plan, just as they could with any payroll distribution.

2. *Structure of Deferred Incentive Compensation Awards*

To fulfill their dual primary purposes, Morgan Stanley's deferred incentive compensation awards are subject to vesting and guardianship conditions. *First*, the awards vest upon four years of continuous service (for stock awards issued under the EICP) or six years of continuous service (for cash awards issued under the MSCIP).[5] As a general rule, if an advisor terminates his or her employment before the scheduled vesting date, the awards are canceled. *Second*,

[3] In addition to the Department, Morgan Stanley's many regulators include the Financial Industry Regulatory Authority ("FINRA"), the Federal Reserve Board of Governors, the U.S. Securities and Exchange Commission ("SEC"), and the Office of the Comptroller of the Currency. Financial regulators have issued and also proposed guidance advising regulated entities to use deferred compensation (and its cancellation) to address risk-taking and other harmful behaviors. *See, e.g.*, Guidance on Sound Incentive Compensation Policies, 75 Fed. Reg. 36,395, 36,396, 36,408-410 (June 25, 2010) (identifying as best compensation practice a system of deferring incentive compensation awards for multi-year periods and providing for cancellation of unvested awards for conduct violations); Notice of Proposed Rulemaking, "Incentive-Based Compensation Arrangements," Office of the Comptroller of the Currency, Notice of Proposed Rulemaking on Incentive-Based Compensation (May 6, 2024), https://www.occ.gov/news-issuances/news-releases/2024/nr-ia-2024-47a.pdf , at pp. 180-81, 192 (proposing regulation implementing Section 954 of the Dodd-Frank Act requiring banks to maintain a system whereby portions of incentive compensation awarded to "significant risk-takers" are deferred for multi-year periods and subject to forfeiture and downward adjustments in cases of inappropriate risk-taking and violations of applicable standards of conduct, among other things); FINRA, 2024 FINRA Annual Regulatory Oversight Report 45 (Jan. 2024), https://www.finra.org/sites/default/files/2024-01/2024-annual-regulatory-oversight-report.pdf (asking whether, in meeting conflict of interest obligations, FINRA member firms "adjust[] compensation for financial professionals who fail to adequately manage conflicts of interest associated with account recommendations"); Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33392 (July 12, 2019) (SEC: "best practices" for compliance with Regulation Best Interest include "adjusting compensation for associated persons who fail to adequately manage conflicts of interest").

[4] FICA taxes are drawn on the awards and paid to the Internal Revenue Service before the vesting date and before distribution if the advisor reaches retirement age, in good standing, under the terms of the awards. The remainder of the award is paid to the advisor upon vesting.

[5] Before 2016, the deferred incentive cash awards issued under the MSCIP were subject to an eight-year vesting period.

the awards are contingent on the advisor remaining in good standing with the firm through the vesting dates. If the advisor engages in prohibited activity—for example, violating securities rules or regulations, engaging in dishonest or fraudulent conduct, disclosing confidential client information or trade secrets, or other conduct that is cause for termination—the awards are also subject to cancellation. As noted above, this condition is paramount to Morgan Stanley's business, including compliance with applicable laws and the responsible stewardship of client assets.

These conditions are expressly disclosed each year in award documentation and other communications. For instance, the award Term Sheets, which summarize the key terms of the awards, disclose the following in a section titled "Earning Award":

> "You have **no right to your . . . award until it is 'earned**.' Generally, to earn your award, **you must (1) remain in continuous Employment** through the Scheduled Vesting Date, [and] (2) **even if your award is vested, not engage in any** activity that constitutes **Prohibited Activity** . . . ."[6]

The Award Certificates contain a similar disclosure:

> "[Y]ou will earn your . . . award **only if** you (1) **remain** in **continuous Employment** through the Scheduled Vesting Date (subject to limited exceptions set forth below), [and] **do not engage in any Prohibited Activity** . . . ."[7]

Similarly, the Compensation Guide, which details the components and core terms of advisor compensation in advance of each year, discloses that:

> "Deferred compensation awards are **contingent** upon the [financial advisor] **remaining employed** through the grant and vesting dates of the award."[8]

The disclosures provided to advisors each year also expressly state that the awards are "not intended to provide for retirement income,"[9] that advisors "should not look to this program as a source of retirement income," and that the program under which the awards are issued is "not a retirement plan . . . subject to [ERISA]."[10]

By their terms, the deferred incentive compensation awards generally are not canceled upon the termination of employment under certain special circumstances—the awards may still be paid if an advisor's employment terminates due to (i) death, (ii) disability, (iii) involuntary not-

---

[6] *See, e.g.*, MSCIP 2015 Discretionary Retention Award Summary Description, at 1 (emphasis added).

