You don't often get email from gjacob@omm.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jon,

Following up on our call, please find attached Morgan Stanley's pending opinion letter request (A01533).

EBSA's Office of Regulations and Interpretations agreed after we met with Jeff Turner and Wayne Berry back in December 2024 that this request was meritorious, and Eric Berger told me two weeks ago that getting this letter out is now the office's top interpretive priority. What we're hoping for is a little Front Office nudge to get this really important "tort reform" type letter over the finish line and out. The timing is getting increasingly important given the confusion sown by a very sloppy district court in *Shafer v. Morgan Stanley*, 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023), and the industry really needs DOL to speak clearly and promptly, as they are planning their go-forward compensation structures at the halfway point into 2025; *Shafer* would require the entire industry to redo everything in ways that would materially hurt the interests of employees, as well as good governance principles articulated by the industry's financial regulators.

Best,
Greg

**Gregory F. Jacob**
gjacob@omm.com
O: +1-202-383-5110
**O'Melveny**

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Website | LinkedIn | Twitter

**From**: Jacob, Greg [gjacob@omm.com]
**Sent**: 7/22/2025 9:08:05 AM
**To**: Snare, Jonathan - SOL [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=3d841037413b4e3e8684ed76a6c4ab71-2559c53f-60]
**Subject**:RE: Morgan Stanley Opinion Letter (drafting already underway)

You don't often get email from gjacob@omm.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jon,

Thanks so much again for looking into this. I know you've got a rolling avalanche on your desk!

If you've heard anything further, I'd love to get a status update. I plan to check in again with Eric/Jeff in the Office of Regulations and Interpretations later this week, and it would be helpful to know if they've been up through the front office yet, as they indicated last month was in the works. Also, of course, if the EBSA front office would benefit from a briefing or from any materials on how necessary and helpful this opinion letter will be from both a business and anti-frivolous-litigation perspective, we'd be very happy to provide that.

Greg

**Gregory F. Jacob**
gjacob@omm.com
O: +1-202-383-5110
**O'Melveny**

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Website | LinkedIn | Twitter

---

**From:** Snare, Jonathan - SOL <Snare.Jonathan@dol.gov>
**Sent:** Tuesday, July 1, 2025 12:01 PM
**To:** Jacob, Greg <gjacob@omm.com>
**Subject:** RE: Morgan Stanley Opinion Letter (drafting already underway)

Greg:

Confirming receipt. Great to catch up with you this morning. I will follow up on this matter and we will get back to you.

Jonathan L. Snare, Deputy Solicitor
S-2002

(office direct) 202-693-5263
(work cell) 771-241-2914
Snare.jonathan@dol.gov

---

**From:** Jacob, Greg <gjacob@omm.com>
**Sent:** Tuesday, July 1, 2025 11:02 AM
**To:** Snare, Jonathan - SOL <Snare.Jonathan@dol.gov>
**Subject:** Morgan Stanley Opinion Letter (drafting already underway)

You don't often get email from gjacob@omm.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jon,

Following up on our call, please find attached Morgan Stanley's pending opinion letter request (A01533).

EBSA's Office of Regulations and Interpretations agreed after we met with Jeff Turner and Wayne Berry back in December 2024 that this request was meritorious, and Eric Berger told me two weeks ago that getting this letter out is now the office's top interpretive priority. What we're hoping for is a little Front Office nudge to get this really important "tort reform" type letter over the finish line and out. The timing is getting increasingly important given the confusion sown by a very sloppy district court in *Shafer v. Morgan Stanley*, 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023), and the industry really needs DOL to speak clearly and promptly, as they are planning their go-forward compensation structures at the halfway point into 2025; *Shafer* would require the entire industry to redo everything in ways that would materially hurt the interests of employees, as well as good governance principles articulated by the industry's financial regulators.

Best,
Greg

**Gregory F. Jacob**
gjacob@omm.com
O: +1-202-383-5110
**O'Melveny**

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Website | LinkedIn | Twitter

**From**: Snare, Jonathan - SOL [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3D841037413B4E3E8684ED76A6C4AB71-2559C53F-60]
**Sent**: 7/22/2025 7:07:27 PM
**To**: Jacob, Greg [gjacob@omm.com]
**Subject**: RE: Morgan Stanley Opinion Letter (drafting already underway)

Hi Greg:

I understand this AO request is in the decision queue and the EBSA Front office is aware of this request. I have also been told the EBSA Front Office is navigating a number of priorities so not sure when this will be done. I will be happy to keep you posted. I also touched base briefly with Janet Dhillon and she told me that she would be happy to discuss this with you as well.

Thanks

Jonathan L. Snare, Deputy Solicitor
S-2002
(office direct) 202-693-5263
(work cell) 771-241-2914
Snare.jonathan@dol.gov

---

**From:** Jacob, Greg <gjacob@omm.com>
**Sent:** Tuesday, July 22, 2025 9:08 AM
**To:** Snare, Jonathan - SOL <Snare.Jonathan@dol.gov>
**Subject:** RE: Morgan Stanley Opinion Letter (drafting already underway)

You don't often get email from gjacob@omm.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jon,

Thanks so much again for looking into this. I know you've got a rolling avalanche on your desk!

If you've heard anything further, I'd love to get a status update. I plan to check in again with Eric/Jeff in the Office of Regulations and Interpretations later this week, and it would be helpful to know if they've been up through the front office yet, as they indicated last month was in the works. Also, of course, if the EBSA front office would benefit from a briefing or from any materials on how necessary and helpful this opinion letter will be from both a business and anti-frivolous-litigation perspective, we'd be very happy to provide that.

Greg

**Gregory F. Jacob**
gjacob@omm.com
O: 202-383-5110
**O'Melveny**

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Website | LinkedIn | Twitter

---

**From:** Snare, Jonathan - SOL <Snare.Jonathan@dol.gov>
**Sent:** Tuesday, July 1, 2025 12:01 PM
**To:** Jacob, Greg <gjacob@omm.com>
**Subject:** RE: Morgan Stanley Opinion Letter (drafting already underway)

Greg:

Confirming receipt. Great to catch up with you this morning. I will follow up on this matter and we will get back to you.

Jonathan L. Snare, Deputy Solicitor
S-2002
(office direct) 202-693-5263
(work cell) 771-241-2914
Snare.jonathan@dol.gov

---

**From:** Jacob, Greg <gjacob@omm.com>
**Sent:** Tuesday, July 1, 2025 11:02 AM
**To:** Snare, Jonathan - SOL <Snare.Jonathan@dol.gov>
**Subject:** Morgan Stanley Opinion Letter (drafting already underway)

You don't often get email from gjacob@omm.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jon,

Following up on our call, please find attached Morgan Stanley's pending opinion letter request (A01533).

EBSA's Office of Regulations and Interpretations agreed after we met with Jeff Turner and Wayne Berry back in December 2024 that this request was meritorious, and Eric Berger told me two weeks ago that getting this letter out is now the office's top interpretive priority. What we're hoping for is a little Front Office nudge to get this really important "tort reform" type letter over the finish line and out. The timing is getting increasingly important given the confusion sown by a very sloppy district court in *Shafer v. Morgan Stanley*, 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023), and the industry really needs DOL to speak clearly and promptly, as they are planning their go-forward compensation structures at the halfway point into 2025; *Shafer* would require the entire industry to redo everything in ways that would materially hurt the interests of employees, as well as good governance principles articulated by the industry's financial regulators.

Best,
Greg

**Gregory F. Jacob**
gjacob@omm.com
O: 202-383-5110
**O'Melveny**

---

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Website | LinkedIn | Twitter

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 7/25/2025 12:25:51 PM
**To**: Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]
**CC**: Michael.Stein@morganstanley.com; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]; Chris Gaston [CGaston@davis-harman.com]
**Subject**: Meeting request regarding pending Morgan Stanley Advisory Opinion request submitted a year ago on critical issue needing fast resolution to clarify the law
**Attachments**: Morgan Stanley Letter to DOL Requesting Advisory Opinion (8-1-24) - CONFIDENTIAL.pdf; 2025.04.05.Ltr.from.G.Jacob.to.Deputy.Director.Turner.pdf

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Janet and Jack, we wanted to touch base on a pending request for an Advisory Opinion from Morgan Stanley (copied on this email). We were hoping to have a chance to talk to you about the status of this request if you have time next week.

We were thrilled about the Department's June 2 announcement launching its opinion letter program, quoting Deputy Secretary Sonderling regarding the importance of such letters. https://www.dol.gov/newsroom/releases/osec/osec20250602 Advisory Opinions have historically played a critical role in facilitating compliance, but their frequency has dropped off dramatically in recent years. We applaud the new program.

We note that EBSA's first two Opinions of 2025 were issued earlier this week. We are hoping that Morgan Stanley's request could be addressed in the coming few weeks, as the pressure on this issue has become intense. We have heard informal reports that our Advisory Opinion is done and is simply waiting for clearance, but that could take time. We are not sure how accurate those informal reports are.

The original request and a follow-up letter are attached. Here is the issue in a nutshell. It is very common in the financial services industry and in many other industries to have long-term incentive plans. (My guess is that both of you are familiar with these programs.) Under Morgan Stanley's plans, which are very similar to common industry practices, employees who stay for 4 to 6 years after the beginning of the incentive period can earn retention/performance awards at the end of the period. Again, under a standard industry practice, Morgan Stanley does not require employees to stay the whole period if the termination is based on death, disability, retirement, not-for-cause termination, or government service. The vast majority of the awards are paid to current employees but a small portion are paid under these exceptions.

To my knowledge, no one in the country has ever treated these arrangements as pension plans subject to ERISA (due to how clear the law is), and similar plans are simply everywhere in my experience. But one district court

(referenced in the request) ruled, without even a response from Morgan Stanley, that ERISA applied to these incentive arrangements (contrary to the law and other court holdings) and sent them to arbitration. The court's strange reasoning was based on the fact that a few payments are made after termination of employment, due to the exceptions noted above. This ruling triggers huge problems due to, for example, ERISA's vesting rules, which the program does not comply with. The problems with the court's ruling are evidenced by the fact that four amicus briefs were filed on behalf of Morgan Stanley's appeal in this case by (1) the American Benefits Council, (2) the US Chamber of Commerce and The ERISA Industry Committee, (3) SIFMA, and (4) the Society for Human Resource Management.

Dozens of very expensive claims have been filed against Morgan Stanley since this strange district court ruling. The law really needs to be clarified quickly, which is why we are reaching out to you and also, on a very limited basis, to the Hill for help to expedite this matter. Thanks so much.

**Kent A. Mason**
Davis & Harman LLP

---

DAVIS & HARMAN LLP 40TH ANNIVERSARY

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

---

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From:** Dhillon, Janet L - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C31FBD84CE034A5A8EBCAD30DDE9B06F-EC453F43-32]
**Sent:** 7/25/2025 2:06:58 PM
**To:** Kent A. Mason [kamason@davis-harman.com]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]
**CC:** Michael.Stein@morganstanley.com; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]; Chris Gaston [CGaston@davis-harman.com]
**Subject:** RE: Meeting request regarding pending Morgan Stanley Advisory Opinion request submitted a year ago on critical issue needing fast resolution to clarify the law

Kent

Happy to set up time to discuss. I'll have Glenda reach out on Monday to set up a mutually convenient time.

Have a nice weekend.

Janet

Janet Dhillon
Acting Assistant Secretary
Employee Benefits Security Administration
U.S. Department of Labor
Dhillon.Janet.L@dol.gov

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Friday, July 25, 2025 12:26 PM
**To:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Cc:** Michael.Stein@morganstanley.com; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Meeting request regarding pending Morgan Stanley Advisory Opinion request submitted a year ago on critical issue needing fast resolution to clarify the law

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Janet and Jack, we wanted to touch base on a pending request for an Advisory Opinion from Morgan Stanley (copied on this email). We were hoping to have a chance to talk to you about the status of this request if you have time next week.

We were thrilled about the Department's June 2 announcement launching its opinion letter program, quoting Deputy Secretary Sonderling regarding the importance of such letters. https://www.dol.gov/newsroom/releases/osec/osec20250602 Advisory Opinions have historically played a critical role in facilitating compliance, but their frequency has dropped off dramatically in recent years. We applaud the new program.