[7] *See, e.g.*, MSCIP 2015 Discretionary Retention Awards Award Certificate, at 1 (emphasis added).

[8] *See, e.g.*, 2015 Financial Advisor/Private Wealth Advisor Compensation Plan, Growth Award and Recognition Programs, at 5 (emphasis added).

[9] *See, e.g.*, *id.*

[10] *See, e.g.*, MSCIP 2015 Discretionary Retention Award Summary Description, at 7.

for-cause termination, (iv) retirement, or (v) government service, though the schedule for payment may depend on the exception under which the award is paid.[11] Payment under those special circumstances does not frustrate the awards' primary purposes of promoting advisor retention and good conduct.

### B. Deferred Incentive Compensation Award Distribution and Conversion Data

Morgan Stanley has paid billions of dollars in deferred incentive compensation to eligible financial advisors over the last decade. The vast majority of those payments has been made to current employees, consistent with the awards' primary retention purpose.

For deferred incentive stock awards issued under the EICP from 2009 to 2019,[12] between 89.9% and 95.2% of eventual stock conversions went to current employees; in the aggregate, current employees received **91.8%** of such conversions (compared to 8.2% for former employees).

| Plan Year | EICP Share Conversions to Current Employees | EICP Share Conversions to Former Employees |
|---|---|---|
| 2009 | 1,267,841.00 | 93,492.00 |
| 2010 | 4,425,582.69 | 353,472.43 |
| 2011 | 5,374,074.99 | 590,060.24 |
| 2012 | 3,318,644.50 | 166,198.20 |
| 2013 | 1,728,358.59 | 89,000.89 |
| 2014 | 1,827,752.88 | 112,110.42 |
| 2015 | 3,488,805.91 | 353,277.69 |
| 2016 | 2,020,318.47 | 209,792.94 |
| 2017 | 1,692,476.87 | 191,086.32 |
| 2018 | 2,433,967.39 | 280,758.90 |
| 2019 | 2,024,127.03 | 216,772.81 |

Similarly, for deferred incentive cash awards issued under the MSCIP from 2009 to 2017,[13] between 80.1% and 92.6% of eventual cash distributions went to current employees; in the aggregate, current employees received **85.3%** of such distributions (compared to 14.7% for former employees).

[11] If an eligible advisor dies, all unvested awards immediately vest and are paid to the designated beneficiary upon notification to Morgan Stanley. For qualifying retirees, 50% of the unvested awards is paid on the first anniversary after retirement, with the remaining 50% paid on the second anniversary, so long as the retiree does not engage in specified prohibited activity. If an advisor qualifies for governmental service termination, all unvested awards immediately vest and are paid on the date of termination. Under the other exceptions, the awards are paid on the scheduled vesting date.

[12] For stock awards issued under the EICP, the most recent plan year to have vested was the 2019 plan year; for cash awards issued under the MSCIP, the most recent plan year to have vested was the 2017 plan year.

[13] *See supra* n.12.

| Plan Year | MSCIP Cash Distributions to Current Employees | MSCIP Cash Distributions to Former Employees |
|---|---|---|
| 2009 | $223,916,979 | $21,903,655 |
| 2010 | $159,074,985 | $12,748,728 |
| 2011 | $233,478,724 | $25,937,804 |
| 2012 | $292,812,811 | $53,966,359 |
| 2013 | $201,233,519 | $42,992,679 |
| 2014 | $200,204,568 | $49,603,685 |
| 2015 | $347,491,105 | $78,744,353 |
| 2016 | $299,009,091 | $51,892,800 |
| 2017 | $314,670,042 | $53,596,885 |

This data reflects that current employees receive the substantial majority of payments under these deferred incentive compensation awards, with former employees receiving a minority of payments pursuant to the exceptions to cancellation detailed above.