We note that EBSA's first two Opinions of 2025 were issued earlier this week. We are hoping that Morgan Stanley's request could be addressed in the coming few weeks, as the pressure on this issue has become intense. We have heard informal reports that our Advisory Opinion is done and is simply waiting for clearance, but that could take time. We are not sure how accurate those informal reports are.

The original request and a follow-up letter are attached. Here is the issue in a nutshell. It is very common in the financial services industry and in many other industries to have long-term incentive plans. (My guess is that both of you are familiar with these programs.) Under Morgan Stanley's plans, which are very similar to common industry practices, employees who stay for 4 to 6 years after the beginning of the incentive period can earn retention/performance awards at the end of the period. Again, under a standard industry practice, Morgan Stanley does not require employees to stay the whole period if the termination is based on death, disability, retirement, not-for-cause termination, or government service. The vast majority of the awards are paid to current employees but a small portion are paid under these exceptions.

To my knowledge, no one in the country has ever treated these arrangements as pension plans subject to ERISA (due to how clear the law is), and similar plans are simply everywhere in my experience. But one district court (referenced in the request) ruled, without even a response from Morgan Stanley, that ERISA applied to these incentive arrangements (contrary to the law and other court holdings) and sent them to arbitration. The court's strange reasoning was based on the fact that a few payments are made after termination of employment, due to the exceptions noted above. This ruling triggers huge problems due to, for example, ERISA's vesting rules, which the program does not comply with. The problems with the court's ruling are evidenced by the fact that four amicus briefs were filed on behalf of Morgan Stanley's appeal in this case by (1) the American Benefits Council, (2) the US Chamber of Commerce and The ERISA Industry Committee, (3) SIFMA, and (4) the Society for Human Resource Management.

Dozens of very expensive claims have been filed against Morgan Stanley since this strange district court ruling. The law really needs to be clarified quickly, which is why we are reaching out to you and also, on a very limited basis, to the Hill for help to expedite this matter. Thanks so much.

**Kent A. Mason**
Davis & Harman LLP

DAVIS & HARMAN LLP 40th Anniversary

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client

communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From:** Kent A. Mason [kamason@davis-harman.com]
**Sent:** 7/25/2025 2:15:46 PM
**To:** Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]
**CC:** Michael.Stein@morganstanley.com; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]; Chris Gaston [CGaston@davis-harman.com]
**Subject:** RE: Meeting request regarding pending Morgan Stanley Advisory Opinion request submitted a year ago on critical issue needing fast resolution to clarify the law

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks very much. You have a great weekend too.

---

**From:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>
**Sent:** Friday, July 25, 2025 2:07 PM
**To:** Kent A. Mason <kamason@davis-harman.com>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Cc:** Michael.Stein@morganstanley.com; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Meeting request regarding pending Morgan Stanley Advisory Opinion request submitted a year ago on critical issue needing fast resolution to clarify the law

Kent

Happy to set up time to discuss. I'll have Glenda reach out on Monday to set up a mutually convenient time.

Have a nice weekend.

Janet

Janet Dhillon
Acting Assistant Secretary
Employee Benefits Security Administration
U.S. Department of Labor
Dhillon.Janet.L@dol.gov

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Friday, July 25, 2025 12:26 PM
**To:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Cc:** Michael.Stein@morganstanley.com; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Meeting request regarding pending Morgan Stanley Advisory Opinion request submitted a year ago on critical issue needing fast resolution to clarify the law

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Janet and Jack, we wanted to touch base on a pending request for an Advisory Opinion from Morgan Stanley (copied on this email). We were hoping to have a chance to talk to you about the status of this request if you have time next week.

We were thrilled about the Department's June 2 announcement launching its opinion letter program, quoting Deputy Secretary Sonderling regarding the importance of such letters. https://www.dol.gov/newsroom/releases/osec/osec20250602 Advisory Opinions have historically played a critical role in facilitating compliance, but their frequency has dropped off dramatically in recent years. We applaud the new program.

We note that EBSA's first two Opinions of 2025 were issued earlier this week. We are hoping that Morgan Stanley's request could be addressed in the coming few weeks, as the pressure on this issue has become intense. We have heard informal reports that our Advisory Opinion is done and is simply waiting for clearance, but that could take time. We are not sure how accurate those informal reports are.

The original request and a follow-up letter are attached. Here is the issue in a nutshell. It is very common in the financial services industry and in many other industries to have long-term incentive plans. (My guess is that both of you are familiar with these programs.) Under Morgan Stanley's plans, which are very similar to common industry practices, employees who stay for 4 to 6 years after the beginning of the incentive period can earn retention/performance awards at the end of the period. Again, under a standard industry practice, Morgan Stanley does not require employees to stay the whole period if the termination is based on death, disability, retirement, not-for-cause termination, or government service. The vast majority of the awards are paid to current employees but a small portion are paid under these exceptions.

To my knowledge, no one in the country has ever treated these arrangements as pension plans subject to ERISA (due to how clear the law is), and similar plans are simply everywhere in my experience. But one district court (referenced in the request) ruled, without even a response from Morgan Stanley, that ERISA applied to these incentive arrangements (contrary to the law and other court holdings) and sent them to arbitration. The court's strange reasoning was based on the fact that a few payments are made after termination of employment, due to the exceptions noted above. This ruling triggers huge problems due to, for example, ERISA's vesting rules, which the program does not comply with. The problems with the court's ruling are evidenced by the fact that four amicus briefs were filed on behalf of Morgan Stanley's appeal in this case by (1) the American Benefits Council, (2) the US Chamber of Commerce and The ERISA Industry Committee, (3) SIFMA, and (4) the Society for Human Resource Management.

Dozens of very expensive claims have been filed against Morgan Stanley since this strange district court ruling. The law really needs to be clarified quickly, which is why we are reaching out to you and also, on a very limited basis, to the Hill for help to expedite this matter. Thanks so much.

**Kent A. Mason**
Davis & Harman LLP

---

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 7/31/2025 2:55:01 PM
**To**: Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; Killmond, James J - SOL [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=278d14e522be4bfb90c1bde7e5329685-bf713f10-1b]
**CC**: Michael.Stein@morganstanley.com; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com]
**Subject**: Thank you and attached court case
**Attachments**:Milligan v. Merrill Lynch - Dkt. 7X - MSJ Order (3.11.2025).pdf

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks so much for the excellent meeting earlier today. We so appreciated being able to meet with the team so quickly, and how much work you all had clearly done in advance. As I mentioned (too many times I am sure), there is a real urgency on this issue for two reasons, one being the growing amount of litigation/arbitration spurred by the strange decision in New York (literally hundreds of individual disputes filed not just against Morgan Stanley but others in the industry as well). The other is the fact that long-term incentive plans are typically reviewed and decided on in early fall for the following year. So, if there need to be material changes (such as eliminating some humanitarian exceptions to the forfeiture on termination of employment), those decisions are going to be made in the next six to eight weeks in many cases. There are many reasons no one wants to eliminate those exceptions, but employers are now in a period of uncertainty over whether they can maintain longstanding, carefully crafted incentive compensation structures. An Advisory Opinion in the immediate future would provide really useful guidance at a really important time.

As discussed, attached is the district court decision in the Fourth Circuit, which ruled favorably on the same issue.

I don't have all the DOL email addresses, so sorry for leaving some of the team off this email. Thanks again.

**Kent A. Mason**
Davis & Harman LLP

DAVIS &
HARMAN LLP

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

---

Main: 202-347-2230 Direct: 202-662-2288 Cell: 240-418-9813
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:24-CV-00440-KDB-DCK**

| | |
|---|---|
| **KELLY MILLIGAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BANK OF AMERICA CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., AND JOHN/JANE DOE 1,**<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 41). The Court has carefully considered this motion, the parties' briefs and exhibits and oral argument on the motion from the parties' counsel on March 4, 2025. For the reasons discussed below, the Court will **GRANT** the motion.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* (quoting *Libertarian Party of Va. v.*

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Kelly Milligan worked as a financial advisor ("FA") for Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill"), a wholly owned subsidiary of Bank of America (collectively, "Defendants") from 2000-2021, at which point he voluntarily departed to start his own company and compete with Merrill. Doc. No. 1 at ¶¶ 1, 11. During his tenure, Plaintiff participated in the "Financial Advisor Incentive Compensation Plan" ("FAICP").[1] Doc. No. 42-10 at 2. As outlined in the FAICP, FAs are paid a guaranteed monthly salary and are eligible to earn monthly incentive compensation. *Id.* In addition, Defendants offer "Long-Term Contingent Awards" which include restricted stock units (RSUs) and the WealthChoice Award ("WCA"). *Id.* at 10. FAs receive RSUs under this award scheme unless they elect to allocate a portion of their long-term contingent award in the form of a WCA. *Id.*

Over his tenure, Plaintiff elected and earned several WCAs. Plaintiff alleges that by departing, he forfeited over $500,000 in "deferred compensation" because he and others similarly situated were forced to forfeit the value of their WCAs when they voluntarily left Merrill before their plans vested. Doc. No. 1 at ¶¶ 1, 11. Plaintiff further asserts that the WCA program is subject to the Employee Retirement Income Security Act of 1974 ("ERISA") because it "provides for deferred commissions." Doc. No. 54-2 at 5. More specifically, Plaintiff argues that each WCA is subject to ERISA because it is an "employee pension benefit plan" that "results in a deferral of income." Doc. No. 1 at ¶ 3. The deferral of income allegedly results when FAs are "paid for the

[1] Plaintiff states that the FAICPs issued each year were substantively identical (Doc. No. 54-2 at 5), so the Court will primarily reference the 2020 guide (Doc. No. 42-10).

work years after they perform it." *Id*. at ¶ 4. These payments occur for "periods extending to the termination of covered employment or beyond," because in certain circumstance—such as death or retirement—participants receive the value of their plan after their employment ends. *Id*.

In Plaintiff's view, this means that the plan violates ERISA's vesting schedule, and he has filed a proposed class action suit against Defendants seeking declaratory and equitable relief, along with reformation of the compensation plan. In response, Defendants filed the pending motion for summary judgment, asserting that the WCA is not an employee pension benefit plan because it does not, by design, defer compensation to the end of covered employment or beyond, and because it is a bonus plan that is exempt from ERISA. Doc. No. 42-2 at 5. The motion has been fully briefed and argued and is now ripe for the Court's ruling.

## III. DISCUSSION

Congress passed ERISA in 1974, in an era when many long-term employees were not getting the pension benefits their employers promised would be there when they retired. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (ERISA "seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits."); *see also Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (1980) (noting that ERISA was enacted to protect the retirement assets of workers). Congress sought to ensure that if employees were promised a benefit at retirement—and "fulfilled whatever conditions are required to obtain a vested benefit"—they "actually will receive it." *Nachman Corp. v. PBGC*, 446 U.S. 359, 375 (1980). The Supreme Court and others have cautioned, however, that ERISA does not dictate what benefits employers must offer, *Spink*, 517 U.S. at 887, nor is it intended to hamstring or dissuade an employer in designing other compensation programs, such as retention or other bonus programs, tailored to their particular workforce or industry. *See, e.g., Conkright v. Frommert*, 559 U.S. 506, 517 (2010).

"To state a claim under ERISA, a plaintiff must allege and establish the existence of an 'employee [pension] benefit plan' that is governed by ERISA." *Albers v. Guardian Life Ins. Co.*, No. 98 Civ. 6244, 1999 WL 228367, at *2 (S.D.N.Y. Apr. 19, 1999). An employee pension benefit plan is defined under ERISA as:

> any plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--
>
> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A). However, even if an employee pension benefit plan can be established, the Department of Labor ("DOL") carves out an exception excluding bonus payments from ERISA's definition of an employee pension benefit plan unless the payments are "systematically deferred to the termination of covered employments or beyond" or are designed for the purpose of providing retirement income. 29 C.F.R. § 2510.3–2(c). It is within this framework that the Court must consider the compensation structure at Merrill.