## II. Relevant Authority

### A. Pension Plan and Bonus Program Defined

ERISA defines a "pension plan" as any plan, fund, or program that "by its express terms or as a result of surrounding circumstances" (i) "provides retirement income to employees" or (ii) "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." ERISA § 3(2)(A)(i)-(ii), 29 U.S.C. § 1002(2)(A)(i)-(ii). Careful analysis of the relevant program's "primary purpose" is a "paramount consideration" in determining coverage under the statute. *Rich v. Shrader*, 823 F.3d 1205, 1210 (9th Cir. 2016).

The Department has, by regulation, clarified that certain programs are exempt from ERISA's pension rules. Relevant here, the Department has stated that the definition of a pension plan "shall *not* include payments made by an employer to some or all of its employees as bonuses for work performed, *unless* such payments are *systematically* deferred to the termination of covered employment or beyond, so as to provide retirement income to employees" (*i.e.*, a "bonus program"). 29 C.F.R. § 2510.3-2(c) (emphasis added).

### B. Need for Additional Guidance from the Department

The Department has issued a series of advisory opinions over the last few decades that, in Morgan Stanley's view, confirm that the EICP and MSCIP deferred incentive compensation awards are not subject to ERISA simply because some payments may be made to former employees under exceptions to cancellation, as detailed above. *See, e.g.*, Op. No. 79-15A (Mar. 12, 1979); Op. No. 79-20A (Mar. 19, 1979); Op. No. 82-29A (July 2, 1982); Op. No. 89-07A (Apr. 27, 1989); Op. No. 98-02A (Mar. 6, 1998); Op. No. 2002-13A (Dec. 6, 2002). Based on these opinions, Morgan Stanley has understood that the deferred incentive awards do not qualify as a "pension plan" under ERISA, either by their express terms (which state the awards are not intended to provide retirement income), ERISA § 3(2)(A)(i), 29 U.S.C. § 1002(2)(A)(i), or by their surrounding circumstances (which show, *inter alia*, that there is no deferral of earned income "by employees" under the terms of the awards, and that the vast majority of payments is made to current employees, with only incidental payments made to former employees who fall

within the limited humanitarian exceptions), ERISA § 3(2)(A)(ii), 29 U.S.C. § 1002(2)(A)(ii). Morgan Stanley likewise has understood that the deferred incentive awards come within the Department's "bonus program" exemption at 29 C.F.R. § 2510.3-2(c), because they provide bonuses that are not systematically deferred to the termination of employment or beyond.

The Department's existing guidance is reinforced by caselaw recognizing that "retention bonuses" like the Morgan Stanley deferred incentive compensation awards qualify as "bonuses" under the Department's bonus regulation. *See, e.g.*, *Oatway v. A.I.G., Inc.*, 325 F.3d 184, 188-89 (3d Cir. 2003); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993); *Faris v. S. Ute Indian Tribe*, 2023 WL 7386870 (D. Colo. Nov. 8, 2023); *Cashman v. GreyOrange, Inc.*, 2023 WL 2652789, at *5 (N.D. Ga. Mar. 27, 2023); *Hester v. Whatever It Takes*, 2022 WL 89176, at *5 (W.D. Ky. Jan. 7, 2022); *Pilkington v. CGU Ins. Co.*, 2000 WL 33159253, at *1, *3 (E.D. Pa. Feb. 9, 2001); *Killian v. McCulloch*, 850 F. Supp. 1239, 1246 (E.D. Pa. 1994). Courts have similarly recognized, consistent with decades of Department guidance, that incentive compensation that is contingent on continued employment is not a "pension plan" under ERISA even if some compensation may be paid to former employees in circumstances such as death, disability, layoff, or retirement in the ordinary course. *See, e.g.*, *Oatway*, 325 F.3d at 189; *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574-75 (5th Cir. 1980); *Faris*, 2023 WL 7386870, at *5, *8-9; *Albers v. Guardian Life Ins. Co. of Am.*, 1999 WL 228367, at *3-4 (S.D.N.Y. Apr. 19, 1999); *Killian*, 850 F. Supp. at 1246; *Depew v. MNC Fin., Inc.*, 819 F. Supp. 492, 494 (D. Md. 1993).