As previously noted, a FA's income is comprised of a guaranteed monthly salary, monthly cash compensation, and long-term contingent incentive awards such as a WCA. Doc. Nos. 54-2 at 5; 42-2 at 8. The monthly cash compensation, which is akin to a commission, is calculated and paid monthly, using a "cash" grid that represents a percentage of "production credits" or revenue generated. Doc. No. 42-2 at 9. These percentages substantially increase as "production" or revenue generated increases. In contrast, the WCA program utilizes a separate "long-term" grid that reflects a much smaller percentage of production credits (starting at less than 10% of the "cash" grid

percentage) and is calculated only after a full performance year. *Id.* Also, unlike the cash compensation that begins with the first dollar of revenue generated, WCA eligibility does not begin until after a threshold amount of revenue is generated. Doc. No. 42-10 at 2. Significantly, FAs must also remain employed with the company until the vesting date for the award to become "earned and payable." Doc. No. 42-2 at 19.

During oral argument, Defendants noted that, like *Callan v. Merrill Lynch & Co., Inc.,* No. 09 CV 0566 BEN (BGS), 2010 WL 3452371, at *8 (S.D. Cal. Aug. 30, 2010), which addressed Merrill's predecessor plan to the WCA, there is nothing in the WCA that "would allow a reasonable person to calculate or determine the benefits of the plan or the procedure for receiving [them], as those matters are left to the sole discretion" of Defendants. In its FAICP, the WCA is described as:

> The [WCA], as in effect from time to time, is intended to be **unfunded and maintained primarily for the purpose of providing long-term contingent incentive compensation**, subject to certain conditions, to a select group of Financial Advisors. By awarding a portion of a Financial Advisor's incentive compensation in the form of a cash award which becomes earned and payable over time, **the Company intends to encourage the Financial Advisor to remain employed by the Company** and its Subsidiaries and to further align the interests of the Financial Advisor with the Company's business objectives.

Doc. No. 41-3 at 3 (emphasis added). The final amount of each WCA award is further determined by "the Administrator" and "subject to the review and approval by the Company." *Id.* at 6. Also, the company retains the right to adjust the amount of any award to align with the performance of both the company and individual lines or sub-lines of business. Doc. No. 41-10 at 39.

When a WCA is calculated, a notional account is created and the FA can select mutual funds or other investments to benchmark against. Doc. No. 41-1 at 11. The value of the account is indexed to the performance of the chosen fund or benchmark investment. *Id.* at 12. Both the FAICP and the Award Agreement state that the "Account Balance represents an unsecured, unfunded,

contingent promise . . . to pay the value of the account [] after the Vesting date." *Id.* Again, the FAICP makes clear that the WCA becomes earned and payable only after an eight-year vesting period, and where the FA remains employed through the payment date. *Id.* at 11. After vesting, the FA is paid "as soon a[s] practicable . . . but in no event later than 2½ months following such vesting date" and there is no option to defer it. Doc. No. 41-3 at 8.

In most cases, when employment ends, the balance of any unvested accounts is cancelled, unless the employee dies, retires, or is involuntarily terminated. Doc. Nos. 41-7 at 7, 42-2 at 12-13. During oral argument, Defendant asserted that *not* cancelling WCAs in those relatively uncommon situations[2] upholds the purpose of the plan, which is, in large part, to reward company loyalty and longevity. FAs who depart under one of these circumstances (which are largely out of a FA's control) must generally covenant to not compete in order to attain their WCA. Doc. No. 41-1 at 13. Involuntary terminations (with a non-competition agreement), death, and retirement do not render an employee adverse to the company the way a FA leaving to work for a competitor might.

The specific circumstances of the departure determine how and when a WCA vests. In the event of death, the FA's estate is paid promptly. Doc. No. 41-1 at 12. If the termination is related to a workforce reduction, divestiture or disability, the award will "continue to become earned and payable on the stated vesting schedule," so long as the FA agrees to certain covenants, including to not solicit clients and employees. *Id.* at 13. For changes in control, awards become immediately earned as of the termination date. *Id.* Finally, for retirement, WCAs become earned and payable in

[2] According to the parties, 18% of WCA recipients received some payment after their employment ended and 92.6% of the FAs who received WCAs between 2018 and 2024 were active employees, both of which demonstrate that receiving a WCA payment post-employment is uncommon. Doc. Nos. 42-2 at 13, 54-2 at 8.

two installments: first, after the end of the year the FA retires, and second, after the end of the next year. As a condition of payment, retiring FAs must also covenant to not solicit employees or clients and must not engage in competition. *Id.* According to Defendants, spacing retirement payments out this way gives the company some recourse in the event that the FA resumes working and engages in competition. Somewhat paradoxically, it is these unique circumstances that, in Plaintiff's view, bring WCAs under ERISA's narrow ambit.

### *A. Employee Pension Benefit Plan*

Because it is possible for a WCA to be paid out, in certain limited circumstances, after the end of covered employment, the central dispute requires interpretation of subsection (ii) of the ERISA statute. Subsection (ii) addresses whether a plan's express terms or circumstances result in deferrals of income to or beyond the termination of employment. *See* 29 U.S.C. § 1002(2)(A)(ii). Plaintiff urges the Court to use a "results-based" test when considering whether the plan defers income to the end of employment or beyond, which at least one other court has considered. *See Pasternack v. Shrader,* 863 F.3d 162, 171 n.5 (2d Cir. 2017) (noting that the "word 'results' calls for an effects-based inquiry rather than one based on purpose"). However, adopting Plaintiff's view would mean that virtually *any* plan that allows for income to be paid after employment ends, even incidentally, could fall under ERISA's purview.

The Court disagrees with Plaintiff's interpretation. ERISA's "definition is not algorithmic" and its words should not be "read as an elastic girdle that can be stretched to cover any content that can conceivably fit within its reach." *Murphy,* 611 F.2d at 575. Plaintiff's expansive interpretation reaches far beyond Congress' intent and ignores ERISA's fundamental premise,

both of which are rooted in protecting the *retirement assets* of workers.[3] *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51 (1987) ("i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy") (quotations and citations omitted).

Indeed, courts routinely find, as the Court does here, that "the purpose of the plan must be to provide retirement income or to defer income until termination or beyond." *Juric v. USALCO, LLC*, 659 F. Supp. 3d 619, 633 (D. Md. 2023). *See also Depew v. MNC Fin., Inc.*, 819 F. Supp. 492, 495 (D. Md. 1993) (finding no employee pension benefit plan under ERISA when the plans did not "require[ ] deferral of income until the termination of employment or thereafter"); *Rich v. Shrader*, 823 F.3d 1205, 1210 (9th Cir. 2016) ("[W]e agree with our sister circuits that have determined that the paramount consideration is whether the primary purpose of the plan is to provide deferred compensation or other retirement benefits."). And the "mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage." *Murphy*, 611 F.2d at 575. *See also Juric,* 659 F. Supp. 3d at 633 (finding the fact that some income "can or may be deferred" insufficient to sustain an ERISA claim); *Rich,* 823 F.3d at 1211 (finding the same).

The express purpose of the WCA program is to reward employees for performance and tenure, and both the plan structure and administration are tailored to achieve those ends. While the WCA contemplates rare situations under which an award might be paid after the end of employment, as is the case with retirement, in most circumstances, once the award is earned, it is

---

[3] *See* U.S. Department of Labor, *ERISA*, https://www.dol.gov/general/topic/health-plans/erisa (last accessed January 30, 2025).

promptly paid out. In sum, this is the type of scenario around which the Court will decline to stretch the "elastic girdle." *Murphy*, 611 F.2d at 575.

**B. Department of Labor Bonus Plan Exemption**

Even if the Court were to adopt Plaintiff's results-based test and find that the WCA could be an employee pension benefit plan under ERISA, it is still subject to the Department of Labor's ("DOL") exemption for bonus plans, unless payments under the plan are "systematically deferred to the termination of covered employment or beyond." 29 C.F.R. § 2510.3–2(c). By definition, "[a] bonus is '[a] premium paid in addition to what is due or expected[,] [especially] a payment by way of division of a business's profits, given over and above normal compensation.'" *Shafer v. Stanley*, No. 20 CIV. 11047 (PGG), 2024 WL 4697235, at *7 (S.D.N.Y. Nov. 5, 2024) (quoting *Bonus*, Black's Law Dictionary (11th ed. 2019)).

According to the DOL, a bonus plan "in operation," must not be "a vehicle for the provision of retirement income," DOL Advisory Op. 89-07A at 2, and a "significant operative factor" when considering whether a plan is a bonus plan under the regulation, is whether an "inordinate percentage of the bonus recipients were at . . . retirement age." *Id. See also Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 188–89 (3d Cir. 2003) (holding a plan was not subject to ERISA "because its purpose was to operate as an incentive and bonus program, and not as a means to defer compensation or provide retirement benefits"); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 931–34 (8th Cir. 1999) ("Though the [plan's] vesting requirement could result in the deferral of a portion of any earned incentive until a participant's termination or retirement, ... such a deferral would only occur by happenstance. In fact, the stated purpose of the vesting requirement reinforces our conclusion that the [plan] is a non-ERISA bonus plan.").

Here, the WCA is an unfunded, discretionary plan, devised for the express purpose of rewarding long-term FAs who also help the company meet financial goals. Awards are not guaranteed (the way salary and commission are); the employee must meet a minimum production threshold and stay at the company until the award vests, eight years later. Also, the award, while based on a small percentage of the FA's revenue generated over a performance year, is subject to adjustments by the company based on company and business line performance. Thus, the WCA is clearly a bonus plan, paid over and above normal compensation, and its intent and operation are not designed to provide retirement income.

Finally the plan does not "systematically defer income to the termination of covered employment or beyond." 29 C.F.R. § 2510.3–2(c). Generally, neither the company nor the FA may defer award payouts, and the few exceptions are intended to deter workforce reentry (in the case of retirement) and competition. Again, the vast majority of award payouts are to actively employed FAs. Thus, while it is possible in certain circumstances to receive a WCA payout after the end of employment, it is both limited in scope and uncommon in occurrence. It is, as the *Emmenegger* Court stated, "happenstance," 197 F.3d at 933, and plainly not systematic.

Consistent with the two courts that have found Defendants' functionally identical predecessor plans to be bonus plans exempt from ERISA,[4] the Court finds that the WCA is not an

---

[4] *See Mullett v. Merrill, Lynch, Pierce, Fenner & Smith*, No. CIV.A. 01-CV-2118, 2002 WL 32298599, at *2 (E.D. Pa. Feb. 26, 2002) (finding a bonus program exempt from ERISA where the plan was implemented to "establish and retain a strong salesforce," subject to a ten-year vesting period and paid promptly once vested; also concluding that the plan "provides neither 'retirement income' nor 'systematically deferred compensation until the termination of employment' merely because an employee might receive the benefits after he or she has retired or terminated employment"); *Callan,* WL 3452371, at *7-8 (finding a similar plan with similar criteria, vesting periods, and payment practices to be a bonus plan exempt from ERISA).

employee pension benefit plan; it is a bonus plan exempt from ERISA, and the Court will grant Defendants' Motion for Summary Judgment.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. No. 41) is **GRANTED;** and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 10, 2025

Kenneth D. Bell
United States District Judge

**From:** Kent A. Mason [kamason@davis-harman.com]
**Sent:** 8/12/2025 1:03:08 PM
**To:** Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; Bolton, Charles H - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8dd803ddc9944aef996104828a461721-2b288c21-a5]; Danhof, Justin G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=da4143a3e1dc4c60ba6482fff09a44e9-52a5df72-e5]
**CC:** 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]; Chris Gaston [CGaston@davis-harman.com]
**Subject:** Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks again for meeting with us on Morgan Stanley's request for an advisory opinion on its long-term incentive program. We wanted to provide two updates in case they are helpful. First, the American Benefits Council, the US Chamber of Commerce, and The ERISA Industry Committee (ERIC) filed an amicus brief supporting Merrill Lynch in the plaintiffs' appeal to the Fourth Circuit from a decision of the District Court for the Western District of North Carolina regarding a program virtually identical to Morgan Stanley's. We thought that the amicus brief linked above might be of interest.

Second with such strong support from trade associations on this issue, we are considering asking the trades to weigh in with EBSA with a brief letter on the importance of this issue and the need for fast and clear confirmation of DOL's longstanding position that such long-term incentive programs are not subject to ERISA. If you have any concerns with us doing that, please let us know. We just want to provide you with as much information as we can about the critical nature of this issue for a very wide range of businesses across the country, making this an ideal candidate for DOL's expanded and revived Advisory Opinion program.