Nevertheless, litigation and numerous arbitrations have been brought against Morgan Stanley contending that the deferred incentive compensation awards are subject to ERISA on account of the payments incidentally issued to former employees under the exceptions to cancellation. Confusion over whether the deferred incentive awards qualify as ERISA-exempt bonuses has been exacerbated by a district court order compelling arbitration but opining that the deferred incentive compensation awards are subject to ERISA. *See Shafer v. Morgan Stanley*, 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023). In the *Shafer* proceeding the court did not have the benefit of the full evidentiary record (including the data outlined above)—because the district court was deciding only a motion to compel arbitration, the court based its unsolicited merits commentary exclusively on the plaintiffs' complaint and certain award documents incorporated therein. Morgan Stanley did not file a responsive pleading, much less any dispositive motion, nor did it have an opportunity to present complete evidence and argument to facilitate a fair and reliable merits determination. As a result of that procedural posture, the district court's ERISA commentary was not well-grounded in the facts or the law. With the benefit of a complete evidentiary hearing, some arbitration panels have reached the opposite conclusion, finding that the deferred incentive compensation awards are *not* subject to ERISA. *See, e.g.*, Award, *Rude et al. v. Morgan Stanley*, FINRA Arb. No. 22-02183 (June 14, 2014), https://www.finra.org/sites/default/files/aao_documents/22-02183.pdf ("In the full context of the facts, a majority of the Panel determined [the awards] were a bonus . . . [and] was not persuaded that [Morgan Stanley's] FA Deferred Compensation Program was a 'pension plan' under ERISA.").

The pending challenges and contradictory outcomes are jeopardizing Morgan Stanley's ability to use this deferred compensation element to incentivize retention and good conduct—and thus threatening this element of compensation altogether. They are likewise jeopardizing Morgan Stanley's ability to continue incorporating the exceptions to cancellation that Morgan Stanley considers important for humanitarian reasons—exceptions that ultimately result in incidental payments beyond employment and do not conflict with the awards' primary retention and good guardianship purposes. Morgan Stanley accordingly believes that additional guidance

is important to ensure that it may continue to employ deferred incentive compensation structures that align with federal law and that support its efforts to retain advisors and ensure they conduct themselves consistently with the Firm's standards and values.[14]

## III. Request for Conference and Expedited Processing

Morgan Stanley is providing with this letter the award certificates, summary descriptions, and compensation guides pertaining to awards issued for compensation years 2015 to 2021, and respectfully requests confidential treatment of these materials pursuant to 5 U.S.C. § 552 and 29 C.F.R. § 70.26. We would be happy to provide the Department with additional materials pertinent to its consideration of this request.

Morgan Stanley respectfully requests a conference with the Department regarding this request, including in the event that the Department contemplates issuing an opinion advising that Morgan Stanley's deferred incentive compensation awards may be subject to ERISA. Morgan Stanley would consider such an opinion adverse to its interests. *See* ERISA Procedure 76-1, Section 6.05. Morgan Stanley further suggests that before issuing such an opinion the Department may also find it useful and important to consult with the federal agencies that encourage financial services firms to use deferred incentive compensation to promote good employee conduct and other important purposes.

Morgan Stanley also respectfully requests that the Department expedite its consideration of this request and the issuance of an advisory opinion regarding the same, given the pending arbitrations presenting this legal question. *See* ERISA Procedure 76-1, Section 6.06.

***

Thank you in advance for considering this request. Please do not hesitate to contact me with any questions or requests for additional information.

Sincerely,

Greg Jacob

Greg Jacob

---

[14] Absent additional guidance from the Department, the *Shafer* order, while not binding and presently under review, threatens to undermine the status of countless other long-term deferred incentive compensation programs offered by employers in the brokerage business—which could have a chilling effect on the use of these programs broadly as a critical tool for advisor retention and compliance. Indeed, the *Shafer* order has already prompted litigation over similar deferred compensation structures by another financial services firm. *See, e.g.*, Complaint, *Milligan v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*, 3:24-cv-00440-KDB-DCK (W.D.N.C. Apr. 30, 2024), ECF No. 1.