The trades' amicus brief provides some insights into how important this issue is:

Distorting ERISA so that it reaches those [long-term incentive] programs would have destructive effects. Making those programs subject to ERISA's strict vesting and anti-forfeiture rules would expose employers to potentially astronomical liability for unexceptional cancellations of incentive awards that have not vested under those programs' terms. See 29 U.S.C. § 1053; 29 C.F.R. § 2530. That result would undermine employers' justifiable reliance on nearly fifty years of case law and regulatory guidance concluding that such programs fall outside ERISA's scope, making it more difficult for businesses to offer their employees attractive and flexible compensation programs. Indeed, it would induce some employers to eliminate their long-term incentive or

deferred incentive compensation programs altogether, stripping them of a valuable tool with which to retain talented employees and denying employees access to a widely desired compensation arrangement. Nothing in ERISA requires such an unfortunate outcome. . . .

Employers across a variety of industries use these arrangements "to further enhance retention." . . . And employers are increasingly starting to offer long-term incentive awards to employees below the executive level. . . .

Plaintiff's theory is worse than legally wrong: if adopted, it would have enormously destructive practical consequences, harming both employers and employees. To begin, that approach, if valid, certainly would encourage a wave of litigation against employers in all sectors of the economy that use long-term incentive or deferred incentive compensation arrangements. . . .

And if their theory succeeds, these plaintiffs' firms will have no reason to stop with the financial services industry. It is not difficult for a single firm or set of firms to bring dozens of cookie-cutter lawsuits—that is already par for the course in ERISA litigation. . . .

Defending against such lawsuits challenging commonplace and useful compensation arrangements would impose substantial costs on employers in virtually all cases and sometimes would extract strike-suit settlements, as the prospect of "asymmetric" discovery for defendants in ERISA actions comes at an "ominous" price, entailing "probing and costly inquiries."

**Kent A. Mason**
Davis & Harman LLP

DAVIS & HARMAN LLP 40

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Dhillon, Janet L - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C31FBD84CE034A5A8EBCAD30DDE9B06F-EC453F43-32]
**Sent**: 8/12/2025 5:56:57 PM
**To**: Kent A. Mason [kamason@davis-harman.com]
**Subject**: RE: Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

Kent

As is our usual practice, we send a draft of the statement of facts of an advisory opinion to the requestor for review. We are ready to proceed to that step. Should the draft be directed to you, Greg Jacob, or both of you?

Best,

Janet

Janet Dhillon
Acting Assistant Secretary
Employee Benefits Security Administration
U.S. Department of Labor
Dhillon.Janet.L@dol.gov

U.S. DEPARTMENT OF LABOR
250 AMERICA
Celebrating the American Worker

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Tuesday, August 12, 2025 1:03 PM
**To:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Bolton, Charles H - EBSA <Bolton.Charles.H@dol.gov>; Danhof, Justin G - EBSA <Danhof.Justin.G@dol.gov>
**Cc:** 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks again for meeting with us on Morgan Stanley's request for an advisory opinion on its long-term incentive program. We wanted to provide two updates in case they are helpful. First, the American Benefits Council, the US Chamber of Commerce, and The ERISA Industry Committee (ERIC) filed an amicus brief supporting Merrill Lynch in the plaintiffs' appeal to the Fourth Circuit from a decision of the District

Court for the Western District of North Carolina regarding a program virtually identical to Morgan Stanley's. We thought that the amicus brief linked above might be of interest.

Second with such strong support from trade associations on this issue, we are considering asking the trades to weigh in with EBSA with a brief letter on the importance of this issue and the need for fast and clear confirmation of DOL's longstanding position that such long-term incentive programs are not subject to ERISA. If you have any concerns with us doing that, please let us know. We just want to provide you with as much information as we can about the critical nature of this issue for a very wide range of businesses across the country, making this an ideal candidate for DOL's expanded and revived Advisory Opinion program.

The trades' amicus brief provides some insights into how important this issue is:

Distorting ERISA so that it reaches those [long-term incentive] programs would have destructive effects. Making those programs subject to ERISA's strict vesting and anti-forfeiture rules would expose employers to potentially astronomical liability for unexceptional cancellations of incentive awards that have not vested under those programs' terms. See 29 U.S.C. § 1053; 29 C.F.R. § 2530. That result would undermine employers' justifiable reliance on nearly fifty years of case law and regulatory guidance concluding that such programs fall outside ERISA's scope, making it more difficult for businesses to offer their employees attractive and flexible compensation programs. Indeed, it would induce some employers to eliminate their long-term incentive or deferred incentive compensation programs altogether, stripping them of a valuable tool with which to retain talented employees and denying employees access to a widely desired compensation arrangement. Nothing in ERISA requires such an unfortunate outcome. . . .

Employers across a variety of industries use these arrangements "to further enhance retention." . . . And employers are increasingly starting to offer long-term incentive awards to employees below the executive level. . . .

Plaintiff's theory is worse than legally wrong: if adopted, it would have enormously destructive practical consequences, harming both employers and employees. To begin, that approach, if valid, certainly would encourage a wave of litigation against employers in all sectors of the economy that use long-term incentive or deferred incentive compensation arrangements. . . .

And if their theory succeeds, these plaintiffs' firms will have no reason to stop with the financial services industry. It is not difficult for a single firm or set of firms to bring dozens of cookie-cutter lawsuits—that is already par for the course in ERISA litigation. . . .

Defending against such lawsuits challenging commonplace and useful compensation arrangements would impose substantial costs on employers in virtually all cases and sometimes would extract strike-suit settlements, as the prospect of "asymmetric" discovery for defendants in ERISA actions comes at an "ominous" price, entailing "probing and costly inquiries."

**Kent A. Mason**
Davis & Harman LLP

---

DAVIS & HARMAN LLP 40TH ANNIVERSARY

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

---

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 8/12/2025 6:05:53 PM
**To**: Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]
**CC**: 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]
**Subject**: RE: Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks so much. We so appreciate the fast consideration and work on this. I checked with Morgan Stanley (copied here) and the draft should come to me. Have a great night.

---

**From:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>
**Sent:** Tuesday, August 12, 2025 5:57 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Subject:** RE: Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

Kent

As is our usual practice, we send a draft of the statement of facts of an advisory opinion to the requestor for review. We are ready to proceed to that step. Should the draft be directed to you, Greg Jacob, or both of you?

Best,

Janet

Janet Dhillon
Acting Assistant Secretary
Employee Benefits Security Administration
U.S. Department of Labor
Dhillon.Janet.L@dol.gov

U.S. DEPARTMENT OF LABOR
250 AMERICA
Celebrating the American Worker

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Tuesday, August 12, 2025 1:03 PM
**To:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Bolton, Charles H - EBSA <Bolton.Charles.H@dol.gov>; Danhof, Justin G - EBSA <Danhof.Justin.G@dol.gov>

**Cc:** 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks again for meeting with us on Morgan Stanley's request for an advisory opinion on its long-term incentive program. We wanted to provide two updates in case they are helpful. First, the American Benefits Council, the US Chamber of Commerce, and The ERISA Industry Committee (ERIC) filed an amicus brief supporting Merrill Lynch in the plaintiffs' appeal to the Fourth Circuit from a decision of the District Court for the Western District of North Carolina regarding a program virtually identical to Morgan Stanley's. We thought that the amicus brief linked above might be of interest.

Second with such strong support from trade associations on this issue, we are considering asking the trades to weigh in with EBSA with a brief letter on the importance of this issue and the need for fast and clear confirmation of DOL's longstanding position that such long-term incentive programs are not subject to ERISA. If you have any concerns with us doing that, please let us know. We just want to provide you with as much information as we can about the critical nature of this issue for a very wide range of businesses across the country, making this an ideal candidate for DOL's expanded and revived Advisory Opinion program.

The trades' amicus brief provides some insights into how important this issue is:

Distorting ERISA so that it reaches those [long-term incentive] programs would have destructive effects. Making those programs subject to ERISA's strict vesting and anti-forfeiture rules would expose employers to potentially astronomical liability for unexceptional cancellations of incentive awards that have not vested under those programs' terms. See 29 U.S.C. § 1053; 29 C.F.R. § 2530. That result would undermine employers' justifiable reliance on nearly fifty years of case law and regulatory guidance concluding that such programs fall outside ERISA's scope, making it more difficult for businesses to offer their employees attractive and flexible compensation programs. Indeed, it would induce some employers to eliminate their long-term incentive or deferred incentive compensation programs altogether, stripping them of a valuable tool with which to retain talented employees and denying employees access to a widely desired compensation arrangement. Nothing in ERISA requires such an unfortunate outcome. . . .

Employers across a variety of industries use these arrangements "to further enhance retention." . . . And employers are increasingly starting to offer long-term incentive awards to employees below the executive level. . . .

Plaintiff's theory is worse than legally wrong: if adopted, it would have enormously destructive practical consequences, harming both employers and employees. To begin, that approach, if valid, certainly would encourage a wave of litigation against employers in all sectors of the economy that use long-term incentive or deferred incentive compensation arrangements. . . .

And if their theory succeeds, these plaintiffs' firms will have no reason to stop with the financial services industry. It is not difficult for a single firm or set of firms to bring dozens of cookie-cutter lawsuits—that is already par for the course in ERISA litigation. . . .

Defending against such lawsuits challenging commonplace and useful compensation arrangements would impose substantial costs on employers in virtually all cases and sometimes would extract strike-suit settlements, as the prospect of "asymmetric" discovery for defendants in ERISA actions comes at an "ominous" price, entailing "probing and costly inquiries."

**Kent A. Mason**
Davis & Harman LLP

---

DAVIS & HARMAN LLP

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

---

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From:** Dhillon, Janet L - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C31FBD84CE034A5A8EBCAD30DDE9B06F-EC453F43-32]
**Sent:** 8/12/2025 6:07:35 PM
**To:** Kent A. Mason [kamason@davis-harman.com]
**CC:** 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]
**Subject:** RE: Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

Thank you

Janet Dhillon
Acting Assistant Secretary
Employee Benefits Security Administration
U.S. Department of Labor
Dhillon.Janet.L@dol.gov

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Tuesday, August 12, 2025 6:06 PM
**To:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>
**Cc:** 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>
**Subject:** RE: Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks so much. We so appreciate the fast consideration and work on this. I checked with Morgan Stanley (copied here) and the draft should come to me. Have a great night.

---

**From:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>
**Sent:** Tuesday, August 12, 2025 5:57 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Subject:** RE: Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

Kent

As is our usual practice, we send a draft of the statement of facts of an advisory opinion to the requestor for review. We are ready to proceed to that step. Should the draft be directed to you, Greg Jacob, or both of you?

Best,

Janet

Janet Dhillon
Acting Assistant Secretary
Employee Benefits Security Administration
U.S. Department of Labor
Dhillon.Janet.L@dol.gov

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Tuesday, August 12, 2025 1:03 PM
**To:** Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Bolton, Charles H - EBSA <Bolton.Charles.H@dol.gov>; Danhof, Justin G - EBSA <Danhof.Justin.G@dol.gov>
**Cc:** 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; 'PJ.Austin@morganstanley.com' <PJ.Austin@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Morgan Stanley Advisory Opinion -- New Amicus Brief and Question

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks again for meeting with us on Morgan Stanley's request for an advisory opinion on its long-term incentive program. We wanted to provide two updates in case they are helpful. First, the American Benefits Council, the US Chamber of Commerce, and The ERISA Industry Committee (ERIC) filed an amicus brief supporting Merrill Lynch in the plaintiffs' appeal to the Fourth Circuit from a decision of the District Court for the Western District of North Carolina regarding a program virtually identical to Morgan Stanley's. We thought that the amicus brief linked above might be of interest.

Second with such strong support from trade associations on this issue, we are considering asking the trades to weigh in with EBSA with a brief letter on the importance of this issue and the need for fast and clear confirmation of DOL's longstanding position that such long-term incentive programs are not subject to ERISA. If you have any concerns with us doing that, please let us know. We just want to provide you with as much information as we can about the critical nature of this issue for a very wide range of businesses across the country, making this an ideal candidate for DOL's expanded and revived Advisory Opinion program.

The trades' amicus brief provides some insights into how important this issue is:

Distorting ERISA so that it reaches those [long-term incentive] programs would have destructive effects. Making those programs subject to ERISA's strict vesting and anti-forfeiture rules would expose employers to potentially astronomical liability for unexceptional cancellations of incentive awards that have not vested under those programs' terms. See 29 U.S.C. § 1053; 29 C.F.R. § 2530. That result would undermine employers' justifiable reliance on nearly fifty years of case law and regulatory guidance concluding that such programs fall outside ERISA's scope, making it more difficult for businesses to offer their employees attractive and flexible compensation programs. Indeed, it would induce some employers to eliminate their long-term incentive or deferred incentive compensation programs altogether, stripping them of a valuable tool with which to retain talented employees and denying employees access to a widely desired compensation arrangement. Nothing in ERISA requires such an unfortunate outcome. . . .

Employers across a variety of industries use these arrangements "to further enhance retention." . . . And employers are increasingly starting to offer long-term incentive awards to employees below the executive level. . . .

Plaintiff's theory is worse than legally wrong: if adopted, it would have enormously destructive practical consequences, harming both employers and employees. To begin, that approach, if valid, certainly would encourage a wave of litigation against employers in all sectors of the economy that use long-term incentive or deferred incentive compensation arrangements. . . .

And if their theory succeeds, these plaintiffs' firms will have no reason to stop with the financial services industry. It is not difficult for a single firm or set of firms to bring dozens of cookie-cutter lawsuits—that is already par for the course in ERISA litigation. . . .

Defending against such lawsuits challenging commonplace and useful compensation arrangements would impose substantial costs on employers in virtually all cases and sometimes would extract strike-suit settlements, as the prospect of "asymmetric" discovery for defendants in ERISA actions comes at an "ominous" price, entailing "probing and costly inquiries."

**Kent A. Mason**
Davis & Harman LLP

DAVIS & HARMAN LLP 40th ANNIVERSARY

The Willard
1455 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20004

Main: 202-347-2230 Direct: 202-662-2288
Fax: 202-393-3310 kamason@davis-harman.com

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client

communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Berger, Eric - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=652F46F1F32B4363926E49C4ED696AFA-BERGER, ERI]
**Sent**: 8/12/2025 6:38:20 PM
**To**: kamason@davis-harman.com
**CC**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]
**Subject**: Draft Facts Supporting Morgan Stanley Advisory Opinion Request
**Attachments**: Morgan Stanley Factual Representations 081225.docx

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

Draft Supporting Representations (Case No. A01533)

The following summary is based on the materials and representations provided in support of the request and should not be treated as factual findings by the Department.

You represent that the Firm's financial advisors receive a guaranteed base salary and are eligible to earn cash incentive compensation which is paid throughout the year. In addition, financial advisors are eligible to earn deferred incentive compensation, with twenty-five percent issued as an unsecured deferred stock award under the EICP and the remaining seventy-five percent as an unsecured deferred cash-based award under the MSCIP.[1] The deferred stock units are converted to shares of Morgan Stanley common stock and deposited into a brokerage account, while cash-based awards are deposited into the financial advisors' payroll accounts, on the "scheduled vesting date" only when all conditions are met, as described below.

All incentive compensation is calculated based on "Total Credits". The financial advisor's Total Credits for each month are determined by the applicable "Credit Rate" multiplied by the creditable revenue generated by the financial advisor. The Credit Rate is a percentage between 28% and 55.5% that increases with the financial advisor's revenue and length of service with the Firm. A portion of the Total Credits is allocated to "Deferred Credits" (between 1.5% and 15% of the financial advisor's total incentive compensation), based on the level of revenue the financial advisor generates. The cumulative value of the monthly Deferred Credits for the year is granted to the financial advisor in the form of deferred incentive compensation (deferred stock and cash awards) shortly after the year-end. Deferred incentive compensation awards are generally contingent, among other things, upon the advisor remaining continuously employed through the grant and vesting dates. Accordingly, if the financial advisor terminates employment during the year, there is no award of the Deferred Credits granted for that year. The rest (between 84.5% and 98.5%) of the Total Credits are allocated to "Cash Credits", which are used to calculate and pay cash incentive compensation monthly.

Both cash and deferred incentive compensation reward good performance by calculating the amount, in part, based on a financial advisor's generation of revenue for the Firm. Deferred incentive compensation, however, serves additional purposes: to reward financial advisors for their "continued employment and service to the Firm in the future and [advisor] compliance with the Firm's policies (Including the Code of Conduct)." In this regard, you represent that by conditioning payment on continuous employment and good guardianship, the deferred compensation awards are designed to motivate advisors to stay with the Firm and to comply with firm policies that require advisors to act as good stewards of client assets. Accordingly, other than as described below, financial advisors are generally eligible for payment of the deferred incentive compensation awards only if they remain continuously employed and in good standing on the "scheduled vesting date," which occurs after four years (for stock awards) or six years (for cash awards) of continuous service.

---

[1] The advisors have individual, notional accounts in the MSCIP, and they can invest their account in notional investments, with the value of their accounts tracking the performance of the selected investments.

With certain exceptions, the deferred incentive compensation awards are canceled if a financial advisor: (1) terminates employment before the scheduled vesting date; or (2) engages in prohibited activity, such as violating securities rules and regulations, engaging in dishonest or fraudulent conduct, disclosing privileged or confidential information or trade secrets, making disparaging or defamatory comments about the Firm before the scheduled award distribution date, soliciting customers the financial advisor serviced while employed by the Firm for a competitor without the Firm's consent before the earlier of the three years after termination or the scheduled award distribution date, taking employment with a competitor within 100 miles without the Firm's consent before the earlier of one year after termination or the scheduled award distribution date, or engaging in other conduct that is cause for termination. The awards are not cancelled if a financial advisor's employment terminates due to: (1) death; (2) disability; (3) retirement; (4) involuntary termination not involving any prohibited activity; or (5) termination due to government service not involving any prohibited activity. In these cases, the payment schedule depends on the exception clause under which the awards are paid.[2] You represent that payments under these relatively uncommon situations are designed to uphold the awards' primary purposes of encouraging long-term retention of financial advisors and promoting good conduct.

Financial advisors do not have the option to extend or delay the distribution date. From 2009-2019[3], 89.9% to 95.2% of deferred incentive stock awards issued under EICP were awarded to current employees (compared to 8.2% for former employees). Similarly, from 2009 to 2017, 85.3% of deferred incentive cash awards issued under the MSCIP were awarded to current employees (compared to 14.7% for former employees).[4]

The award conditions are disclosed annually in the award certificates, summary descriptions and other communications. These disclosures also clearly state that the deferred incentive compensation awards are "contingent and unsecured" and that the program is a:

> "… bonus program and not a retirement plan. Its purposes are to reward and retain key employees of the Firm and to align their interests with those of the shareholders. Participants should not look to this bonus program as a source of retirement income. This bonus program is not subject to the Employee Retirement Income Security Act of 1974."[5]

---

[2] For the exception due to death, the award is paid to a designated beneficiary upon notification to the Firm. For the exception due to retirement, 50% of the award is paid on the first anniversary after retirement, with the remaining 50% paid on the second anniversary, if the retiree does not engage in specified prohibited activity. For the exception due to governmental service termination, the award is paid on the date of termination. For the exception due to disability or involuntary termination by the Firm, the award is paid on the scheduled vesting date (four years for stock awards and six years for cash awards).

[3] You represent that for stock awards issued under the EICP, the most recent plan year to have vested was the 2019 plan year.

[4] You represent that for cash awards issued under the MSCIP, the most recent plan year to have vested was the 2017 plan year.

[5] *See e.g.,* EICP 2021 Discretionary Retention Awards Stock Unit Summary Description and MSCIP 2021 Discretionary Retention Awards Summary Descriptions.

You also state that the awards are structured to meet the expectations of the Firm's financial regulators regarding the use of deferred compensation to motivate good conduct and penalize bad conduct.[6]

Financial advisors earn the right to award payments only upon satisfying the award conditions, which require them to remain continuously employed and in good standing through the scheduled vesting date (four or six years of continuous service after the end of the year for which the Deferred Credits are granted in the form of deferred stocks and cash awards). On the scheduled vesting date, the award payments are made automatically, and financial advisors are not permitted to defer the payments to a later date. If a financial advisor terminates employment or engages in prohibited activities before vesting, the awards are cancelled, except under limited circumstances. These conditions are disclosed annually to the financial advisors. These annual disclosures also expressly state that financial advisors "have no right to … [the] award until it is 'earned,'" the awards are "contingent upon the [financial advisor] remaining employed through the grant and vesting dates of the award," the awards are "not intended to provide for retirement income," and that the program is "not a retirement plan subject to [ERISA]."

The express purposes of the deferred incentive compensation program are to reward financial advisors for their long-term tenure and incentivize good behaviors desired by the Firm. The program's design and administration are tailored to achieve those goals and meet the financial regulatory requirements regarding using deferred compensation to motivate good conduct and penalize bad conduct. The deferred incentive compensation awards are unsecured and not guaranteed, there is no accrual (*i.e.,* no partial payouts before the scheduled vesting date) and financial advisors are notified annually about the express purposes and conditions of the program and informed that it is not a retirement plan subject to ERISA.

---

[6] You note that financial regulators, including Financial Industry Regulatory Authority, the Federal Reserve Board of Governors, the Securities and Exchange Commission, and the office of the Comptroller of the Currency, have issued and proposed guidance advising regulated entities to defer portions of employee incentive compensation, and to make that compensation contingent and cancelable, to address risk-taking and other behaviors that may be harmful to customers and the public markets.

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 8/12/2025 6:42:46 PM
**To**: Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]
**Subject**: RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks very much. We will review this quickly and get back to you.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set

forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 8/13/2025 2:13:46 PM
**To**: Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com]
**Subject**: RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request
**Attachments**: AO facts (00577832) (003).docx

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion “may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion.” Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations

Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

Draft Supporting Representations (Case No. A01533)

The following summary is based on the materials and representations provided in support of the request and should not be treated as factual findings by the Department.

You represent that the Firm's financial advisors receive a guaranteed base salary and are eligible to earn cash incentive compensation which is paid throughout the year. In addition, financial advisors are eligible to earn deferred incentive compensation, with twenty-five percent issued as an unsecured deferred stock award under the EICP and the remaining seventy-five percent as an unsecured deferred cash-based award under the MSCIP.[1] The deferred stock units are converted to shares of Morgan Stanley common stock and deposited into a brokerage account, while cash-based awards are deposited into the financial advisors' payroll accounts, on the "scheduled vesting date" only when all conditions are met, as described below.

All incentive compensation is calculated based on "Total Credits". The financial advisor's Total Credits for each month are determined by the applicable "Credit Rate" multiplied by the creditable revenue generated by the financial advisor. The Credit Rate is a percentage between 28% and 55.5% that increases with the financial advisor's revenue and length of service with the Firm. A portion of the Total Credits is allocated to "Deferred Credits" (between 1.5% and 15.5% of the financial advisor's total incentive compensation), based on the level of revenue the financial advisor generates.

The cumulative value of the monthly Deferred Credits for the year is granted to the financial advisor in the form of deferred incentive compensation (deferred stock and cash awards) shortly after the year-end. Deferred incentive compensation awards are generally contingent, among other things, upon the advisor remaining continuously employed through the grant and vesting dates. Accordingly, if the financial advisor terminates employment during the year, there is no award of the Deferred Credits granted for that year. The rest (between 84.5% and 98.5%) of the Total Credits are allocated to "Cash Credits", which are used to calculate and pay cash incentive compensation monthly.

Both cash and deferred incentive compensation reward good performance by calculating the amount, in part, based on a financial advisor's generation of revenue for the Firm. Deferred incentive compensation, however, serves additional purposes: to reward financial advisors for their "continued employment and service to the Firm in the future and [advisor] compliance with the Firm's policies (Including the Code of Conduct)." In this regard, you represent that by conditioning payment on continuous employment and good guardianship, the deferred compensation awards are designed to motivate advisors to stay with the Firm and to comply with firm policies that require advisors to act as good stewards of client assets. Accordingly, other than as described below, financial advisors are generally eligible for payment of the deferred incentive compensation awards only if they remain continuously employed and in good standing

[1] The advisors have individual, notional accounts in the MSCIP, and they can invest their accounts in notional investments, with the value of their accounts tracking the performance of the selected investments.

on the "scheduled vesting date," which occurs after four years (for stock awards) or six years (for cash awards) of continuous service.

With certain exceptions, the deferred incentive compensation awards are canceled if a financial advisor: (1) terminates employment before the scheduled vesting date; or (2) engages in prohibited activity, such as violating securities rules and regulations, engaging in dishonest or fraudulent conduct, disclosing privileged or confidential information or trade secrets, making disparaging or defamatory comments about the Firm before the scheduled award distribution date, soliciting customers the financial advisor serviced while employed by the Firm for a competitor without the Firm's consent before the earlier of the three years after termination or the scheduled award distribution date, taking employment with a competitor within 100 miles without the Firm's consent before the earlier of one year after termination or the scheduled award distribution date, or engaging in other conduct that is cause for termination. The awards are not cancelled if a financial advisor's employment terminates due to: (1) death; (2) disability; (3) retirement; (4) involuntary termination not involving any prohibited activity; or (5) termination due to government service not involving any prohibited activity. In these cases, the payment schedule depends on the exception clause under which the awards are paid.[2] You represent that payments under these relatively uncommon situations are designed to uphold the awards' primary purposes of encouraging long-term retention of financial advisors and promoting good conduct.

Financial advisors do not have the option to extend or delay the distribution date. From 2009-2019[3], 89.9% to 95.2% of deferred incentive stock awards issued under EICP were ~~awarded~~ distributed to current employees (compared to 8.2% for former employees). Similarly, from 2009 to 2017, 80.1% to 92.6% of cash distributions were ultimately paid to current employees; in the aggregate over that period current employees were paid 85.3% of deferred incentive cash awards issued under the MSCIP ~~were awarded to current employees~~ (compared to 14.7% for former employees).[4]

The award conditions are disclosed annually in the award certificates, summary descriptions and other communications. These disclosures also clearly state that the deferred incentive compensation awards are "contingent and unsecured" and that the program is a:

> "… bonus program and not a retirement plan. Its purposes are to reward and retain key employees of the Firm and to align their interests with those of the shareholders.

---

[2] For the exception due to death, the award is paid to a designated beneficiary upon notification to the Firm. For the exception due to retirement, 50% of the award is paid on the first anniversary after retirement, with the remaining 50% paid on the second anniversary, if the retiree does not engage in specified prohibited activity. For the exception due to governmental service termination, the award is paid on the date of termination. For the exception due to disability or involuntary termination by the Firm, the award is paid on the scheduled vesting date (four years for stock awards and six years for cash awards).

[3] You represent that for stock awards issued under the EICP, the most recent plan year to have vested (as of August 2024) was the 2019 plan year.

[4] You represent that for cash awards issued under the MSCIP, the most recent plan year to have vested (as of August 2024) was the 2017 plan year.

> Participants should not look to this bonus program as a source of retirement income. This bonus program is not subject to the Employee Retirement Income Security Act of 1974."[5]

You also state that the awards are structured to meet the expectations of the Firm's financial regulators regarding the use of deferred compensation to motivate good conduct and penalize bad conduct.[6]

Financial advisors earn the right to award payments only upon satisfying the award conditions, which require them to remain continuously employed and in good standing through the scheduled vesting date (four or six years of continuous service after the ~~end of the year for which the Deferred Credits are granted in the form of deferred stocks and cash awards~~award is granted). On the scheduled vesting date, the award payments are made automatically, and financial advisors are not permitted to defer the payments to a later date. If a financial advisor terminates employment or engages in prohibited activities before vesting, the awards are cancelled, except under limited circumstances. These conditions are disclosed annually to the financial advisors. These annual disclosures also expressly state that financial advisors "have no right to … [the] award until it is 'earned,'" the awards are "contingent upon the [financial advisor] remaining employed through the grant and vesting dates of the award," the awards are "not intended to provide for retirement income," and that the program is "not a retirement plan subject to [ERISA]."

The express purposes of the deferred incentive compensation program are to reward financial advisors for their long-term tenure and incentivize good behaviors desired by the Firm. The program's design and administration are tailored to achieve those goals and meet the financial regulatory requirements regarding using deferred compensation to motivate good conduct and penalize bad conduct. The deferred incentive compensation awards are unsecured and not guaranteed, there is no accrual (*i.e.,* no partial payouts before the scheduled vesting date) and financial advisors are notified annually about the express purposes and conditions of the program and informed that it is not a retirement plan subject to ERISA.

---

[5] *See e.g.,* EICP 2021 Discretionary Retention Awards Stock Unit Summary Description and MSCIP 2021 Discretionary Retention Awards Summary Descriptions. Per your submission, the exact language in the description of this program has changed over the years, but the substance of the program has not changed.

[6] You note that financial regulators, including Financial Industry Regulatory Authority, the Federal Reserve Board of Governors, the Securities and Exchange Commission, and the office of the Comptroller of the Currency, have issued ~~and proposed~~ guidance advising and proposed regulations requiring regulated entities to defer portions of employee incentive compensation, and to make that compensation contingent and cancelable, to address risk-taking and other behaviors that may be harmful to customers and the public markets.

| | |
|---|---|
| **From**: | Kent A. Mason [kamason@davis-harman.com] |
| **Sent**: | 8/13/2025 2:13:46 PM |
| **To**: | Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri] |
| **CC**: | Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com] |
| **Subject**: | RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request |
| **Attachments**: | AO facts (00577832) (003).docx |

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of

changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

Draft 8.12.25

Draft Supporting Representations (Case No. A01533)

The following summary is based on the materials and representations provided in support of the request and should not be treated as factual findings by the Department.

You represent that the Firm's financial advisors receive a guaranteed base salary and are eligible to earn cash incentive compensation which is paid throughout the year. In addition, financial advisors are eligible to earn deferred incentive compensation, with twenty-five percent issued as an unsecured deferred stock award under the EICP and the remaining seventy-five percent as an unsecured deferred cash-based award under the MSCIP.[1] The deferred stock units are converted to shares of Morgan Stanley common stock and deposited into a brokerage account, while cash-based awards are deposited into the financial advisors' payroll accounts, on the "scheduled vesting date" only when all conditions are met, as described below.

All incentive compensation is calculated based on "Total Credits". The financial advisor's Total Credits for each month are determined by the applicable "Credit Rate" multiplied by the creditable revenue generated by the financial advisor. The Credit Rate is a percentage between 28% and 55.5% that increases with the financial advisor's revenue and length of service with the Firm. A portion of the Total Credits is allocated to "Deferred Credits" (between 1.5% and 15.5% of the financial advisor's total incentive compensation), based on the level of revenue the financial advisor generates.

The cumulative value of the monthly Deferred Credits for the year is granted to the financial advisor in the form of deferred incentive compensation (deferred stock and cash awards) shortly after the year-end. Deferred incentive compensation awards are generally contingent, among other things, upon the advisor remaining continuously employed through the grant and vesting dates. Accordingly, if the financial advisor terminates employment during the year, there is no award of the Deferred Credits granted for that year. The rest (between 84.5% and 98.5%) of the Total Credits are allocated to "Cash Credits", which are used to calculate and pay cash incentive compensation monthly.

Both cash and deferred incentive compensation reward good performance by calculating the amount, in part, based on a financial advisor's generation of revenue for the Firm. Deferred incentive compensation, however, serves additional purposes: to reward financial advisors for their "continued employment and service to the Firm in the future and [advisor] compliance with the Firm's policies (Including the Code of Conduct)." In this regard, you represent that by conditioning payment on continuous employment and good guardianship, the deferred compensation awards are designed to motivate advisors to stay with the Firm and to comply with firm policies that require advisors to act as good stewards of client assets. Accordingly, other than as described below, financial advisors are generally eligible for payment of the deferred incentive compensation awards only if they remain continuously employed and in good standing

[1] The advisors have individual, notional accounts in the MSCIP, and they can invest their accounts in notional investments, with the value of their accounts tracking the performance of the selected investments.

on the "scheduled vesting date," which occurs after four years (for stock awards) or six years (for cash awards) of continuous service.

With certain exceptions, the deferred incentive compensation awards are canceled if a financial advisor: (1) terminates employment before the scheduled vesting date; or (2) engages in prohibited activity, such as violating securities rules and regulations, engaging in dishonest or fraudulent conduct, disclosing privileged or confidential information or trade secrets, making disparaging or defamatory comments about the Firm before the scheduled award distribution date, soliciting customers the financial advisor serviced while employed by the Firm for a competitor without the Firm's consent before the earlier of the three years after termination or the scheduled award distribution date, taking employment with a competitor within 100 miles without the Firm's consent before the earlier of one year after termination or the scheduled award distribution date, or engaging in other conduct that is cause for termination. The awards are not cancelled if a financial advisor's employment terminates due to: (1) death; (2) disability; (3) retirement; (4) involuntary termination not involving any prohibited activity; or (5) termination due to government service not involving any prohibited activity. In these cases, the payment schedule depends on the exception clause under which the awards are paid.[2] You represent that payments under these relatively uncommon situations are designed to uphold the awards' primary purposes of encouraging long-term retention of financial advisors and promoting good conduct.

Financial advisors do not have the option to extend or delay the distribution date. From 2009-2019[3], 89.9% to 95.2% of deferred incentive stock awards issued under EICP were awarded distributed to current employees (compared to 8.2% for former employees). Similarly, from 2009 to 2017, 80.1% to 92.6% of cash distributions were ultimately paid to current employees; in the aggregate over that period current employees were paid 85.3% of deferred incentive cash awards issued under the MSCIP were awarded to current employees (compared to 14.7% for former employees).[4]

The award conditions are disclosed annually in the award certificates, summary descriptions and other communications. These disclosures also clearly state that the deferred incentive compensation awards are "contingent and unsecured" and that the program is a:

> "… bonus program and not a retirement plan. Its purposes are to reward and retain key employees of the Firm and to align their interests with those of the shareholders.

---

[2] For the exception due to death, the award is paid to a designated beneficiary upon notification to the Firm. For the exception due to retirement, 50% of the award is paid on the first anniversary after retirement, with the remaining 50% paid on the second anniversary, if the retiree does not engage in specified prohibited activity. For the exception due to governmental service termination, the award is paid on the date of termination. For the exception due to disability or involuntary termination by the Firm, the award is paid on the scheduled vesting date (four years for stock awards and six years for cash awards).

[3] You represent that for stock awards issued under the EICP, the most recent plan year to have vested (as of August 2024) was the 2019 plan year.

[4] You represent that for cash awards issued under the MSCIP, the most recent plan year to have vested (as of August 2024) was the 2017 plan year.

> Participants should not look to this bonus program as a source of retirement income. This bonus program is not subject to the Employee Retirement Income Security Act of 1974."[5]

You also state that the awards are structured to meet the expectations of the Firm's financial regulators regarding the use of deferred compensation to motivate good conduct and penalize bad conduct.[6]

Financial advisors earn the right to award payments only upon satisfying the award conditions, which require them to remain continuously employed and in good standing through the scheduled vesting date (four or six years of continuous service after the ~~end of the year for which the Deferred Credits are granted in the form of deferred stocks and cash awards~~award is granted). On the scheduled vesting date, the award payments are made automatically, and financial advisors are not permitted to defer the payments to a later date. If a financial advisor terminates employment or engages in prohibited activities before vesting, the awards are cancelled, except under limited circumstances. These conditions are disclosed annually to the financial advisors. These annual disclosures also expressly state that financial advisors "have no right to … [the] award until it is 'earned,'" the awards are "contingent upon the [financial advisor] remaining employed through the grant and vesting dates of the award," the awards are "not intended to provide for retirement income," and that the program is "not a retirement plan subject to [ERISA]."

The express purposes of the deferred incentive compensation program are to reward financial advisors for their long-term tenure and incentivize good behaviors desired by the Firm. The program's design and administration are tailored to achieve those goals and meet the financial regulatory requirements regarding using deferred compensation to motivate good conduct and penalize bad conduct. The deferred incentive compensation awards are unsecured and not guaranteed, there is no accrual (*i.e.,* no partial payouts before the scheduled vesting date) and financial advisors are notified annually about the express purposes and conditions of the program and informed that it is not a retirement plan subject to ERISA.

---

[5] *See e.g.,* EICP 2021 Discretionary Retention Awards Stock Unit Summary Description and MSCIP 2021 Discretionary Retention Awards Summary Descriptions. Per your submission, the exact language in the description of this program has changed over the years, but the substance of the program has not changed.

[6] You note that financial regulators, including Financial Industry Regulatory Authority, the Federal Reserve Board of Governors, the Securities and Exchange Commission, and the office of the Comptroller of the Currency, have issued ~~and proposed~~ guidance advising and proposed regulations requiring regulated entities to defer portions of employee incentive compensation, and to make that compensation contingent and cancelable, to address risk-taking and other behaviors that may be harmful to customers and the public markets.

**From**: Berger, Eric - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=652F46F1F32B4363926E49C4ED696AFA-BERGER, ERI]
**Sent**: 8/18/2025 3:11:00 PM
**To**: Kent A. Mason [kamason@davis-harman.com]
**CC**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com]
**Subject**: RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

> You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 8/18/2025 3:34:18 PM
**To**: Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com]
**Subject**: RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Of course. Do you want to send us some times that work for the DOL team? We will do what we can to adjust our schedule to yours. Thanks very much.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Monday, August 18, 2025 3:11 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

> You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From:** Turner, Jeffrey - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=6F1450E69EB24E6A9CB105D821A7EAF3-TURNER, JEF]
**Sent:** 8/18/2025 5:35:06 PM
**To:** Kent A. Mason [kamason@davis-harman.com]; Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC:** Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com]; Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]
**Subject:** Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Much appreciated, Kent. Any chance to hop on the phone tonight. Eric and I are free any time after 6:30 and before 9. Otherwise, tomorrow is fine too. The basic factual question we want to pin down is whether (1) distribution date, (2) deposit date, and (3) vesting date are all synonymous. Based on the case file and your edits of last week, it seems they are, but we want to be 100 percent sure.

—Jeff

Get Outlook for iOS

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Monday, August 18, 2025 3:34 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Of course. Do you want to send us some times that work for the DOL team? We will do what we can to adjust our schedule to yours. Thanks very much.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Monday, August 18, 2025 3:11 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion “may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion.” Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations

Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

**From**: Michael.Stein@morganstanley.com [Michael.Stein@morganstanley.com]
**Sent**: 8/18/2025 6:35:50 PM
**To**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; kamason@davis-harman.com; Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC**: Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; CGaston@davis-harman.com; Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]
**Subject**: Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jeff -- thanks for note back. I'm tracking down Mark and Kent to get a firm answer for you. Will circle back ASAP via email. If we need to hop on the phone for deeper clarity - we'll get that together tomorrow. Back to you soon. Thanks. Michael

---

**From:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Sent:** Monday, August 18, 2025 5:35 PM
**To:** Kent A. Mason <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Stein, Michael J. (Government Relations) <Michael.Stein@morganstanley.com>; Austin, PJ (Government Relations) <PJ.Austin@morganstanley.com>; Greenfield, Mark (LEGAL) <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Much appreciated, Kent. Any chance to hop on the phone tonight. Eric and I are free any time after 6:30 and before 9. Otherwise, tomorrow is fine too. The basic factual question we want to pin down is whether (1) distribution date, (2) deposit date, and (3) vesting date are all synonymous. Based on the case file and your edits of last week, it seems they are, but we want to be 100 percent sure.

—Jeff

Get Outlook for iOS

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Monday, August 18, 2025 3:34 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Of course. Do you want to send us some times that work for the DOL team? We will do what we can to adjust our schedule to yours. Thanks very much.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Monday, August 18, 2025 3:11 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM

**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

---

If you have received this communication in error, please notify the sender immediately. Your communications with Morgan Stanley are subject to the Morgan Stanley General Disclaimers http://www.morganstanley.com/disclaimers/terms and Privacy Policies https://www.morganstanley.com/privacy-pledge. This email and any files attached may be sensitive, confidential, subject to legal privilege and/or otherwise protected from disclosure. Morgan Stanley is not acting as a municipal advisor and the opinions or views contained herein are not intended to be, and do not constitute, advice within the meaning of Section 975 of the Dodd Frank Wall Street Reform and Consumer Protection Act.

**From:** Turner, Jeffrey - EBSA [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=6F1450E69EB24E6A9CB105D821A7EAF3-TURNER, JEF]
**Sent:** 8/18/2025 6:53:26 PM
**To:** Michael.Stein@morganstanley.com; kamason@davis-harman.com; Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC:** Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; CGaston@davis-harman.com
**Subject:** Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thank you very much, Michael.

—Jeff

Get Outlook for iOS

---

**From:** Michael.Stein@morganstanley.com <Michael.Stein@morganstanley.com>
**Sent:** Monday, August 18, 2025 6:35:50 PM
**To:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; kamason@davis-harman.com <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; CGaston@davis-harman.com <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jeff -- thanks for note back. I'm tracking down Mark and Kent to get a firm answer for you. Will circle back ASAP via email. If we need to hop on the phone for deeper clarity - we'll get that together tomorrow. Back to you soon. Thanks. Michael

---

**From:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Sent:** Monday, August 18, 2025 5:35 PM
**To:** Kent A. Mason <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Stein, Michael J. (Government Relations) <Michael.Stein@morganstanley.com>; Austin, PJ (Government Relations) <PJ.Austin@morganstanley.com>; Greenfield, Mark (LEGAL) <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Much appreciated, Kent. Any chance to hop on the phone tonight. Eric and I are free any time after 6:30 and before 9. Otherwise, tomorrow is fine too. The basic factual question we want to pin down is whether (1) distribution date, (2) deposit date, and (3) vesting date are all synonymous. Based on the case file and your edits of last week, it seems they are, but we want to be 100 percent sure.

—Jeff

Get Outlook for iOS

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Monday, August 18, 2025 3:34 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Of course. Do you want to send us some times that work for the DOL team? We will do what we can to adjust our schedule to yours. Thanks very much.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Monday, August 18, 2025 3:11 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

If you have received this communication in error, please notify the sender immediately. Your communications with Morgan Stanley are subject to the Morgan Stanley General Disclaimers http://www.morganstanley.com/disclaimers/terms and Privacy Policies https://www.morganstanley.com/privacy-pledge. This email and any files attached may be sensitive, confidential, subject to legal privilege and/or otherwise protected from disclosure. Morgan Stanley is not acting as a municipal advisor and the opinions or views contained herein are not intended to be, and do not constitute, advice within the meaning of Section 975 of the Dodd Frank Wall Street Reform and Consumer Protection Act.

**From**: Kent A. Mason [kamason@davis-harman.com]
**Sent**: 8/19/2025 9:16:59 AM
**To**: Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; Michael.Stein@morganstanley.com; Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]
**CC**: Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston [CGaston@davis-harman.com]
**Subject**: RE: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks again for all your work on this. Distribution and deposits occur as soon as practicable after vesting. For example, the cash awards get calculated, the data is given to Morgan Stanley's payroll vendor, and then it is deposited on the next pay date. There is some processing time for transmission of the shares as well. So it all happens within a matter of days.

Is that what you need? We would of course be happy to jump on a call if there are any further questions.

---

**From:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Sent:** Monday, August 18, 2025 6:53 PM
**To:** Michael.Stein@morganstanley.com; Kent A. Mason <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thank you very much, Michael.

—Jeff

Get Outlook for iOS

---

**From:** Michael.Stein@morganstanley.com <Michael.Stein@morganstanley.com>
**Sent:** Monday, August 18, 2025 6:35:50 PM
**To:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; kamason@davis-harman.com <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; CGaston@davis-harman.com <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jeff -- thanks for note back. I'm tracking down Mark and Kent to get a firm answer for you. Will circle back ASAP via email. If we need to hop on the phone for deeper clarity - we'll get that together tomorrow. Back to you soon. Thanks. Michael

---

**From:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Sent:** Monday, August 18, 2025 5:35 PM
**To:** Kent A. Mason <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Stein, Michael J. (Government Relations) <Michael.Stein@morganstanley.com>; Austin, PJ (Government Relations) <PJ.Austin@morganstanley.com>; Greenfield, Mark (LEGAL) <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Much appreciated, Kent. Any chance to hop on the phone tonight. Eric and I are free any time after 6:30 and before 9. Otherwise, tomorrow is fine too. The basic factual question we want to pin down is whether (1) distribution date, (2) deposit date, and (3) vesting date are all synonymous. Based on the case file and your edits of last week, it seems they are, but we want to be 100 percent sure.

—Jeff

Get Outlook for iOS

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Monday, August 18, 2025 3:34 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Of course. Do you want to send us some times that work for the DOL team? We will do what we can to adjust our schedule to yours. Thanks very much.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Monday, August 18, 2025 3:11 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion "may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations
Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

---

If you have received this communication in error, please notify the sender immediately. Your communications with Morgan Stanley are subject to the Morgan Stanley General Disclaimers http://www.morganstanley.com/disclaimers/terms and Privacy Policies https://www.morganstanley.com/privacy-pledge. This email and any files attached may be sensitive, confidential, subject to legal privilege and/or otherwise protected from disclosure. Morgan Stanley is not acting as a municipal advisor and the opinions or views contained herein are not intended to be, and do not constitute, advice within the meaning of Section 975 of the Dodd Frank Wall Street Reform and Consumer Protection Act.

**From:** Kent A. Mason [kamason@davis-harman.com]
**Sent:** 9/4/2025 3:00:59 PM
**To:** Turner, Jeffrey - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=6f1450e69eb24e6a9cb105d821a7eaf3-Turner, Jef]; 'Michael.Stein@morganstanley.com' [Michael.Stein@morganstanley.com]; Berger, Eric - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=652f46f1f32b4363926e49c4ed696afa-Berger, Eri]; Dhillon, Janet L - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=c31fbd84ce034a5a8ebcad30dde9b06f-ec453f43-32]; Bolton, Charles H - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8dd803ddc9944aef996104828a461721-2b288c21-a5]
**CC:** Lund, Jack G - EBSA [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e0df37983cc6407495edcf1634411cf7-63fb2472-e8]; 'PJ.Austin@morganstanley.com' [PJ.Austin@morganstanley.com]; 'Mark.Greenfield@morganstanley.com' [Mark.Greenfield@morganstanley.com]; Chris Gaston [CGaston@davis-harman.com]
**Subject:** RE: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

We just wanted to follow up on our emails below. Would any further information be helpful? We so appreciate all your work on our request.

In case it is helpful, we are pasting below a recent article on this issue highlighting its importance and time sensitivity as companies are working on their incentive plans early this fall and continue to face a steady stream of unwarranted litigation. The Department's guidance would advance the critical role advisory opinions serve in helping companies plan, and at this important juncture such guidance would be uniquely valuable. Thanks so much.

# Morgan Stanley, Merrill Lynch snared in dueling courts' rulings on deferred pay as a bonus or a pension

Gift Article
Share

(Gabby Jones/Gabby Jones/Bloomberg)

By:
**Robert Steyer**

Last Updated
August 29, 2025 11:41 AM

Members of employee benefits, retirement services and financial services industries are up in arms over separate legal battles challenging how Morgan Stanley and Merrill Lynch pay deferred compensation to former employees.

The litigation jeopardizes the way companies incentivize workers, attract new employees and encourage loyalty, the trade groups say, noting that deferred pay policies are common especially among financial services companies.

The key issue for both companies is whether deferred compensation is a bonus or a pension.

If it's the former, employers can withhold bonuses from former workers who don't meet specific compensation contract guidelines.

If it's the latter, ex-employees say withholding the deferred compensation can be an ERISA violation.

Courts are divided. For Merrill Lynch, a federal district court has supported the company's bonus argument, and the case is now on appeal.

For Morgan Stanley, a federal court judge in New York ruled that deferred compensation is a pension and subject to ERISA. He said the dispute must be addressed by arbitration. A federal appeals court in New York said it lacked jurisdiction to rule on the ERISA question.

Needless to say, industry representatives are unhappy.

"The business community is concerned because it will force huge changes in the use of deferred compensation to meet specific goals if these programs are treated as ERISA plans," said Lynn D. Dudley, senior vice president for global retirement and compensation policy for the American Benefits Council.

As one council member told her, "It will upend our process."

Her organization, along with several others, has filed amicus briefs in the Merrill Lynch and Morgan Stanley cases advocating that deferred pay be treated as a bonus.

Dudley hopes the various industries can work with the Department of Labor to point out that deferred compensation programs should not be subject to ERISA guidelines. "I think DOL will be receptive to our appeals and be helpful," she said.

Despite the legal uncertainty, Dudley said employers shouldn't rewrite deferred compensation guidelines — at least not yet. "They are not prepared to do that," she said.

A short-term impact of the legal uncertainty may be a tightening of rules governing what Dudley called humanitarian compensation, in which, for example, employers have been less strict in instances where a former employee is disabled or terminally ill.

"This is an important issue winding its way through the courts and clarity is important," Andy Banducci, senior vice president for retirement and compensation policy at the ERISA Industry Committee, wrote in an email response to questions.

His organization joined the American Benefits Council in amicus briefs for the Merrill Lynch and Morgan Stanley litigation. "Employers need uniformity in the application of federal benefits law, particularly if they have employees across the country," he wrote. "Discretionary incentives based on performance just aren't retirement benefits, and so ERISA doesn't apply."

## Merrill Lynch

Industry representatives pointed out that "long-term incentive and deferred incentive compensation programs are in widespread use," according to their amicus brief filed Aug. 4 in support of Merrill Lynch, whose federal district court victory has been appealed to the 4th Circuit Court of Appeals, Richmond, Va.

"Employers offer them for a variety of reasons that have nothing to do with providing income after retirement or following departure from current employment," the trade groups wrote in the case of Milligan vs. Merrill Lynch, Pierce Fenner & Smith Inc. et al. One defendant is Merrill Lynch's parent, Bank of America.

"Those programs play a critical role in promoting retention of productive employees, encouraging workplace success, and deterring or penalizing misconduct," said the document. "Distorting ERISA so that it reaches those programs would have destructive effects."

In addition to the ERISA Industry Committee and the American Benefits Council, the U.S. Chamber of Commerce and the Center on Executive Compensation collaborated on the amicus brief.

Making deferred pay policies subject to ERISA could increase litigation risk and "undermine employers' justifiable reliance on nearly 50 years of case law and regulatory guidance," the amicus brief said.

Kelly Milligan was a Merrill Lynch financial adviser from 2000 until leaving voluntarily in 2021 to join another firm. He argued he was owed more than $500,000 in deferred pay under Merrill Lynch's WealthChoice awards program.

Milligan sued in April 2024, seeking class-action status, asserting that the program was a pension — not a bonus.

U.S. District Court Judge Kenneth D. Bell in Charlotte, N.C., supported defendants in a March 2025 ruling.

"Adopting plaintiff's view would mean that virtually any plan that allows for income to be paid after employment ends, even incidentally, could fall under ERISA's purview," the judge wrote.

"Plaintiff's expansive interpretation reaches far beyond Congress' intent and ignores ERISA's fundamental premise both of which are rooted in protecting the retirement assets of workers," he wrote.

Milligan appealed, and the trade organizations reacted.

Deferred incentive-based compensation programs are common in many industries and "ubiquitous in the financial sector" because they promote "long-term performance over short-term gains," said a separate Aug. 4 amicus brief by the Securities Industry and Financial Market Association.

A ruling for Milligan, "would have an outsized and destabilizing effect on the entire financial sector," the document said. Such a decision would create "a cloud of uncertainty over the status of deferred compensation programs for structuring contingent incentive-based compensation."

## Morgan Stanley

Although the Morgan Stanley dispute has a similar theme, it produced different results.

Matthew T. Shafer worked as a financial adviser from 2009 to 2018 and claimed he was owed more than $500,000 in deferred compensation.

He sued in December 2020, saying the Financial Advisor/Private Wealth Compensation Plan at Morgan Stanley should be treated akin to a pension covered by ERISA rather than as a bonus. Several other former financial advisers joined in an amended complaint filed in March 2022 in the case of Shafer et al. vs. Morgan Stanley et al.

The defendants said the compensation plan was a bonus program and that disputes should be addressed through arbitration.

A federal judge in New York in November 2023 supported the arbitration request, but he also said the program was subject to ERISA.

“The deferred compensation programs at issue here are not bonus programs,” U.S. District Court Judge Paul G. Gardephe wrote on Nov. 21, 2023.

“Morgan Stanley’s deferred compensation programs result in the deferral of income to the post-employment period within the meaning of ERISA,” he wrote. “Morgan Stanley’s deferred compensation programs are ERISA plans.”

The defendants and the plaintiffs appealed to the 2nd U.S. Circuit Court of Appeals, New York, with the former seeking to reject ERISA coverage of the deferred and the latter seeking to reject arbitration for the dispute.

Several of the trade associations that filed amicus briefs in the Merrill Lynch case also filed comments here, warning that branding deferred compensation as a pension would disrupt and damage benefits programs.

A three-judge panel of the appeals court dismissed both arguments on July 9. For Morgan Stanley, the judges wrote “we lack jurisdiction over the underlying appeal.” For the plaintiffs, the judges said they couldn’t address their appeal because it was contingent upon their accepting Morgan Stanley’s appeal.

This decision may not have closed the book on the dispute because the judges wondered why the district court judge ruled the deferred pay was covered by ERISA but then referred the case to arbitration.

“Though arbitrators may consider the district court’s opinion, Morgan Stanley is free to argue to those arbitrators that the district court’s conclusion that the plans were governed by ERISA was dictum and legally incorrect,” the judges wrote. “Indeed, Morgan Stanely admits that it has already done so — successfully — in some of the intervening arbitrations.”

Dictum is a legal term referring comments by judges that aren’t part of the legal reasoning in deciding a case and that can’t be used as legal precedent.

“The appellate court determined it lacks jurisdiction because the district court’s decision doesn’t bind the arbitration panels that will decide these cases,” a Morgan Stanley spokeswoman wrote in an email response to questions.

"These awards are not a pension, as multiple arbitration panels have now recognized," she wrote. "We remain confident that as individual arbitrators see all the evidence, they will reach exactly the same result."

---

**From:** Kent A. Mason
**Sent:** Tuesday, August 19, 2025 9:17 AM
**To:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Michael.Stein@morganstanley.com; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks again for all your work on this. Distribution and deposits occur as soon as practicable after vesting. For example, the cash awards get calculated, the data is given to Morgan Stanley's payroll vendor, and then it is deposited on the next pay date. There is some processing time for transmission of the shares as well. So it all happens within a matter of days.

Is that what you need? We would of course be happy to jump on a call if there are any further questions.

---

**From:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Sent:** Monday, August 18, 2025 6:53 PM
**To:** Michael.Stein@morganstanley.com; Kent A. Mason <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thank you very much, Michael.

—Jeff

Get Outlook for iOS

---

**From:** Michael.Stein@morganstanley.com <Michael.Stein@morganstanley.com>
**Sent:** Monday, August 18, 2025 6:35:50 PM
**To:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; kamason@davis-harman.com <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; CGaston@davis-harman.com <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** Re: [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Jeff -- thanks for note back. I'm tracking down Mark and Kent to get a firm answer for you. Will circle back ASAP via email. If we need to hop on the phone for deeper clarity - we'll get that together tomorrow. Back to you soon. Thanks. Michael

---

**From:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Sent:** Monday, August 18, 2025 5:35 PM
**To:** Kent A. Mason <kamason@davis-harman.com>; Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Stein, Michael J. (Government Relations) <Michael.Stein@morganstanley.com>; Austin, PJ (Government Relations) <PJ.Austin@morganstanley.com>; Greenfield, Mark (LEGAL) <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>; Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>
**Subject:** [EXTERNAL] Re: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Much appreciated, Kent. Any chance to hop on the phone tonight. Eric and I are free any time after 6:30 and before 9. Otherwise, tomorrow is fine too. The basic factual question we want to pin down is whether (1) distribution date, (2) deposit date, and (3) vesting date are all synonymous. Based on the case file and your edits of last week, it seems they are, but we want to be 100 percent sure.

—Jeff

Get Outlook for iOS

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Monday, August 18, 2025 3:34 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com <PJ.Austin@morganstanley.com>; Mark.Greenfield@morganstanley.com <Mark.Greenfield@morganstanley.com>; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Of course. Do you want to send us some times that work for the DOL team? We will do what we can to adjust our schedule to yours. Thanks very much.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Monday, August 18, 2025 3:11 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Thanks so much to you and the Morgan Stanley people for the fast response. Can we have a very short call to clarify one factual issue?

Eric

---

**From:** Kent A. Mason <kamason@davis-harman.com>
**Sent:** Wednesday, August 13, 2025 2:14 PM
**To:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>; Dhillon, Janet L - EBSA <Dhillon.Janet.L@dol.gov>; 'Michael.Stein@morganstanley.com' <Michael.Stein@morganstanley.com>; PJ.Austin@morganstanley.com; Mark.Greenfield@morganstanley.com; Chris Gaston <CGaston@davis-harman.com>
**Subject:** RE: Draft Facts Supporting Morgan Stanley Advisory Opinion Request

You don't often get email from kamason@davis-harman.com. Learn why this is important

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report" button on your email toolbar.**

Thanks for sending us the draft facts to review. The draft looks great. We suggest minor clarifications in the attached for your consideration. We so appreciate all the work on this matter.

---

**From:** Berger, Eric - EBSA <Berger.Eric@dol.gov>
**Sent:** Tuesday, August 12, 2025 6:38 PM
**To:** Kent A. Mason <kamason@davis-harman.com>
**Cc:** Turner, Jeffrey - EBSA <Turner.Jeffrey@dol.gov>; Lund, Jack G - EBSA <Lund.Jack.G@dol.gov>
**Subject:** Draft Facts Supporting Morgan Stanley Advisory Opinion Request

Dear Mr. Mason:

Attached for your review are draft facts supporting the advisory opinion requested on behalf of Morgan Stanley.

Under Advisory Opinion Procedure 76-1 the parties described in an advisory opinion “may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion.” Accordingly, as a routine matter, we ask opinion requesters to review and confirm the facts in support of the opinion. A redline of changes, if any, would be most helpful. We would appreciate a quick turnaround. We, of course are happy to chat by phone if you would like.

Thanks,

Eric Berger
Chief, Division of Coverage, Reporting & Disclosure
Office of Regulations and Interpretations

Employee Benefits Security Administration
U.S. Department of Labor

LIMITATIONS ON ADVICE. Any advice in this communication and any attachments: (i) is limited to the conclusions specifically set forth herein and is based on the completeness and accuracy of the stated facts, assumptions and/or representations included herein; (ii) was prepared for the sole benefit of Davis & Harman LLP's client and may not be relied upon by any other person or entity; and (iii) is not intended or written to be used, and cannot be used, by the recipient(s) or any other person or entity, for the purposes of promoting, marketing or recommending to another party any matters addressed herein.

NOTICE OF CONFIDENTIALITY. The information contained in this message from Davis & Harman LLP and any attachments is confidential and intended only for the named recipient(s). This message and any attachments may be an attorney-client communication and as such privileged and confidential. If you have received this message in error, you are prohibited from copying, distributing or using the information. Please contact the sender immediately by telephone or return e-mail and delete the original message. We apologize for any inconvenience, and thank you for your prompt attention.

---

If you have received this communication in error, please notify the sender immediately. Your communications with Morgan Stanley are subject to the Morgan Stanley General Disclaimers http://www.morganstanley.com/disclaimers/terms and Privacy Policies https://www.morganstanley.com/privacy-pledge. This email and any files attached may be sensitive, confidential, subject to legal privilege and/or otherwise protected from disclosure. Morgan Stanley is not acting as a municipal advisor and the opinions or views contained herein are not intended to be, and do not constitute, advice within the meaning of Section 975 of the Dodd Frank Wall Street Reform and Consumer Protection Act.